IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JANE DOE I, JANE DOE II, JANE DOE III,  )
JANE DOE IV, JANE DOE V, and             )
DOES 6-20,                               )
                                         )
                          Plaintiffs,    )
                                         )
        vs.                              )
                                         )
DAVID YESNER, UNIVERSITY OF              )
ALASKA BOARD OF REGENTS, and             )
UNIVERSITY OF ALASKA SYSTEM,             )
                                         )     No. 3:19-cv-0136-HRH
                          Defendants.    )
                                         )
_____)

O R D E R

Motions to Dismiss; Motion to Amend;
Motion to Preclude Use of "Jane Doe" Pseudonyms

        Defendants University of Alaska Board of Regents and University of Alaska System

move to dismiss plaintiffs' Counts IV through VIII.[1]  Defendant David Yesner joins in this

motion as to Count VIII.[2]  This motion is opposed.[3]  Yesner moves to dismiss some of

plaintiffs' claims on statute of limitations grounds and to dismiss the fictitious plaintiffs.[4]

_____

    [1]Docket No. 13.

    [2]Docket No. 18.

    [3]Docket No. 21.

    [4]Docket No. 16.

The University defendants join in this motion.[5]  This motion is opposed.[6]  Yesner also moves to preclude the use of "Jane Doe" pseudonyms in this case.[7]  This motion is opposed.[8]  Plaintiffs move to amend their complaint.[9]  This motion is unopposed.  Oral argument was not requested on any of the pending motions and is not deemed necessary.

## Background

Plaintiffs are former students at the University of Alaska.  Yesner is a former professor at the University of Alaska.

Jane Doe I alleges that she first met Yesner in 2010 and that he was her "Anthropology Advisor from 2011 to the end of 2016/early 2017."[10]  Jane Doe I alleges that Yesner "directed grotesque and sexually charged comments and unwanted staring" at her.[11]  For example, Jane Doe I alleges that Yesner once asked her "if she ever wore heels while looking [her] up and down in a sexually explicit way, conveying to her that he was imaging what 'she would look like in heels.'"[12]  Jane Doe I alleges that one evening Yesner invited her to dinner

---

[5]Docket No. 30.

[6]Docket No. 25.

[7]Docket No. 20.

[8]Docket No. 23.

[9]Docket No. 27.

[10]Complaint at 16, ¶¶ 34-35, Docket No. 1.

[11]Id. at 17.

[12]Id. at 17, ¶ 39.

and while at dinner "emphasized . . . that his wife was out of town and insinuated that [she] should join him at his house[.]"[13]  Jane Doe I alleges that Yesner would take pictures of female students, including her, while on dig sites when they were wearing only sport bras and shorts due to the heat.[14]  Jane Doe I alleges that she learned in March 2019 that Yesner's pictures of her showed that Yesner "was zeroing in on [her] breasts and buttocks. . . ."[15]

Jane Doe II alleges that she first met Yesner in 2009 and that he became her thesis advisor in 2010.[16]  Jane Doe II alleges that Yesner "made unwanted sexual advances towards [her] as well as sexually explicit and suggestive comments."[17]  For example, Jane Doe II alleges that "Yesner directly stated to [her], 'if I were 30 years younger, I would be interested in you,' that 'you are beautiful,' and 'if I were not married, I would love to be with you sexually.'"[18]  Jane Doe II alleges that "when [she] communicated dissatisfaction that her comprehensive exam was taking so long to grade, [d]efendant Yesner responded that 'maybe [she] needed to give [him] a spanking so that [he] would do better.'"[19]  Jane Doe II alleges that Yesner would routinely question her then-boyfriend, who was also one of Yesner's

_____

[13]Id. at 18, ¶ 40.

[14]Id. at 19, ¶ 44.

[15]Id. at 22, ¶¶ 49, 55.

[16]Id. at 23, ¶¶ 56-57.

[17]Id. at 23.

[18]Id. at 23, ¶ 59.

[19]Id. at 24, ¶ 60.

students, "about his sex life with [her], asking about intimate details."[20] Jane Doe II alleges that "[t]he unwanted touching by" Yesner "was pervasive" and whenever he spoke to her, "he would stare at her breasts and he would find ways for his hands to make contact with her breasts and buttocks."[21] She alleges that when Yesner would hug her, he "would put his hand on the small of her back and rub in circles just above her buttocks, lingering in the hug for several minutes" or he would "intentionally brush his hand across [her] breasts in the process of hugging her and often times leave his hand wrapped around her hip."[22] Jane Doe II alleges that in November 2017, Yesner "perused [her] Instagram account and selected a sexually suggestive photograph of [her], showing her cleavage[,]" which he "put on her poster that would be displayed on campus, advertising her thesis presentation."[23] Jane Doe II alleges that Yesner kept pornography on the computer "that she shared with him" and that "pornographic pictures would be left open on [the] computer when she came into the lab and [d]efendant Yesner would be elsewhere."[24]

Jane Doe III alleges that she first met Yesner in 2016.[25] Jane Doe III alleges that "each time she had an interaction with [d]efendant Yesner he would stare lasciviously at her

_____

[20]Id. at 24, ¶ 62.

[21]Id. at 24, ¶ 64.

[22]Id. at 25, ¶¶ 66.

[23]Id. at 25, ¶ 68.

[24]Id. at 27, ¶ 77.

[25]Id. at 30, ¶ 88.

breasts for the duration of the conversation[.]"[26] Jane Doe III alleges that in October 2017, she was alone in a classroom performing a necropsy on a bear when Yesner "suddenly appeared in the doorway, intensely staring at [her] and standing in silence just watching her."[27] Jane Doe III alleges that "[w]ithin a few minutes, [d]efendant Yesner began to walk slowly towards [her] in a threatening manner, still without saying anything."[28] Jane Doe III alleges that "[i]n an attempt to protect herself, [she] chose to jump over the bear carcass on the floor instead of going around the table so she could be out of arms reach" of Yesner.[29] Jane Doe III alleges that when she was taking a geology class in the Fall of 2017, Yesner would sit behind her and "lean in close where [she] could feel his breath down her neck" and he would "make bizarre, inappropriate comments."[30]

Jane Doe IV alleges that she "first met [d]efendant Yesner as an undergraduate student at field school in 2013 and during summer work before entering UAA's graduate program in 2014 and 2015."[31] Jane Doe IV alleges that Yesner became her advisor in the fall of 2015.[32] Jane Doe IV alleges that "Yesner made sexually explicit and suggestive comments

---

[26]Id. at 30, ¶ 90.

[27]Id. at 31, ¶ 91.

[28]Id.

[29]Id.

[30]Id. at 31, ¶ 93.

[31]Id. at 32, ¶ 97.

[32]Id. at 32, ¶ 98.

to [her] as well as unwanted staring."[33]  For example, Jane Doe IV alleges that Yesner once

told her "that he cheated on his wife with another woman" and that "he wanted to have sex

with a particular undergraduate professor and committee member[.]"[34]  Jane Doe IV alleges

that "Yesner incessantly and exaggeratedly looked [her] body up and down."[35]  Jane Doe IV

alleges that once when she was in the field with Yesner, who had "his camera in tow," she

wiped a knife blade that she was using to take core samples on "her knee/thigh area.  As she

wiped the knife on her knee/thigh, [d]efendant Yesner commented that [she] had wiped the

knife on her 'crotch' and said, 'Good thing I did not get a picture of that.'"[36]  Jane Doe IV

alleges that "Yesner would often get [her] alone with him in disturbing situations."[37]  For

example, Jane Doe IV alleges that Yesner once arranged for her to meet him at the museum

when it was closed and that he once insisted that she come into his camper when they were

in the field and she went to retrieve him for dinner.[38]  Jane Doe IV alleges that "[a]t this same

field site in 2016," she and Yesner were out in the woods and "[a]s [she] was rummaging in

the back of her car to retrieve field gear, she looked to see if [d]efendant Yesner was behind

―――――――――――

[33]Id. at 32.

[34]Id. at 32-33, ¶¶ 99-100.

[35]Id. at 33, ¶ 101.

[36]Id. at 33, ¶ 102.

[37]Id. at 34.

[38]Id. at 34-35, ¶¶ 104-105.

her but instead saw [him] urinating in plain sight."[39]  Jane Doe IV alleges that "there were times when she would walk into [d]efendant Yesner's office to meet with him and find that he was waiting for her with his pants unzipped and his shirt open, almost exposing himself to [her]."[40]  Jane Doe IV alleges that Yesner would force her "to sit side-by-side with him alone whenever she was working on her thesis."[41]  Jane Doe IV alleges that "Yesner would often hug [her] without her consent, lingering in the hug for several minutes to which [she] had no escape."[42]

Jane Doe V alleges that she "first met [d]efendant Yesner as an undergraduate student . . . in [the] Fall of 2014."[43]  Jane Doe V alleges that at a party in December 2014, "Yesner approached her aggressively and demanded that she drink a shot of liquor.  [Yesner] moved close into [her] personal space as he made his demands, backing [her] into a corner which made her feel disturbed and trapped."[44]  Jane Doe V alleges that "[e]ven after [she] politely refused, [Yesner] kept forcing the alcohol on her, pressuring [her] to drink."[45]  Jane Doe V

---

[39]Id. at 35 ¶ 106.

[40]Id. at 35, ¶ 107.

[41]Id. at 35, ¶ 108.

[42]Id. at 36, ¶ 109.

[43]Id. at 37, ¶ 116.

[44]Id. at 38, ¶ 120.

[45]Id.

alleges that "Yesner would often stare intensely at [her] breasts for a long time when she would have interactions with him[.]"[46]

Plaintiffs allege that outside counsel retained by the University released a report on March 15, 2019, which "detail[ed Yesner's] years and years of predatory behavior inflicted upon . . . female students."[47] Plaintiffs allege that "[t]he March 15, 2019 report found [d]efendant Yesner guilty of violating several University regulations" and found that he had "engaged in sex discrimination and sexual harassment" of nine unnamed complainants (C1-C9) and sexually assaulted complainant C9.[48] Plaintiffs also allege that the report found that Yesner had "engaged in sexual exploitation through inappropriate use and possession of female student pictures" and violated University regulations "by possessing obscene material on his University computer."[49] Plaintiffs allege that after the report was released, Yesner was banned "from the University campus and from affiliating with the University of Alaska."[50]

Plaintiffs commenced this action on May 15, 2019. Plaintiffs' complaint contains eight counts. In Counts I-III, plaintiffs assert Title IX[51] claims against the University defendants. In Count IV, plaintiffs assert sexual discrimination claims pursuant to AS

---

[46]Id. at 38, ¶ 121.

[47]Id. at 40, ¶ 128.

[48]Id. at 43, ¶ 137.

[49]Id.

[50]Id. at 14, ¶ 31.

[51]20 U.S.C. §§ 1681-88.

14.18.010 against the University defendants.  In Count V, plaintiffs assert § 1983 <u>Monell</u> claims against the University defendants.  In Count VI, plaintiffs assert assault and battery claims against all defendants.  In Count VII, plaintiffs assert intentional infliction of emotional distress claims against all defendants.  In Count VIII, Jane Does I and II assert common law invasion of privacy tort claims.  For relief, plaintiffs seek damages, an injunction enjoining the University "from unlawful discrimination on the basis of sex," "a formal public statement in support of [p]laintiffs[,]" and the "[r]emoval of Defendant David Yesner's name from diplomas and other official university documents[.]"[52]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss certain claims.  Pursuant to Rule 17, defendants move to dismiss Jane Does 6-20. Pursuant to Rule 10(a), Yesner moves to preclude plaintiffs from proceeding under pseudonyms. And, pursuant to Rule 15(a), plaintiffs move to amend their complaint to add two additional plaintiffs.

<u>Rule 12(b)(6) Motions to Dismiss</u>

'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 999 (9th Cir. 2013) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[52]<u>Id.</u> at 60-61.

misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016).

The University defendants first move to dismiss plaintiffs' state law claims (Counts IV, VI, VII, and VIII) and plaintiffs' § 1983 claims (Count V) on Eleventh Amendment grounds.[53] "The Eleventh Amendment protects states and state instrumentalities . . . from suit in federal court." Doe v. Regents of the Univ. of Calif., 891 F.3d 1147, 1153 (9th Cir.

---

[53]"Ninth Circuit cases have held that dismissal based on Eleventh Amendment immunity should be analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1)." Steshenko v. Gayrard, 44 F. Supp. 3d 941, 948 n.1 (N.D. Cal. 2014).

2018). Both Alaska state courts and the Ninth Circuit have held that the University itself is an instrumentality of the state. See Univ. of Alaska v. Nat'l Aircraft Leasing, Ltd., 536 P.2d 121, 124 (Alaska 1975) ("the University must be regarded as uniquely an instrumentality of the state itself"); Ellingstad v. State, Dep't of Natural Resources, 979 P.2d 1000, 1007 (Alaska 1999) ("Alaska law treats the University as a state entity for purposes of sovereign immunity"); Townsend v. Univ. of Alaska, 543 F.3d 478, 481 (9th Cir. 2008) ("[i]t is undisputed that the University is an arm of the State of Alaska"). And, because "[a] claim alleged against a state officer acting in his official capacity is treated as a claim against the state itself[,]" Morongo Band of Mission Indians v. Calif. State Bd. of Equalization, 858 F.2d 1376, 1382 n.5 (9th Cir. 1988), the Board of Regents is also protected from suit in federal court by the Eleventh Amendment.

However, "[t]here are two 'well-established' exceptions to the Eleventh Amendment protection from suit." Micomonaco v. State of Wash., 45 F.3d 316, 319 (9th Cir. 1995) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985)). "Congress can abrogate the Eleventh Amendment without the consent of the states in certain instances or a state may waive its immunity by consenting to suit in federal court." Id.

The University defendants concede that the state has waived sovereign immunity in state court for claims alleging violations of AS 14.18.010 and for state-law tort claims. See AS 09.50.250; AS 14.18.100. But, they argue that the state has not waived sovereign immunity as to such claims being brought in federal court. The University defendants also argue that there is no federal statute that abrogates the state's immunity in federal court for

such claims.  Thus, the University defendants argue that plaintiffs' claims against them in Counts IV, VI, VII, and VIII should be dismissed.

Plaintiffs first argue that these claims should not be dismissed because the court has supplemental jurisdiction of these claims pursuant to 28 U.S.C. § 1367.  This argument fails. "Eleventh Amendment immunity extends to state law claims over which a federal court could exercise supplemental jurisdiction." S.B. by and through Kristina B. v. Calif. Dep't of Educ., 327 F. Supp. 3d 1218, 1235 (E.D. Cal. 2018) (citing Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 541 (2002)).

Plaintiffs next argue that their state law discrimination claims under AS 14.18.010 are not barred by the Eleventh Amendment.  Plaintiffs argue that because the University defendants' sovereign immunity has been abrogated as to Title IX claims, they should be able to bring their AS 14.18.010 claims in federal court because this state statute is "extremely similar" in purpose to Title IX.[54]  Plaintiffs provide no authority to support this novel theory. Although "Congress has properly abrogated state sovereign immunity for Title IX claims[,]" Stanley v. Trustees of Calif. State Univ., 433 F.3d 1129, 1133 (9th Cir. 2006), plaintiffs have cited to no language in Title IX that suggests that Congress intended to abrogate state sovereign immunity for similar state law claims.

Plaintiffs also argue that their state law discrimination and tort claims against the University defendants should not be dismissed because this court has jurisdiction pursuant

---

[54]Plaintiffs' Response [etc.] at 5, Docket No. 21.

to 28 U.S.C. § 1343(a)(3).  Section 1343(a)(3) provides:

> The district courts shall have original jurisdiction of any civil
> action authorized by law to be commenced by any person:
> To redress the deprivation, under color of any State law, statute,
> ordinance, regulation, custom or usage, of any right, privilege or
> immunity secured by the Constitution of the United States or by
> any Act of Congress providing for equal rights of citizens or of
> all persons within the jurisdiction of the United States[.]

Section 1343(a)(3) does not give the court jurisdiction over claims involving rights protected by state statutes or state common law.  Rather, it gives the court jurisdiction over claims involving rights protected by the U.S. Constitution or federal law.  See Jaa v. City of Dublin, Case No. 14–cv–03260–JCS, 2014 WL 12775830, at *4 (N.D. Cal. Aug. 29, 2014) ("Section 1343 provides a separate basis for federal jurisdiction for certain claims arising from violations of federally-protected civil and constitutional rights").

Plaintiffs next argue that because the University defendants consented to suit in federal court for tort claims in another case, they can be sued in federal court for tort claims in this case.  The case cited by plaintiffs is McBeath v. University of Alaska, Case No. 3:08-cv-0008-TMB.  Assuming that the University defendants waived their sovereign immunity defense as to McBeath's state-law claim, that does not mean that the University defendants have waived their sovereign immunity in this case.  Plaintiffs cite to no authority, nor is the court aware of any, that stands for the proposition that waiver or consent in one case means waiver or consent in all cases.

Finally, plaintiffs argue that their tort and state law discrimination claims should not be dismissed because it would be more efficient to litigate all of their claims in one forum.

But, judicial efficiency cannot trump "the fundamental principle of sovereign immunity [which] limits the grant of judicial authority in Art. III." Green v. Mansour, 474 U.S. 64, 68 (1985) (citation omitted).

Plaintiffs' state law discrimination and tort claims are barred by the Eleventh Amendment. Plaintiffs' claims against the University defendants in Counts IV, VI, VII, and VIII are dismissed without prejudice. Plaintiffs are not given leave to amend as to these claims because "amendment would be futile." Ebner v. Fresh, Inc., 838 F.3d 958, 968 (9th Cir. 2016).

As for plaintiffs' § 1983 Monell claims against the University defendants in Count V, "'[s]tates or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' are not 'persons' under § 1983." Flint v. Dennison, 488 F.3d 816, 824 (9th Cir. 2007) (quoting Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989)). Thus, the University defendants argue that plaintiffs' § 1983 claims should be dismissed.

Plaintiffs first argue that their § 1983 claims for damages should not be dismissed because Yesner is a "person" for purposes of § 1983 and the University defendants are vicariously liable for his actions. This argument fails because "[i]t is well-settled that '§ 1983 suits do not allow for the imposition of vicarious liability[.]'" Kaur v. City of Lodi, 263 F. Supp. 3d 947, 984 (E.D. Cal. 2017) (quoting Starr v. Baca, 652 F.3d 1202, 1206 (9th Cir. 2011)).

Plaintiffs next argue that their § 1983 claims should not be dismissed because they are not only seeking damages, but also equitable relief. "[C]ourts have . . . allowed suit under

42 U.S.C. § 1983 when the action was for equitable relief rather than damages." <u>Wolfe v. O'Neill</u>, 336 F. Supp. 1255, 1259 (D. Alaska 1972).

The University defendants do not dispute that "[a] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" <u>Will</u>, 491 U.S. at 58 n.10 (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, n.14 (1985)). But, they point out that this exception to Eleventh Amendment immunity is limited to "prospective injunctive relief to prevent a continuing violation of federal law." <u>Green</u>, 474 U.S. at 68. The Supreme Court has "refused to extend" this exception "to claims for retrospective relief." <u>Id.</u> "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." <u>Id.</u>

Here, plaintiffs seek to enjoin the University defendants "from unlawful discrimination on the basis of sex[.]"[55] "An award of prospective injunctive relief requires the plaintiff to demonstrate a reasonable likelihood of future injury." <u>Bank of Lake Tahoe v. Bank of America</u>, 318 F.3d 914, 918 (9th Cir. 2003). "'[P]laintiffs must demonstrate that a credible threat exists that they will again be subject to the specific injury for which they seek injunctive . . . relief.'" <u>Id.</u> (quoting <u>Sample v. Johnson</u>, 771 F.2d 1335, 1340 (9th Cir. 1985)).

---

[55]Complaint at 60-61, Docket No. 1.

An "amorphous request for future blanket protection does not meet the 'credible threat' requirement." Id. (quoting Sample, 771 F.2d at 1340).

Plaintiffs have not demonstrated a reasonable likelihood of future injury as they are former students and they allege that "[t]he University has banned Professor Yesner from the University campus and from affiliating with the University of Alaska."[56] All plaintiffs have done here is make an amorphous request for injunctive relief. Plaintiffs have inadequately pled a claim for injunctive relief against the Board of Regents.

Plaintiffs' § 1983 claims for damages and equitable relief against the University of Alaska System are dismissed with prejudice. Plaintiffs' § 1983 claims for damages against the Board of Regents are also dismissed with prejudice. Plaintiffs' § 1983 claims for equitable relief against the Board of Regents are dismissed without prejudice. Although its strikes the court that it is unlikely that plaintiffs will be able to pled plausible claims for prospective injunction relief against the Board of Regents, it may be possible that at least some of the plaintiffs could plausibly plead such claims. Therefore, plaintiffs are given leave to amend as to their § 1983 claims for equitable relief against the Board of Regents.

Next, Yesner moves to dismiss all but one of the tort claims asserted against him by Jane Does I, II, IV, and V in Counts VI, VII, and VIII. In Alaska, a two-year statute of limitations applies to tort claims. AS 09.10.070. Plaintiffs filed their complaint on May 15, 2019. Thus, in order for plaintiffs' tort claims to be timely, Yesner argues that they must be

---

[56]Complaint at 14, ¶ 31, Docket No. 1.

based on conduct that occurred on or after May 14, 2017. But, he contends that the only conduct alleged by Jane Does I, II, IV, and V to have occurred after May 14, 2017 is the placement of a sexually suggestive picture on Jane Doe II's thesis poster. All of the other wrongful conduct alleged by Jane Does I, II, IV, and V is alleged to have occurred before May 14, 2017 or at unspecified times, thereby making these claims, according to Yesner, untimely.

As an initial matter, plaintiffs argue Yesner is equitably estopped from asserting a statute of limitations defense. "'[A] party who fraudulently conceals from a plaintiff the existence of a cause of action may be estopped to plead the statute of limitation if the plaintiff's delay in bringing suit was occasioned by reliance on the false or fraudulent representation.'" Palmer v. Borg-Warner Corp., 838 P.2d 1243, 1247 (Alaska 1992) (quoting Sharrow v. Archer, 658 P.2d 1331, 1333 (Alaska 1983)).

> Equitable estoppel generally requires that "the party seeking to assert it show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonably relied on such acts or representations of the other party, and due to such reliance did not institute suit timely."

Id. (quoting Groseth v. Ness, 421 P.2d 624, 632 n.23 (Alaska 1966)).

Plaintiffs argue that the University defendants had knowledge of Yesner's conduct since the 1980s but concealed this information from plaintiffs. Plaintiffs argue that they had no way of knowing about Yesner's conduct until December 2017, when the University defendants began to seriously investigate the sexual harassment claims against Yesner. Plaintiffs then suggest that it was not really until March 2019, when the University

defendants released the investigative report, that they knew about their claims against Yesner.

The problem with this argument is that plaintiffs are contending that the University defendants were concealing information. But, it is not the University defendants who are attempting to assert a statute of limitations defense. Rather, it is Yesner who is asserting such a defense. Plaintiffs have not alleged that Yesner was concealing information. Thus, plaintiffs' equitable estoppel argument fails.

Plaintiffs also argue that Jane Does I, II, IV, and V's tort claims against Yesner should not be considered time barred because the University's own policies provide that "'there is no time limit on reporting sexual and gender-based discrimination, including sexual harassment or sexual assault. . . .'"[57] Plaintiffs argue that the court should take this into account and allow these plaintiffs' claims to go forward.

However, the University's policy is not binding on this court. The court must apply the two-year statute of limitations provided by statute in determining whether Jane Does I, II, IV, and V's tort claims against Yesner are timely.

As for Jane Doe I's tort claims against Yesner, plaintiffs argue that these claims are not timed barred because of the discovery rule. "Under the discovery rule, the statute of limitations will not begin to run until a reasonable person has enough information to be on notice for a potential cause of action or to inquire into the extent of the injury." Flint Hills

---

[57]Plaintiffs' Response [etc.] at 14, Docket No. 25 (quoting University of Alaska Board of Regents Policy P.01.04.060(D) (emphasis omitted).

Resources Alaska, LLC v. Williams Alaska Petroleum, Inc., 377 P.3d 959, 972 (Alaska 2016). "Under the discovery rule, the date on which the statute of limitations begins to run is a question of fact. But it is a legal question whether undisputed facts establish that a plaintiff is on inquiry notice." Egner v. Talbot's, Inc., 214 P.3d 272, 277 (Alaska 2009).

Plaintiffs argue that the earliest Jane Doe I knew or should have known of the facts that gave rise to her tort claims is December 2017, which was when, according to plaintiffs, she was first interviewed by a Title IX investigator. This argument, however, makes no sense given that Jane Doe I has alleged that "[i]n 2016, [she] reported to defendant University of Alaska that Defendant Yesner had sexually harassed her and then retaliated against her."[58] This allegation, if taken as true as the court must on a motion to dismiss, indicates that Jane Doe I was aware of the facts that gave rise to her tort claims against Yesner by at least 2016. Because plaintiffs' complaint was not filed until May 15, 2019, Jane Doe I's tort claims against Yesner are untimely, except to the extent that her tort claims are based on the sexually suggestive photographs Yesner allegedly took of her. Jane Doe I has alleged that she did not learn about the nature of these photographs until March 2019. Thus, the statute of limitations for tort claims based on the photographs did not begin to run until then, thereby making her tort claims based on the photographs timely.

Plaintiffs attempt to save Jane Doe's untimely tort claims by arguing that the continuing violations doctrine applies. "The continuing violations doctrine allows plaintiffs

---

[58]Complaint at 6, ¶ 16, Docket No. 1.

to establish an ongoing tort through incidents that occurred before the statute of limitations period and that continued into the limitations period." <u>Reich v. Cominco Alaska, Inc.</u>, 56 P.3d 18, 25–26 (Alaska 2002). "To benefit from the continuing violation theory, a plaintiff must first demonstrate that some discriminatory act occurred within the limitations period." <u>Sengupta v. Univ. of Alaska</u>, 21 P.3d 1240, 1249 (Alaska 2001). "The plaintiff must then show that the timely filed claim—based upon this act within the limitation period—is closely related to the otherwise time-barred claims." <u>Id.</u> "To determine whether the claims are sufficiently related, federal circuit courts have often looked at three primary characteristics of the violations: subject matter, temporal proximity, and permanence." <u>Id.</u> "Many courts have designated the permanence factor as the most important." <u>Id.</u> "The 'permanent' violation triggers a reasonable person's awareness of the alleged discrimination and the need to assert her rights." <u>Id.</u> "On a subjective basis, if a plaintiff's actions show that she knew her rights had been violated by a certain point in time, the limitations period starts running from that date." <u>Id.</u> "'The continuing violation doctrine does not exist to give a second chance to [a plaintiff] who allowed a legitimate . . . claim to lapse.'" <u>Id.</u> (quoting <u>Roberts v. Gadsden Mem'l Hosp.</u>, 835 F.2d 793, 800 (11th Cir. 1988)).

Because Jane Doe I has alleged that she knew she was being sexually harassed by at least 2016, the continuing violation doctrine cannot save her untimely claims. The statute of limitations as to these claims began running when she knew that her rights had been violated, which she has alleged was in 2016.

Jane Doe I's torts claim against Yesner are barred by the statute of limitations except to the extent that they are based on allegations related to the sexually suggestive photographs. Jane Doe I's tort claims against Yesner, except for those based on the sexually suggestive photographs, are dismissed without prejudice. Jane Doe I is given leave to amend these claims as it is possible (but unlikely) that she could amend these claims to make them timely.

As for Jane Doe II's tort claims, plaintiffs argue that they are not time barred because they are based, in part, on allegations that would constitute felony sexual assault, which has no statute of limitations. AS 09.10.065(a)(2) provides that "[a] person may bring an action at any time for conduct that would have, at the time the conduct occurred, violated provisions of . . . felony sexual assault[.]" "An offender commits the crime of sexual assault in the second degree," which is a felony, "if . . . the offender engages in sexual contact with another person without consent of that person[.]" AS 11.41.420(a)(1). "Sexual contact" is defined as "the defendant's . . . knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast[.]" AS 11.81.900(b)(60)(A)(i). Jane Doe II alleges that whenever Yesner spoke to her, "he would stare at her breasts and he would find ways for his hands to make contact with her breasts and buttocks."[59] She alleges that when Yesner would hug her, he "would put his hand on the small of her back and rub in circles just above her buttocks, lingering in the hug for several minutes" or he would "intentionally brush his hand

---

[59] Id. at 24, ¶ 64.

across [her] breasts in the process of hugging her and often times leave his hand wrapped around her hip."[60]  This unwanted touching meets the definition of sexual contact.

However, the statute requires that the "sexual contact" be "without consent." "'[W]ithout consent' means that a person . . . with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of death, imminent physical injury, or kidnapping to be inflicted on anyone[.]"  AS 11.41.470(8)(A).  "[T]he phrase 'without consent' refers to a particular type of unwanted sexual activity: unwanted sexual activity that is coerced by force or the threat of force."  Inga v. State, 440 P.3d 345, 349 (Alaska Ct. App. 2019).  Jane Doe II has not alleged that the unwanted sexual contact by Yesner was "coerced by force or the threat of force."  Id.

Plaintiffs then argue that the continuing violations doctrine makes all of Jane Doe II's tort claims timely.  This argument fails.  Jane Doe II has alleged that "[s]ometime in September 2013, [she] . . . believed she [made] a formal sexual harassment complaint about the conduct of Defendant Yesner to the Provost's office of the University."[61]  Because Jane Doe II has alleged that she knew by at least 2013 that she was being sexually harassed by Yesner, the continuing violation doctrine has no application to her claims.

Jane Doe II's tort claims against Yesner are barred by the statute of limitations except to the extent they are based on allegations related to her thesis poster.  Jane Doe II's tort

---

[60]Id. at 25, ¶ 66

[61]Id. at 7, ¶ 18.

claims against Yesner, except for those based on her thesis poster, are dismissed without prejudice.  Jane Doe II is given leave to amend these claims as it is possible (but unlikely) that she could amend these claims to make them timely.

As for Jane Does IV and V, plaintiffs argue that their tort claims against Yesner are not time barred because they did not realize that what Yesner was doing was sexual harassment until December 2017, which is when they allegedly reported Yesner's conduct to the University Chancellor and a Title IX investigation was begun.  But, these plaintiffs' allegations belie their contention that they were not aware that Yesner's conduct could be considered sexual harassment prior to December 2017.  Jane Doe IV alleges that she "reported her experiences with [d]efendant Yesner to her University of Alaska Graduate Committee Member. . . ."[62]  This allegation indicates that Jane Doe IV was aware of the facts that gave rise to her tort claims against Yesner prior to December 2017.  Although there are no allegations in the complaint about Jane Doe V reporting Yesner's conduct to anyone, Jane Doe V alleges that Yesner's constant staring made her feel violated and that she tried to avoid interactions with him.[63]  These allegations indicate that Jane Doe V was aware of the facts giving rise to her claims prior to December 2017.

Jane Does IV and V's tort claims cannot be saved by the continuing violation doctrine, as plaintiffs argue, because neither of these plaintiffs has alleged an act within the limitation

---

[62]Id at 8, ¶ 19.

[63]Id. at 38, ¶¶ 121-22.

period.  Jane Does IV and V's tort claims against Yesner are barred by the statute of limitations and are dismissed without prejudice.  Jane Does IV and V are given leave to amend these claims as it is possible (but unlikely) that they could amend these claims to make them timely.

Yesner next moves to dismiss most of Jane Does I and II's timely tort claims in Count VIII as implausible.  In Count VIII, Jane Does I and II allege claims based on three theories of liability for invasion of privacy:  1) intrusion of solitude, 2) public disclosure of public facts, and 3) false light.  Yesner argues that all of these claims have been inadequately pled, except for Jane Doe II's false light claim.

First, Yesner moves to dismiss Jane Does I and II's intrusion of solitude claim.  An intrusion of solitude claim is based on the Restatement (Second) of Torts § 652B, which reads, in relevant part:

> "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

Greywolf v. Carroll, 151 P.3d 1234, 1244–45 (Alaska 2007).  In order for a plaintiff to prevail on an intrusion of solitude claim, she must prove "(1) that [she] had a reasonable expectation of privacy, and (2) that [the] defendant intruded in a manner highly offensive to a reasonable person."  Id. at 1245.  Whether a plaintiff has a "reasonable expectation of privacy" contains a subjective and objective component.  Id.

Jane Doe I's intrusion of solitude claim is based on her allegations that Yesner took sexually suggestive photos of her at the Broken Mammoth Archaeological Site.[64] Yesner argues that there is no liability for intrusion of solitude for taking photographs when other people are present. As the comments to Section 625B explain, "there [is no] liability for observing [the plaintiff] or even taking [her] photograph while [she] is walking on the public highway, since [she] is not then in seclusion, and h[er] appearance is public and open to the public eye."[65] Yesner contends that courts have routinely held that intrusion of solitude claims fail as a matter of law if they are based on photographs taken of persons in accessible locations. See Muratore v. M/S Scotia Prince, 656 F. Supp. 471, 483 (D. Me. 1987), aff'd in part, vacated in part on other grounds, 845 F.2d 347 (1st Cir. 1998) (no intrusion of solitude based on photographs of the plaintiff taken in public areas of the ship, even though the plaintiff did not want her photograph taken); Cheatham v. Paisano Publications, Inc., 891 F. Supp. 381, 384-85 (W.D. Ky. 1995) (no intrusion of solitude based on photograph taken at a bikers' convention of the plaintiff wearing "one of her distinctive creations, which displayed her bottom through fishnet fabric that replaced cut out portions of her blue jeans"); Bogie v. Rosenberg, 705 F.3d 603, 611 (7th Cir. 2013) (no intrusion of solitude based on video taken when the plaintiff was "visiting a celebrity performer's backstage area where the general public, of which Bogie was a member, was not allowed, but where at least several

_____

[64]Complaint at 58, ¶ 188, Docket No. 1.

[65]Restatement (Second) of Torts § 652B, cmt c.

others were present"); <u>King v. Metcalf 56 Homes Ass'n, Inc.</u>, 385 F. Supp. 2d 1137, 1146 (D. Kan. 2005) (no intrusion of solitude based on photographs taken of people entering and leaving a residence and of vehicles parked in the driveway because they were "readily observable to the public eye").  Similarly here, Yesner argues that there can be no liability for photographs taken at an archaeological site where other students were present.

Plaintiffs argue that Jane Doe I has adequately alleged an intrusion of solitude claim. They argue that she has alleged that she had a reasonable expectation of privacy and that she believed that her picture was being taken for legitimate educational and professional reasons. Plaintiffs argue that Jane Doe I's allegations are much different from those in the cases cited by Yesner because she has alleged that the photographs were taken at a secluded archeological site while she was taking a University class.  Plaintiffs argue that the archeological site is not an "accessible" location and is not at all akin to a public street or a residential driveway.  Plaintiffs remind defendants that there may still be an invasion of privacy if a person is in a public space.  Plaintiffs cite to <u>Daily Times Democrat v. Graham</u>, 162 So.2d 474 (Ala. 1964), by way of example.

There, a photograph was taken of Graham at an amusement park when a gust of wind caused her skirt to fly up over her head.  <u>Id.</u> at 476.  The court observed that

> [o]ne who is a part of a public scene may be lawfully photo-
> graphed as an incidental part of that scene in his ordinary status.
> Where the status he expects to occupy is changed without his
> volition to a status embarrassing to an ordinary person of
> reasonable sensitivity, then he should not be deemed to have
> forfeited his right to be protected from an indecent and vulgar

intrusion of his right of privacy merely because misfortune
overtakes him in a public place.

Id. at 478.  Plaintiffs argue that much the same is true here, that although Jane Doe I may

have been in a public place, she did not consent to having sexually suggestive photographs

taken.

While it is possible that Jane Doe I could plead a plausible intrusion of solitude claim,

she has not done so.  It is possible that the archaeological site was secluded and not

accessible, but there are not allegations to that effect in the complaint.  As currently pled,

Jane Doe I's intrusion of solitude claim is implausible, and it is dismissed without prejudice.

Jane Doe I is, however, given leave to amend this claim.

Jane Doe II's intrusion of solitude claim is based on allegations that Yesner "peruse[d]

her social media profile and select[ed] a sexually suggestive photograph" of her to use on her

thesis poster.[66]  Yesner argues that she cannot state a plausible intrusion of solitude claim

based on his using a photograph from her Instagram account because the entire point of using

social media is to share content with others.  Yesner argues that it is implausible that Jane

Doe II had a reasonable expectation of privacy as to the photos on her Instagram account,

particularly since there are no allegations that her account was private or that she had limited

access to her account in any way.

---

[66]Complaint at 59, ¶ 190, Docket No. 1.

Plaintiffs argue that Jane Doe II's intrusion of solitude claim is plausible because Yesner is not one of her followers on Instagram. They argue that this means that Jane Doe II did not intend to share her photograph with Yesner.

But, there are no allegations in the complaint as to who was or was not a follower of Jane Doe II's Instagram account. Moreover, there are no allegations in the complaint that Jane Doe II took any steps to limit access to her Instagram account. As currently pled, this claim is implausible, and it is dismissed without prejudice. Jane Doe II is, however, given leave to amend this claim.

Next, Yesner moves to dismiss Jane Doe II's public disclosure of private fact claim. Section 652D of the Restatement (Second) of Torts "outlines the elements of the privacy tort of public disclosure of private facts[.]" Doyle v. Harper Collins Publishers, Inc., Case No. 3:05-cv-0300-TMB, 2006 WL 8438639, at *2 (D. Alaska May 31, 2006). Section 652D provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
> (a) would be highly offensive to a reasonable person, and
> (b) is not of legitimate concern to the public.[67]

Jane Doe II alleges that "[t]he public disclosure of" her Instagram "photograph amounts to public disclosure of private facts."[68] However, "[t]here is no liability when the

---

[67]Restatement (Second) of Torts § 652D (1977).

[68]Complaint at 59, ¶ 192, Docket No. 1.

defendant merely gives further publicity to information about the plaintiff that is already public."[69]  Given that the photograph in question was published by Jane Doe II on a social media site, Yesner argues that she had already made this photograph public and that she could not have had a reasonable expectation of privacy in this account.

Plaintiffs argue that Jane Doe II's public disclosure of private facts claim is plausible because she had not shared this photograph for Yesner to view.  Plaintiffs also argue that Jane Doe II did not intend the public at large to see her Instagram account, but there are no allegations to this effect in the complaint.  As currently pled, this claim is implausible and it is dismissed without prejudice.  Jane Doe II is, however, given leave to amend this claim.

Yesner next argues that Jane Doe I's false light claim is not plausible.  "A false light invasion of privacy claim arises when the defendant publicizes a matter that places the plaintiff before the public in a false light."  State v. Carpenter, 171 P.3d 41, 53 (Alaska 2007).  Jane Doe I's false light claim is based on allegations that Yesner stored the sexually suggestive photographs he took of her "on his public work computer at the University," where they "could be seen by fellow students who used his computer for work and study."[70]  Yesner argues that this claim is not plausible because Jane Doe I has not alleged that the photographs were "publicized" to the public at large.  Communicating the information in

---

[69]Restatement (Second) of Torts § 652D, cmt. b.

[70]Complaint at 58-59, ¶ 189, Docket No. 1.

question to "a single person or even to a small group of persons" is not sufficient.[71]  Here, Yesner argues that Jane Doe I has not alleged how many students might have seen the photographs but argues that it is unlikely that the number would be so many as to constitute "the public at large."  See Polin v. Dun & Bradstreet, Inc., 768 F.2d 1204, 1206-07 (10th Cir. 1985) (group of 17 insufficient); Hunter v. The Buckle, Inc., 488 F. Supp. 2d 1157, 1180 (D. Kan. 2007) (group of 20 insufficient).

Plaintiffs argue that it is possible that the photographs of Jane Doe I were shared with enough people to be considered publicized to the "public at large" which may be true.  But, as currently pled, this claim is implausible as it is not at all clear who had access to Yesner's public work computer or how many people might have seen the photographs.  This claim is dismissed without prejudice.  But, Jane Doe I is given leave to amend this claim.

Finally, defendants move to dismiss Jane Does 6-20 without prejudice.  These plaintiffs allegedly "are and/or were students of Defendant University of Alaska System who were subjected to harassment, retaliation, and/or discrimination but who have yet to come forward and be identified."[72]  Defendants argue that these fictitious plaintiffs should be dismissed because Rule 17 requires that "[a]n action . . . be prosecuted in the name of the real party in interest."  Given that plaintiffs could always amend to add new plaintiffs, as evidenced by the pending motion to amend, these placeholder plaintiffs are dismissed.

_____

[71]Restatement (Second) of Torts § 652D, cmt. a.

[72]Complaint at 3, ¶ 6, Docket No. 1.

Pursuant to Rule 15(a), plaintiffs move to amend their complaint to add two plaintiffs, Jane Doe VI and Jane Doe VII. Jane Doe VI proposes to allege, among other things, that Yesner sexually assaulted her in 1992. Jane Doe VII proposes to allege that Yesner sexually harassed her in 2003-2004. These proposed plaintiffs assert the same claims as the five original plaintiffs.

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Bowles v. Reade, 198 F.3d 752, 757 (9th Cir. 1999)). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." Id. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

Plaintiffs prematurely filed their amended complaint at Docket No. 28. That amended complaint is stricken because plaintiffs' motion to amend is granted in part and denied in part. While plaintiffs can amend to add Jane Does VI and VII as plaintiffs, some of the claims proposed to be asserted by Jane Does VI and VII would be subject to dismissal and thus amendment as to some of these claims would be futile. As discussed above, the state law claims asserted against the University defendants are being dismissed on sovereign immunity grounds as are the § 1983 claims and plaintiffs are only being given leave to amend the § 1983 claims for equitable relief against the Board of Regents. And, Jane Doe VII's tort

claims against Yesner, as she proposes to plead them, would be barred by the statute of limitations for the same reason the claims of Jane Does IV and V are time barred.

Motion to Preclude Use of "Jane Doe" Pseudonyms

Yesner moves to preclude the use of "Jane Doe" pseudonyms. In the Ninth "[C]ircuit, [courts may] allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067–68 (9th Cir. 2000) (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." Id. at 1068. Courts permit plaintiffs to use pseudonyms "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature[.]" Id. (citation omitted).

Plaintiffs argue that this case involves matters that are sensitive and highly personal. But the cases plaintiffs cite to in support, Doe v. Cabrera, 307 F.R.D. 1, 5-6, (D.D.C. 2014) and Doe v. Trustees of Dartmouth College, Case No. 18–cv–040–LM, 2018 WL 2048385, at *5 (D.N.H. May 2, 2018), involved allegations of sexual assault, as opposed to allegations of sexual harassment. "Plaintiffs alleging sexual harassment generally have not been allowed to proceed anonymously." E.E.O.C. v. ABM Industries Inc., 249 F.R.D. 588, 594 (E.D. Cal. 2008).

"However, anonymity is justified where plaintiffs face 'greater threats of retaliations than the typical plaintiff.'" Id. (quoting Advanced Textile, 214 F.3d at 1070–1071). Plaintiffs argue that it is sufficient that they have alleged that Yesner retaliated against them when they rejected his sexual advances, but given that Yesner apparently already knows plaintiffs' identities, this does not help plaintiffs.

Plaintiffs also contend that they have received disturbing threats and backlash for filing this lawsuit, that one of them has considered filing a police report because of the threats, and that another one has received hate mail at her house. Plaintiffs argue that they will be subjected to further retaliation and social stigmatization if their identities are revealed. They argue that their right to privacy outweighs the public's interest in knowing their identities. And, they argue that Yesner will not be prejudiced in any way if they are allowed to use pseudonyms because he is already aware of their identities. They point out that Yesner will be allowed to use their names in discovery under the terms of a protective order.

Plaintiffs seem to be saying that they have received threats and backlash from persons other than defendants, which indicates that their identities are already known. The court is unpersuaded that plaintiffs (except proposed Jane Doe VI, due to the highly personal nature of her allegations) face threats or retaliation greater than named plaintiffs suing over similar harassment claims. While the court perceives no prejudice to defendant Yesner, plaintiffs' wish for anonymity does not outweigh the public interest in disclosure.

Yesner's motion to preclude the use of "Jane Doe" pseudonyms is granted except as to proposed Jane Doe VI.

<u>Conclusion</u>

The University defendants' motion to dismiss[73] is granted. Plaintiffs' state law discrimination and tort claims asserted against the University defendants is Counts IV, VI, VII, and VIII are dismissed without prejudice. But, plaintiffs are not given leave to amend as to these claims. Plaintiffs' § 1983 claims for damages and equitable relief asserted against the University of Alaska System in Count V are dismissed with prejudice. Plaintiffs' § 1983 claims for damages asserted against the Board of Regents in Count V are dismissed with prejudice. Plaintiffs' § 1983 claims for equitable relief asserted against the Board of Regents in Count V are dismissed without prejudice. Plaintiffs are given leave to amend as to their § 1983 claims for equitable relief against the Board of Regents.

Yesner's motion to dismiss[74] is granted. Except for Jane Doe II's false light claim, the tort claims asserted by Jane Does I, II, IV, and V against Yesner in Counts VI, VII, and VIII are dismissed without prejudice. Jane Does I, II, IV, and V are given leave to amend as to the claims being dismissed. The fictitious plaintiffs (Jane Does 6-20) are dismissed without prejudice.

Plaintiffs' amended complaint[75] is stricken. Plaintiffs' motion to amend[76] is granted in part and denied in part. Plaintiffs may amend their complaint to add plaintiffs Jane Does

---

[73]Docket No. 13.

[74]Docket No. 16.

[75]Docket No. 28.

[76]Docket No. 27.

VI and VII. However, these plaintiffs may not assert claims that would be subject to dismissal on Eleventh Amendment grounds, and Jane Doe VI is reminded that she cannot assert timed-barred claims.

Yesner's motion to preclude the use of pseudonyms[77] is granted, except as to proposed plaintiff Jane Doe VI. Going forward, the other plaintiffs must use their actual names.

Plaintiffs' amended complaint, should they elect to file one, shall be filed on or before September 25, 2019.

DATED at Anchorage, Alaska, this 4th day of September, 2019.

/s/ H. Russel Holland
United States District Judge

---

[77]Docket No. 20.