Anthony G. Buzbee* (TX Bar No. 24001820)(*pro hac vice pending)
tbuzbee@txattorneys.com
Cornelia Brandfield-Harvey* (TX Bar No. 24103540)(Admitted Pro Hac Vice)
cbrandfieldharvey@txattorneys.com
THE BUZBEE LAW FIRM
600 Travis Street, Suite 7300, Houston, TX 77002
Tel: (713) 223-5393
Fax: (713) 522-5909

Nicole C. Cusack (AK Bar No. 1511093)
nicole@cusacklawak.com
CUSACK LAW, LLC
2665 East Tudor Road, Suite 202
Anchorage, AK 99507
Tel: (907) 903-4428
Fax: (907) 222-5412

Charles Sturm* (TX Bar No. 1511093)(Admitted Pro Hac Vice)
csturm@sturmlegal.com
STURM LAW PLLC
712 Main Street, Suite 900
Houston, TX 77002
Tel: (713) 955-1800

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THERESA DUTCHUK, ANNALISA HEPPNER, LIZ ORTIZ, RANNA WELLS, NORMA JOHNSON, AND JANE DOE VI<br><br>*Plaintiffs,*<br><br>vs.<br><br>DAVID YESNER, UNIVERSITY OF ALASKA BOARD OF REGENTS AND UNIVERSITY OF ALASKA SYSTEM,<br><br>*Defendants.* | Case No.: 3:19-cv-00136-HRH<br><br>**FIRST AMENDED COMPLAINT** |

FIRST AMENDED COMPLAINT - 1

# I.    NATURE OF THE ACTION

Plaintiffs, Theresa Dutchuk, Annalisa Heppner, Liz Ortiz, Ranna Wells, Norma Johnson and Jane Doe VI for their Complaint against Defendants David Yesner ("Yesner"), University of Alaska Board of Regents ("Board of Regents"), and University of Alaska System ("University of Alaska")("University"), state as follows:

This action arises from Defendant University of Alaska's deliberately indifferent response to the severe and long running sexual harassment of graduate students by University of Alaska's professor and supervisor, Defendant Yesner. Defendant University of Alaska's failure to promptly and appropriately investigate and respond to the harassment subjected Plaintiffs to retaliation and a hostile environment, effectively denying them access to educational and professional opportunities. Further, Defendant University of Alaska's employee, Defendant Yesner retaliated against Plaintiffs for denying Defendant Yesner's sexual advances, which Defendant University of Alaska failed to prevent or take action against even after the Plaintiffs complained of Defendant Yesner's behavior and notified Defendant University of Alaska, once the actions had started. This malicious and intentional conduct has subjected Plaintiffs to significant and pervasive reputational damage and emotional distress, destroying their careers and causing significant damage to their mental health. Their lives have been forever changed by Defendants' actions.

# II.    PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Theresa Dutchuk is a resident of the state of Alaska.

2. Plaintiff Annalisa Heppner is a resident of the state of Rhode Island.

FIRST AMENDED COMPLAINT - 2

3. Plaintiff Liz Ortiz is a resident of the state of Alaska.

4. Plaintiff Ranna Wells is a resident of the state of Alaska.

5. Plaintiff Norma Johnson is a resident of the state of Alaska.

6. Plaintiff Jane Doe VI is a resident of the state of Oregon.

7. By filing this Complaint, it is also the intention of Plaintiffs to give notice to all responsible parties as to all potential causes of action arising from the facts as set out herein. Defendants are instructed to notify all such responsible parties. Moreover, the stating of certain causes of action in this Complaint, and the allegations of certain facts as to said causes of action, are without prejudice to Plaintiffs' right to amend this Complaint at a future juncture, and to state supplemental and/or new causes of action and add new allegations and parties as to any and all causes of action that may be viable due to the culpable conduct of the responsible parties all of which relate back to the Complaint.

8. University of Alaska receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

9. University of Alaska had, at all relevant times, supervisory authority over University of Alaska, Anchorage its administration, faculty, and staff, including Defendant Professor David Yesner.

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367. Venue is proper in the Anchorage division of the United States District Court in the District of Alaska pursuant to 28 U.S.C. § 1391 because *inter alia,* Defendant University

FIRST AMENDED COMPLAINT - 3

is situated in the Anchorage Division of the District of Alaska, and is subject to this Court's personal jurisdiction; and the unlawful conduct herein occurred within Anchorage.

### III.    STATEMENT OF FACTS

**THE UNIVERSITY'S DELIBERATE INDIFFERENCE**

*The University of Alaska failed to comply with Title IX*

11.    Defendant University of Alaska has a long, painfully embedded history of mishandling sexual harassment claims by students against other students and by students against professors, often turning a blind eye to the numerous reports that inundate the office. Defendant University of Alaska, Anchorage's Title IX office has been grossly mismanaged with high turnover, lack of leadership, and has been ineffective in addressing reports and protecting students. The University of Alaska, Anchorage (UAA) hired a new Title IX investigator in June 2017, Sara Childress. A Title IX investigator is required at every University that is subject to Title IX rules. Childress has admitted that the Office of Equity and Compliance needs to see significant improvement and a major overhaul with respect to policies and procedures going forward. The way the office was functioning was in direct violation of Title IX. Specifically, Childress said she would like to see:

> "a structure to that office, written expectations, protocols. We have a huge retention issue in that office, as I am the only one in the office at this point."

Retention problems ultimately resulted in an increase in processing times and failure to timely address reports, if ever.

> "We are creating expectations for ourselves, creating processes, documentation, data across the board. We are also, I would say, changing the face of the office. We are really trying to increase visibility."

FIRST AMENDED COMPLAINT - 4

13.     By making these statements, Ms. Childress made it clear that the University had failed to protect its students and the community against sexual harassment.

14.     According to an in-depth article by The Northern Light, the University student newspaper, UAA received over 86 reports of sexual harassment from July 2017 to June 2018, and not ONE report resulted in discipline of any kind, much less an investigation. In addition, after conducting a compliance review, the Office of Civil Rights (OCR) wrote to the University of Alaska President Jim Johnsen, saying that the University had "violated Title IX" with regards to its response to sexual harassment complaints. The most serious violation, according to OCR, was the University's processing times being too long.

> "During the 2013-2014 academic year, UAF's case processing time averaged ***122 days*** and the longest time was ***567 days***; UAA had an average of 97 days and the longest case took ***403 days***, and UAS provided only one investigative record to OCR for a case that took ***125 days***."[1]

15.     The Title IX Rules mandate that reports be resolved within only ***60 days***. According to OCR, University of Alaska has violated the Title IX rules for years, hurting complainants in the process who never received justice.

16.     Even the University of Alaska Title IX offices were internally infested with predators. The misconduct investigator hired by UAF, Patrick Shipwash, was found to have engaged in sexual misconduct at a previous university where he was employed. UAF failed

---

[1] Cheyenne Mathews, *Red Zone: They came forward. Then what?,* The Northern Light, September 13, 2018 http://www.thenorthernlight.org/red-zone-they-came-forward-then-what/.

FIRST AMENDED COMPLAINT - 5

to do its due diligence to ensure the investigators it hired were free of sexual misconduct allegations themselves, compounding the danger in which the University was placing its students.

17. In 2016, Plaintiff Theresa Dutchuk reported to defendant University of Alaska that Defendant Yesner had sexually harassed her and then retaliated against her. As part of his retaliation for her voicing her objections to his comments and advances, Defendant Yesner had become non-responsive to plaintiff Dutchuk, even though she required his guidance as her thesis adviser. Plaintiff Theresa Dutchuk reported Yesner's bizarre conduct toward her and non-responsiveness to University of Alaska's Dean John Petraitis. Once again, the University responded with an unhelpful non-answer, advising Plaintiff Theresa Dutchuk to merely "switch advisors." Someone in the university's anthropology department could have provided Plaintiff Theresa Dutchuk with sexual harassment resources, referred her complaints to the office of equity and compliance, or unilaterally taken it upon themselves to investigate Yesner. However, none of these actions were taken.

18. In 2011, Plaintiff Annalisa Heppner reported Defendant University of Alaska employee, Defendant David Yesner's behavior to a professor at the time and now currently the Chairwoman of the Anthropology Department at University of Alaska. In her report, Annalisa Heppner reported the instances described in more detail below of sexual harassment and retaliation by Yesner. Plaintiff Annalisa Heppner had sought the protection of a University leader by reporting the sexual harassment and retaliation to a University

FIRST AMENDED COMPLAINT - 6

official. The professor told Plaintiff Annalisa Heppner that she "should cover up more" so as to not draw attention to herself and create a distraction. No investigation was ever conducted.

19.     Sometime in September 2013, Plaintiff Heppner purported to and believed she was making a formal sexual harassment complaint about the conduct of Defendant Yesner to the Provost's office of the University. Instead of taking her complaint seriously and conducting further investigation, the Provost's office completely blew her off and advised simply that it would be best for Plaintiff to "switch advisors". Plaintiff's concerns fell on deaf ears. Although the University Provost's Office minimized the task of switching advisors, doing so was laborious, unrealistic, and sets candidates back years in the PhD process. Plaintiff was already years into her thesis writing and to switch out at such a late juncture would have required Plaintiff to start the process all over again, starting at point zero, incurring significant costs, and further delaying her graduation and her career for years. Once again, Plaintiff left feeling deflated and hopeless. No action was taken. No one followed up.

20.     Plaintiff Ranna Wells reported her experiences with Defendant Yesner to her University of Alaska Graduate Committee Member, who had encouraged Plaintiff to attend UAA and study under Defendant Yesner. The graduate committee member and her husband (both of whom were previously graduate students under Defendant Yesner) knew of Defendant Yesner's sexual harassment and predatory behavior but nevertheless

FIRST AMENDED COMPLAINT - 7

recommended Plaintiff Wells work with Defendant, knowingly placing her in a dangerous situation with known predator Yesner.

21.     Whenever Plaintiff Wells would complain to this graduate committee member and her husband about Defendant Yesner's inappropriate comments and gestures as her advisor, they would both respond with apathy, saying "that's just Yesner" and "do not believe the stories until it happens to you". They would also remark that "it's just department politics." These responses were totally inadequate for someone voicing their concerns about sexual harassment. Furthermore, these comments confirmed that the University graduate committee member and her husband knew about Defendant's behavior and yet chose to ignore it and instead defended Defendant Yesner.

22.     Plaintiff Jane Doe VI told a number of people about Yesner's behavior and members of the Anthropology community at the University. Plaintiff Jane Doe VI relayed her horrifying account of sexual assault by Defendant Yesner to one of her female colleagues who in turn reported the incident to the Department Chair of the Anthropology Department at the time. Her outcry was met with a shrug by the Department and no investigation was launched. At the time, it was known that the Department Chair and Yesner were close friends.

23.     What the University did do was continue to reward Yesner for his sexual harassment, sweeping the students'/Plaintiffs' complaints under the rug and awarding Yesner with promotion after promotion within the Anthropology department and within the graduate school in general. Defendant University even appointed Defendant Yesner

FIRST AMENDED COMPLAINT - 8

Associate Graduate School Dean of UAA for two terms and ultimately proceeded to bestow "emeritus" status upon Yesner – a highly coveted and one of the more highly prestigious positions at any university. Once a Professor achieves "emeritus" status, he/she is allowed unrestricted access to the University forever. He/she can come and go as she pleases without any supervision. Despite extensive reports of Defendant Yesner's history of sexually harassing and sexually abusing female students, the University was going to allow him even more leeway and an unfettered gateway to prey on young female students on campus.

24.     Plaintiff Heppner and Plaintiff Dutchuk constantly reported Defendant Yesner's inappropriate and violative behavior to professors and other faculty members at the University. However, University Faculty Members and leaders either refused to or failed to take Plaintiffs' reports seriously, often responding to the women's reports with: "Oh, that's just David being David."

25.     Once Plaintiff Heppner learned that Professor David Yesner was a candidate for Emeritus status, she, along with the other women victimized by Defendant Yesner, once again reported David Yesner, this time to Chancellor Sam Gingerich via email. As is consistent with the University's ongoing indifference and inaction, Chancellor Gingerich apparently ignored Plaintiff Heppner's email and never responded. Plaintiff was forced to send the email again to Chancellor Gingerich on December 11, 2017. The email read as follows:

Dear Chancellor Gingerich,

FIRST AMENDED COMPLAINT - 9

I'm emailing you today to add my voice to those of other students from the Anthropology department who strongly oppose granting Dr. David Yesner emeritus status at our university. I am David's last graduate student, in fact, my diploma hasn't been issued yet, so writing to you makes me nervous. However, I feel like I have to say something.

David was my thesis advisor for seven years, and his incompetence as an advisor, archaeologist, and mentor can't be understated. He failed repeatedly in his academic duties to me. His general poor performance in his role is a large part of the reason why it took me over seven years to complete a three-year degree.

The phrase I found the most helpful in dealing with David was, "You can't talk to me that way." I used it when he asked me to spank him for failing to perform a task I requested. I used it when he complimented my clothing. I used it when he complimented my body. I used it when he said, "if I were 30 years younger, I'd like to 'be with you.' David made a habit of staring directly at my breasts while we talked, of grazing his hands against my breasts, or my butt whenever he could. He frequently put his hand on the small of my back, and would rub in little circle, just above my butt. I asked him to stop touching me on a number of occasions. I started showing up to our meetings wearing my winter parka, and refusing to remove it. On more than one occasion, I'd come in for a meeting, and his fly would be undone. David had well-organized, graphic pornography on the laboratory computer we shared. Occasionally, I would come in to the lab, and find it just...open. As I searched through the records of the Broken Mammoth collection (which were and are a shambles) to do my thesis research, I found photographs of excavations at the field site, where an artifact or feature was cropped from the frame of the photograph to better feature the student's breasts. I found print outs of pornography. I stopped going to meetings where I might be alone with him. I refused to have "closed-door" meetings in his office.

David also advised my former boyfriend. He would ask my boyfriend about our sex life. David told my partner that he knew we'd get together because they had the same taste in women, and then referenced my breasts. David told my partner (within my earshot) that it didn't matter how I did in school, because I was going to be such a great wife for him. My disgust and feeling that I was the object of sexual desire kept me from wanting to work with David. I delayed my work, and didn't fully commit to writing my thesis until I moved out of state, and finally felt like I could work on the collection that I cared about without worrying that I would be treated like a sex object. These are all such small stories of the harassment I faced. Imagine these stories, over and over and over and over and over and over again, for seven years. It was a relentless stream of objectification and demeaning behavior that left me in frustrated and angry tears.

FIRST AMENDED COMPLAINT - 10

I'd like to emphasize that David wielded considerable power over me. In my tenure as his student he was also an associate Dean in the Graduate School, and he is the Principal Investigator of the archaeological site where I did my thesis research. Leaving, complaining, or switching advisors, never felt like an option. Additionally, I felt unsupported by my faculty, and the university. David's behavior was an 'open secret.' I was told frequently that his actions were gross, but harmless, and some of this behavior was laughable, a product of another time. When he was offered the Dean position, I felt like there was nothing I could do. When I think back at my time at UAA, I think most often of the helplessness, powerlessness, disgust, and disrespect I felt on a regular basis. David effectively curtailed my scholarship, my desire to be an archaeologist, and my desire to work in academics. I came in to UAA with the goal of continuing on to a Ph.D, program, but working with David, and dealing with UAA squashed that desire from me. His behavior directly blocked my progression as a scientist.

I understand that you are unlikely to revoke this status, but I want you to know, that as someone who worked closely with David, I strongly, and deeply oppose this decision. This is an opportunity for the university to stand up for its female students, and to apologize for the sexual harassment I was subjected to, on a regular basis, for seven years of my life. I am deeply disappointed and furiously angry that this is happening. It feels like a slap in the face, and if feels like institutional support of someone who I view as a serial predator. I felt unsafe in his presence, I felt like I had no place to go within the university to voice my complaints, and this kind of thing is exactly why. It is not a secret that David Yesner is inappropriate with his female students. This is something known to the department, the college, and the University Title IX office. I've complained and contributed to investigations, and nothing happened. Choices like granting David Yesner emeritus status directly contribute to a culture of sexual harassment that keeps women out of science and the academy. Every faculty member who nominated him, everyone who refused to object to his nomination, and you are complicit in creating an environment that is hostile to women. In this age of #metoo, and the ousting of serial sexual harassers in the entertainment, media, political, and academic worlds, it is beyond tone deaf, to grant an honor like this to someone like Dr. Yesner.

Speaking publicly about my experience with David is not something I shy away from. This isn't second hand information, and it's not hearsay. These are my experiences with UAA, the Anthropology Department, and my faculty advisor. I have cautioned female students about working with him, and I've advised incoming students looking to study Pleistocene archaeology to not only not work with David, but to go to other schools.

I have already said it, but I am disappointed in UAA. Please feel free to forward this email to anyone you'd like.

FIRST AMENDED COMPLAINT - 11

26.     Plaintiffs Liz Ortiz, Norma Johnson, and a third female survivor co-authored a letter which they sent to Chancellor Gingerich on December 8, 2017 upon hearing of Defendant Yesner's pending emeritus status. The letter reads as follows:

Chancellor Gingerich,

The purpose of this letter is to request that the University of Alaska Anchorage wait on announcing the award of Professor Emeritus to Dr. David Yesner of the Department of Anthropology, until it can be determined that he meets the requirements of the role. While there has not been an official announcement that he has been awarded Emeritus, we have witnessed Dr. Yesner moving the contents of his office into the emeritus space within the Beatrice McDonald Hall. We have also overheard conversations between Dr. Yesner and another emeritus faculty member concerning sharing the space.

The title and rank of Emeritus is said to be bestowed upon professors who promote student success, advance their department, and represent the ideals of the University. We believe that this title should not be awarded to a professor who does not exemplify these characteristics, and ask that you take this under consideration before awarding Emeritus to Dr. Yesner. It has come to our attention that Dr. David Yesner has had Title IX complaints filed against him by colleagues of ours. While we do not know the status of these investigations, we have heard of the incidents from the individuals who filed them. Additionally, complaints have been made to Dean Petraitis in regards to quality of instruction in the classroom.

Importantly, the University of Alaska Anchorage's 2020 initiative identifies the main goal as to "Advance a culture of institutional excellence that inspires and enables student, faculty, and staff success". Also, UAA's Office of Equity and Compliance website states that their mission is ensuring a climate of equity, respect, and safety. "The UAA Office of Equity and Compliance affirms its commitment to a safe and healthy educational and work environment in which educational programs, employment and activities are free of discrimination and harassment". We question if awarding Emeritus to Dr. Yesner reflects the goals and mission of the University of Alaska Anchorage, and respectfully request that a delay of this announcement be considered.

If you have any questions, or would like to discuss further issues, the signatories of this letter are available to meet in person at your convenience.

FIRST AMENDED COMPLAINT - 12

27. This time, instead of ignoring the female complainants, Chancellor Gingerich responded by stating that the "[emeritus] process was completed weeks ago" and "the Commencement Program [had already] been finalized". His response failed to address any of the sexual harassment and discrimination reports and clearly communicated to Plaintiffs that their appeals for help from the University were nothing more than an annoyance to him.

28. Plaintiff Jane Doe VI filed a complaint with the Office of the Chancellor on December 10, 2017 regarding Defendant Yesner's behavior when she was notified that Defendant Yesner was a candidate for the position of emeritus professor.

29. Plaintiff Wells submitted a letter to Chancellor Gingerich on December 8, 2017, reporting harassment and discrimination by Defendant Yesner. In response to her letter, she was referred to the University's Title IX investigators. Plaintiff Wells repeatedly attempted to gain assistance from Defendant University's Title IX Office. The University's Title IX Office first ignored her calls for assistance and then was dismissive and disrespectful.

30. The University's Title IX office failed to return Plaintiff Well's calls to receive a status update on her report. After no response from the University and desperate to gain some assistance, Wells resorted to calling the Office two to three times a week for months on end to no avail. When she did finally hear back from someone at the University's Title IX office, the investigator told Wells that she was so "tired" of Plaintiffs' calls, leading Plaintiff to believe that the Office was not taking her claims seriously or taking any

FIRST AMENDED COMPLAINT - 13

action with respect to her reports about Defendant Yesner. The University's Title IX Office was more concerned about protecting Defendant University's reputation than protecting its students. By the time the office got back to Plaintiff, the investigation into Professor Yesner and report were already close to being completed and released.

31.     The University's Title IX Office did not provide information about victim resources and referrals for support to Plaintiff Wells, as is required. The University did not inform Wells of available resources on campus for survivors of sexual harassment.

32.     Additionally, Plaintiff Wells was made aware that the Title IX Office was severely understaffed after a Title IX investigator mentioned that **they do not have anyone specifically working to answer the phones and that employees trade off taking days to answer phones.** This dearth of employees leads to reports falling through the cracks and sexual harassment to continue.

33.     The safety and wellbeing of female students came a distant second to the University's desire to protect its reputation and fundraising efforts. The University chose convenience and money to the detriment of their students, specifically Plaintiffs and the other victims of Professor Yesner.

34.     Only recently, after the report was released and drew media attention, did Defendant University hand down any "punishment" to Professor Yesner. The University has banned Professor Yesner from the University campus and from affiliating with the University of Alaska. Judging by his past actions and his recent attendance at the Society for American Archaeology (SAA) Conference discussed below where UAA students were

FIRST AMENDED COMPLAINT - 14

presenting and where they would be vulnerable to Defendant Yesner's predatory behavior, Defendant Yesner most likely has no intention of abiding by the "punishment" handed down by the University.

35.     The University had opportunity after opportunity to do the right thing and take a stand, but instead of prioritizing the safety and well-being of its students, the University chose to protect Professor Yesner over its students, including Plaintiffs.

36.     At the very least, Defendant Yesner's punishment should have been termination from the University a long time ago but instead the University chose to protect him and continued to provide young female students as prey to a known predator.

## **GENERAL ALLEGATIONS OF PLAINTIFF THERESA DUTCHUK**

### **SEXUAL HARASSMENT**

**"Sexual harassment" is defined as:**

**". . . unwelcome sexual advances, requests for sexual favors, unwanted and repetitive messages of a sexual nature, unsolicited and unwelcome transmission of images of a lewd or sexual nature, or other verbal or physical conduct of a sexual nature where:**

> **(a) submission to such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment or education.**

> **(b) submission to or rejection of such conduct by an individual is used as the basis for retaliation, or for other employment or academic decisions affecting that individual; or**

> **(c) the conduct creates a hostile environment.[2]"**

---

[2] University Regulation R01.04.010(B)(2).
FIRST AMENDED COMPLAINT - 15

*Defendant Yesner used his position of power and privilege to gain Plaintiff's trust.*

37.     Plaintiff Theresa Dutchuk first met Defendant Yesner in 2010 as an undergraduate student at University of Alaska. She would work at archaeological sites referred to as field schools[3], where students from different universities would gather for the summer to participate in archeological digs under the supervision of professors such as Defendant Yesner.

38.     Defendant Yesner was Plaintiff Dutchuk's Anthropology Graduate School Advisor from 2011 to the end of 2016/early 2017. He was also Plaintiff's instructor for her field school in 2010 at the Broken Mammoth Archaeological Site near Delta Junction. Plaintiff served as Defendant Yesner's Teaching Assistant for one semester as well.

39.     Defendant Yesner was considered by many to be one of the most well-known and highly regarded faculty members in the Anthropology Department and at the University in general. To his students devoted to the study of archaeology, Defendant Yesner was larger than life. He had contributed to several books on the subject of anthropology and archaeology and was celebrated as a legendary figure in the community for being the primary authority for the Broken Mammoth Archaeological Site, one of the oldest and most exciting archaeology sites in North America. He was invited to speak at conferences around the world, including Europe and South America. Plaintiff commented

---

[3] Field school is a class that is required to obtain a bachelor's degree in Anthropology.

FIRST AMENDED COMPLAINT - 16

that Professor Yesner's name was listed all over her textbooks in undergraduate school and she, along with other students, idolized him, studying his methods and dreaming of being his student one day.

40.     Defendant Yesner was the person who encouraged Plaintiff to only apply to Defendant University of Alaska for graduate school, forgoing other coveted graduate school applications and acceptances, and recruited her to the program. Plaintiff detrimentally relied on Defendant Yesner's advisement to attend his program. Once Defendant Yesner blessed a student's admittance, it was very likely that the student would be admitted to the program. Defendant Yesner possessed a substantial amount of clout within the University.

### *Defendant Yesner directed grotesque and sexually charged comments and unwanted staring at Plaintiff Dutchuk.*

41.     After Plaintiff Dutchuk enrolled in Defendant Yesner's course, Defendant Yesner began to more overtly display his sexual interest in Plaintiff.

42.     Plaintiff remembered one particular disturbing encounter that stuck with her early in her acquaintance with him at Broken Mammoth. At the time, Plaintiff was just 27 years old. Defendant Yesner asked Plaintiff if she ever wore heels while looking the Plaintiff up and down in a sexually explicit way, conveying to her that he was imagining what "she would look like in heels." The incessant staring deeply unnerved Plaintiff, as did Defendant Yesner's excited verbal response to her confirmation of wearing heels.

FIRST AMENDED COMPLAINT - 17

43.     Another disturbing event occurred with Defendant Yesner when Defendant Yesner and Plaintiff were working together alone at the UAA Anthropology Lab and Defendant Yesner invited Plaintiff out to dinner. These solitary occurrences with Defendant Yesner were not a fluke. Defendant Yesner would purposely attempt to get students alone in a room with him so he could assert his dominance and power. It was one of Defendant's many deceptive tactics to prey on unsuspecting female students. Plaintiff and Defendant proceeded to dinner at a restaurant in Anchorage called "Ginger". What Plaintiff thought was going to be an educational and professional conversation regarding her class performance and grades quickly devolved into a conversation of sexual nature. Defendant Yesner repeatedly asked Plaintiff what she was doing for the rest of the night to which Plaintiff replied that she was studying. Defendant emphasized to Plaintiff that his wife was out of town and insinuated that Plaintiff should join him at his house, staring directly into Plaintiff's eyes as he made the comment. Plaintiff was deeply and memorably unnerved by Defendant Yesner's facial expression while he was trying to coax her to his home. Plaintiff politely declined the offer, but was justifiably concerned that her rejection would negatively affect her necessary academic relationship with Defendant Yesner. Plaintiff had seen Defendant Yesner lose interest in his students, specifically Plaintiff Heppner, for rejecting his advances.

44.     Plaintiff Dutchuk recalls being unsettled while at field school back in 2010 with David Yesner at the Broken Mammoth site. He encouraged drinking of alcohol and would make sexually suggestive comments such as "What happens at Broken Mammoth

FIRST AMENDED COMPLAINT - 18

stays at Broken Mammoth", insinuating that questionable conduct would occur and would be acceptable at what should be a professional and educational setting.

45.    Defendant Yesner allowed a known sexual predator Mike Farrell to come and "volunteer" at the field school site where he would prey on young female students, including Plaintiff Dutchuk. Farrell made students, including Dutchuk, uncomfortable while living and working at Broken Mammoth. He was not supposed to be on the site, but Defendant Yesner allowed his presence and his conduct to continue, making the female students feel uncomfortable. He signed no formal paperwork and the students were not told Farrell would be at the site prior to enrolling in the field school.

46.    Upon information and belief, Mike Farrell was eventually expelled from University of Alaska for sexual harassment at a field school for which he was the authority figure.

47.    Because it was frequently hot during site digs, Plaintiff Dutchuk and other female students would have to remove layers of clothing, often down to sports bras, to continue working in the heat. The students would be working in the dirt, down on all fours to conduct digs, and Defendant Yesner would immediately walk over and start taking photographs of the women in their bras and shorts.

48.    Plaintiff Dutchuk remembers another reoccurring incident when a female student would breastfeed her baby on site and Defendant Yesner would move to be closer to the breastfeeding female student and stare at the female's breasts unabashedly.

## RETALIATION

FIRST AMENDED COMPLAINT - 19

**Defendant Yesner retaliated against Plaintiff for denying his sexual advances by delaying the grading of her exams.**

49.    Defendant Yesner retaliated against Plaintiff Dutchuk for rejecting his sexual advances by failing to grade her comprehensive exam and preventing her from continuing her progress and graduating. Grading Dutchuk's comprehensive exam should have taken only five weeks at the most, but Defendant took two and a half years to grade it.

50.    This delay in grading and lack of direction from Defendant Yesner unfortunately forced Plaintiff to withdraw from the University of Alaska and give up her dreams of working as a Professional Archaeologist. Without a master's degree, one cannot work as a Professional Archaeologist. A master's degree in Anthropology is required by 36 CFR 800.2(1) in order to become licensed and conduct unsupervised work at dig sites.[4] All her years of hard work and money were forfeited due to Defendant University of Alaska and Defendant Yesner's actions. The pervasive sexual harassment and lack of direction from Defendant Yesner put Plaintiff in an impossible situation. Defendant Yesner knew that he was effectively sabotaging Plaintiff's career and destroying her hopes of working as a professional archaeologist in the field. Plaintiff Dutchuk's career trajectory was destroyed and yet she must still bear the burden of crushing student loan debt and accrual of interest on the student loan debt. Plaintiff could have been making an annual salary in

---

[4] *See See Archeology and Historic Preservation: Secretary of the Interior's Standards and Guidelines*, https://www.nps.gov/history/local-law/arch_stnds_9.htm (last visited May 2019);
39     CFR     Part     800     –     Protection     of     Historic     Properties     (August     2004), http://dnr.alaska.gov/parks/oha/shpo/36cfr800.pdf.

FIRST AMENDED COMPLAINT - 20

her profession of choice but Defendants' actions derailed her academically, personally, and financially.

## SEXUAL EXPLOITATION

***Defendant Yesner took several compromising photos of Plaintiff without her consent and stored them in his computer for his own sexual gratification.***

51.   "Sexual Exploitation" occurs when a person takes non-consensual or abusive sexual advantage of another for the person's own advantage or benefit, or to benefit or advantage anyone other than the one being exploited. It includes but is not limited to: invasion of sexual privacy, prostituting another person, non-consensual video or audio-taping of sexual activity, going beyond the boundaries of consent (such as secretly letting others watch consensual sex), engaging in voyeurism; knowingly transmitting an STI or STD or HIV to another individual without his or her knowledge; sexually-based stalking and/or bullying.[5]

52.   According to the report, Defendant Yesner kept photographs on his computer desktop associated with his work with the University. However, a significant amount of the photographs taken from the Broken Mammoth Archaeological site turned out to be of a specific individual—Plaintiff Dutchuk. According to the report, these photographs often depicted Dutchuk in a sports bra and shorts and appeared to include no other significant archeological feature. The sexual nature of the photographs is striking. The pictures show

---

[5] University Policy R.01.04.010(B)(5).

FIRST AMENDED COMPLAINT - 21

that Defendant Yesner was zeroing in on Plaintiff's breasts and buttocks with his camera when Plaintiff thought Defendant Yesner was taking photos of the archaeological site and artifacts. The archaeological site was very secluded and not easily accessible, making it private. According to Plaintiff and other information, the entrance to the site is secured by a locked gate. The site was closed off to the general public. It is not akin to a public highway. The nature of the work required participants to pose in awkward positions, such as bending down on all fours to retrieve materials from the dirt, which lent itself to predatory behavior by Professors, including Defendant Yesner.

53.     Plaintiff did NOT consent to be photographed in a sexual nature.

54.     Upon information and belief, Defendant Yesner would often masturbate to photographs of Plaintiff Dutchuk.

55.     The sexual nature of the photographs is supported by the presence of the pictures in a subfolder entitled "Personal" on Defendant Yesner's computer, which included photographs all of a similar sexualized nature.

56.     The sexual nature of Defendant Yesner's comments to Plaintiff is supported by the photographs depicting Plaintiff in compromising positions for his own sexual amusement.

57.     Defendant Yesner clearly took a sexual interest in Plaintiff that was beyond a normal professor-student relationship. Thus, his unwelcome sexual advances towards Plaintiff, his storage of non-consensual photographs and unwanted and repetitive messages of a sexual nature subjected Plaintiff to pervasive sexual harassment.

FIRST AMENDED COMPLAINT - 22

58.     Plaintiff was not aware that these photographs of her existed or that Defendant Yesner kept them in his possession until March 15, 2019, when a final investigative report on Defendant Yesner was released. The report was the culmination of a thorough investigation of Defendant Yesner's decades long harassment and numerous Title IX violations by the Defendant University. The report is discussed later in this Complaint. The pain and suffering that Plaintiff Dutchuk has now had to grapple with upon learning of these photographs is immeasurable and emotionally crippling.

## GENERAL ALLEGATIONS OF PLAINTIFF ANNALISA HEPPNER

### SEXUAL HARASSMENT

***Defendant Yesner was a serial predator who made unwanted sexual advances towards Plaintiff Heppner as well as sexually explicit and suggestive comments.***

59.     Plaintiff Heppner first met Defendant Yesner when they were working on the Little John site in Yukon, Canada in 2009.

60.     Plaintiff commenced her graduate studies in Anthropology at University of Alaska in 2010. Defendant Yesner was her thesis advisor.

61.     It was a well-known and recurring problem at the University that Defendant Yesner would intensely stare at women's breasts. He would stare directly at women's breasts, including Plaintiff, when talking with them. Whenever she would engage in conversation with Defendant Yesner, he would automatically zero in on her breasts, making Plaintiff feel extremely humiliated and uncomfortable. Plaintiff was often forced to tell Defendant Yesner to stop.

FIRST AMENDED COMPLAINT - 23

62.     At one point, Defendant Yesner directly stated to Plaintiff, "if I were 30 years younger, I would be interested in you", that "you are beautiful", and "if I were not married, I would love to be with you sexually." These comments fostered a highly inappropriate environment within the classroom and outside of the classroom as her thesis advisor. Plaintiff and Defendant Yesner should have been able to form a functional, professional relationship because they were frequently required to work together one-on-one, but any effective academic relationship was ruined by Defendant Yesner's actions.

63.     When Plaintiff communicated dissatisfaction that her comprehensive exam was taking so long to grade, Defendant Yesner responded that "maybe [she] needed to give [him] a spanking so that [he] would do better."

64.     Plaintiff's longtime boyfriend was also one of Defendant Yesner's students at the time. Defendant Yesner would routinely question him about his sex life with Plaintiff, asking about intimate details.

65.     Defendant Yesner also would tell Plaintiff's boyfriend at the time that it did not matter how well she did in school because she was going to be a good wife for him, indicating that Defendant Yesner viewed Plaintiff as nothing more than a sex object, rather than as a fellow aspiring professional and treating her as such.

66.     Plaintiff once walked in on Defendant Yesner masturbating in his office during work hours.

***Defendant Yesner engaged in nonconsensual touching of Plaintiff.***

FIRST AMENDED COMPLAINT - 24

67.    The unwanted touching by Defendant Yesner was pervasive. Whenever Defendant Yesner spoke with Plaintiff, he would stare at her breasts and he would find ways for his hands to make contact with her breasts and buttocks.

68.    Whenever Plaintiff was in the lab and looking at a sample, Defendant Yesner would suddenly appear behind her, grazing her breasts as he leaned in over her with his arms and hands outstretched to supervise her work.

69.    Defendant Yesner would often inappropriately hug students, including Plaintiff. Defendant Yesner would put his hand on the small of her back and rub in circles just above her buttocks, lingering in the hug for several minutes to which Plaintiff had no escape. He would also intentionally brush his hand across Plaintiff's breasts in the process of hugging her and often times leave his hand wrapped around her hip.

70.    All of the touching by Yesner was without consent. The unwanted sexual contact was coerced by force or the threat of force. Yesner forced himself on Plaintiff by touching her breasts. Plaintiff remarked that Defendant Yesner was a "serial predator", and that she always felt unsafe and scared in his presence. Plaintiff felt threatened and fearful of what Yesner might do. This touching occurred in an isolated location by Yesner who Plaintiff had good reason to be afraid of. The sexual contact also would happen immediately after Plaintiff would unequivocally refuse Yesner's sexual advances. Evidence will show the sexual contact was without consent and by force or threat of force.

71.    The most recent incident of sexual harassment experienced by Plaintiff Heppner was in November 2017. Since Defendant Yesner was Plaintiff's advisor, she was

FIRST AMENDED COMPLAINT - 25

required to ask for a photograph of herself from Defendant Yesner to put on her poster that would be displayed on campus, advertising her thesis presentation. A respectful and appropriate professor would have sent in a professional photograph. Defendant Yesner chose something quite different. He perused Plaintiff's Instagram account and selected a sexually suggestive photograph of Plaintiff, showing her cleavage. This action was highly inappropriate, even prompting Diane Hanson, the Chair of the Anthropology Department, to reply in an email to Dean John Petraitis with a worried message, "Have you seen Annalisa's poster?"

72. Furthermore, even after Plaintiff asked for the photograph to be removed in an email to the Dean and Chairwoman, the sexually suggestive photograph was still put on the poster and displayed around campus for everyone to see. Plaintiff had to go around campus herself, taking down the posters.

73. The photograph was eventually changed and the poster corrected, but it was too late. The damage had been done to Plaintiff's professional reputation, as well her psyche and morale. She has had to endure the humiliation for years.

74. This inappropriate behavior had become so common with Defendant Yesner and so pervasive that it made it impossible for Plaintiff Heppner to engage in her thesis work unmolested, as she was entitled to.

***Defendant Yesner subjected Plaintiff Heppner to pornography that***

***was stored on his computer.***

FIRST AMENDED COMPLAINT - 26

75.     Defendant Yesner engaged in the unsolicited and unwelcome transmission of lewd images when he allowed Plaintiff Heppner unrestricted access to his University computer knowing that pornography was present on his hard drive.

76.     Plaintiff Heppner was forced to view pornography in an educational setting. She stated that Defendant Yesner stored an extensive collection of pornography on his University computer.

77.     Plaintiff Heppner found the material in a file labelled "Calendar", that was shockingly filled with pornographic images. Defendant Yesner went to great lengths to save the images in specific folders and subfolders categorized by hair and body type. Plaintiff Heppner also remembers typing the word "title" into Defendant's computer when she was looking for a certain file she sent to Defendant and instead found "Big Titty Bonanza" in the search.

78.     Pornographic images were also found in a folder on Defendant Yesner's University desktop labelled "Chloe Rose" so as to conceal his vast collection. Eerily, most of the women in the images bore a striking resemblance to Plaintiff Heppner.

79.     In the folder, there were approximately 50 images of pornography. The photographs primarily featured the same large breasted women in revealing positions. Both female and male genitalia were depicted. What should have been an educational environment for Plaintiff Heppner was debased by Defendant Yesner subjecting Plaintiff to pornographic images.

FIRST AMENDED COMPLAINT - 27

80.     Plaintiff Heppner observed pornography on Defendant Yesner's computer that she shared with him. The pornographic pictures would be left open on his computer when she came into the lab and Defendant Yesner would be elsewhere.

81.     Plaintiff Heppner discovered several Sports Illustrated pin-up photographs of bikini clad women mixed in with the field notes from the Broken Mammoth site.

82.     Plaintiff Heppner also observed numerous pictures of students excavating and working at sites that were cropped so that the photographs were focused on the students' breasts.

## RETALIATION

### Defendant Yesner retaliated against Plaintiff Heppner when she rejected his sexual advances.

83.     Defendant Yesner turned Plaintiff Heppner's experience at University into a nightmare by retaliating against her after she rejected his sexual advances. Defendant Yesner demonstrated a clear pattern of retaliating against his female students who denied his sexual advances and harassment.

84.     If Plaintiff Heppner did not give into his flirtations, flatter him enough or respond to his sexual advances, Defendant Yesner would engage in radio silence, cutting off any contact with Plaintiff Heppner and failing to give any attention to her work. This retaliatory behavior blockaded and severely stalled Plaintiff Heppner's academic and professional progress. After she rejected his sexual advances, Plaintiff Heppner could not

FIRST AMENDED COMPLAINT - 28

reach Defendant Yesner to complete her work. He even blocked her access to collections that Plaintiff needed to access and review in order to complete her work.

85.     Plaintiff Heppner frequently told Defendant Yesner that his behavior was inappropriate and would say "Professor Yesner, you cannot say that to me. Do not ever talk to me that way again please." However, whenever she would tell Defendant Yesner to stop, he would stop talking to her for six months at a time, which greatly affected her because she needed his support in his role as her advisor.

86.     Defendant Yesner would also remove important artifacts from the classroom that Plaintiff needed and hide them in his home for months at a time, making it difficult for Plaintiff Heppner to progress through her studies and effectively sabotaging her work product.

87.     The most egregious instance of retaliation was Defendant Yesner's deliberate failure to review Plaintiff Heppner's final thesis paper, which she needed in order to graduate from the program. Despite repeated attempts to contact Defendant Yesner about her thesis paper via email, phone, and scheduled in-person meetings, Plaintiff Heppner could not get him to respond.

88.     Plaintiff Heppner eventually reported the problem to the Associate Dean of Social Sciences Division, College of Arts and Science, John Petraitis, and Chairwoman Diane Hanson involved by including them on an email chain.  Dean Petraitis provided Plaintiff Heppner with a tone-deaf response:

"Have you tried calling David at home?"

FIRST AMENDED COMPLAINT - 29

When Dean Petraitis made this comment, he was already aware that Defendant Yesner had made Plaintiff Heppner feel extremely uncomfortable during her time as his advisee and yet he suggested Plaintiff Heppner to further subject herself to Yesner in a personal, unprofessional setting by calling his house on her cell phone during non-working hours. Only after Plaintiff's email to the Dean and Chairwoman did Defendant Yesner finally reply to Plaintiff Heppner's emails.

89. Due to the retaliation by Defendant Yesner, it took nine years for Plaintiff Heppner to complete her graduate degree when the program should only have lasted 3-5 years, at the most. Those additional years that Plaintiff Heppner had to endure caused her to lose out on coveted job positions within the anthropology field and delayed her chances at making an income. Plaintiff Heppner could have been making a salary of $60,000 a year or more by now.

90. Instead, she was forced to take out more loans to pay for school and forced her into even more debt. All because of Defendant Yesner's sexual harassment and the University's lack of responsiveness. Defendant Yesner and Defendant University of Alaska need to be held accountable for their actions or lack thereof.

## **GENERAL ALLEGATIONS OF PLAINTIFF LIZ ORTIZ**

### **SEXUAL HARASSMENT**

***Defendant Yesner engaged in sexual harassment of Plaintiff Ortiz by inappropriate staring and threatening conduct.***

FIRST AMENDED COMPLAINT - 30

91.     Plaintiff Ortiz first heard of Defendant Yesner when she enrolled at Defendant University as a first-year graduate student in August 2016.

92.     Plaintiff was immediately warned by other female students to not be alone in a room with Defendant Yesner under any circumstances due to his predatory behavior, which deeply concerned Plaintiff especially as a new student in a new environment.

93.     Plaintiff recalled that each time she had an interaction with Defendant Yesner he would stare lasciviously at her breasts for the duration of the conversation, making Plaintiff very uncomfortable.

94.     One particularly unsettling incident occurred sometime in October 2017[6] on campus when Plaintiff Ortiz was alone in a classroom performing a necropsy of a bear for one of her courses. While she was performing work on the specimen, Defendant Yesner suddenly appeared in the doorway, intensely staring at Plaintiff and standing in silence just watching her. Plaintiff was frozen with fear. Defendant Yesner had positioned himself in a way so that Plaintiff's egress from the room was completely blocked. She had no way out. Plaintiff managed to position herself so that the table was in between Defendant and herself. Within a few minutes, Defendant Yesner began to walk slowly towards Plaintiff in a threatening manner, still without saying anything. In an attempt to protect herself, Plaintiff chose to jump over the bear carcass on the floor instead of going around the table so she could be out of arms reach from Defendant. Plaintiff made a quick exit out of the

---

[6] It should be noted that even though Defendant Yesner had "retired" as a Professor at that time he was still allowed to roam freely around campus, interact with female students and come and go as he pleased.

FIRST AMENDED COMPLAINT - 31

room, running as far away as she could down the halls. The incident was branded into Plaintiff's memory, causing significant distress to this day.

95. Plaintiff immediately relayed this incident to her professor and advisor who was also a reporter for Title IX.

96. Plaintiff also recalls incidents in the Fall of 2017 in a geology class in which she was enrolled. Defendant Yesner would often audit the class and intentionally sit directly behind Plaintiff. He would lean in close where Plaintiff could feel his breath down her neck and make bizarre, inappropriate comments.

97. Plaintiff was forced into an uncomfortable and unprofessional atmosphere due to Defendant Yesner's sexual harassment. Based on the University's inaction, Plaintiff believed she had no recourse other than to submit herself to Defendant Yesner's inappropriate physical conduct of a sexual nature as a condition of her education.

98. Plaintiff Ortiz found that her complaints to Defendant University were met with an apathetic response, which, in turn, discouraged her from pursuing her degree.

99. Plaintiff's work and studies were significantly affected by Defendant Yesner's harassment and Defendant University's indifference to the situation.

## **GENERAL ALLEGATIONS OF PLAINTIFF RANNA WELLS**

### **SEXUAL HARASSMENT**

***Defendant Yesner made sexually explicit and suggestive comments to Plaintiff as well as unwanted staring.***

FIRST AMENDED COMPLAINT - 32

100.     Plaintiff Wells first met Defendant Yesner as an undergraduate student at field school in 2013 and during summer work before entering UAA's graduate program in 2014 and 2015.

101.     Defendant Yesner was assigned by Defendant University to be Plaintiff's advisor when she enrolled in the graduate program in Fall 2015.

102.     On one occasion, Defendant Yesner revealed to Plaintiff that he cheated on his wife with another woman. Plaintiff was confused as to why, as her advisor in a professional setting, Defendant was telling her this intimate, sexual information. Defendant Yesner's sexual conversations made her feel extremely uncomfortable.

103.     Defendant Yesner made disturbing comments to Plaintiff during her advisor meetings with him. This made her uncomfortable and fearful of attending her required advisor meetings. Defendant Yesner told Plaintiff that he wanted to have sex with a particular undergraduate professor and committee member, stating that "I wish I had a night with her" and expressing that he wanted to have a night with her before she married another one of his students.

104.     Defendant Yesner incessantly and exaggeratedly looked Plaintiff's body up and down. This was a reoccurring issue throughout her interactions with him, and Plaintiff constantly felt sexually exploited and victimized by these aggressive actions by Defendant Yesner. Defendant would sexualize Plaintiff in a way that diminished her educational stance and made her feel undervalued as a serious student.

FIRST AMENDED COMPLAINT - 33

105.    Plaintiff recounted an incident when she went into the field with Defendant Yesner alone and he had his camera in tow, taking photographs. Plaintiff had asked Defendant Yesner specifically not to take a photograph of her. Plaintiff was taking sediment cores which required her to push a metal tube into the ground and check for sediment cores. She had to use a clean butter knife each time and so after she used it, she would wipe the knife blade on her knee/thigh area. As she wiped the knife on her knee/thigh, Defendant Yesner commented that Plaintiff had wiped the knife on her "crotch" and said, "Good thing I did not get a picture of that." These comments concerned Plaintiff because these comments indicated that Defendant Yesner was zeroing in on her genitalia while she was bending over in compromising and uncomfortable positions.

106.    Plaintiff had overheard that a professor saw Defendant watching pornography on his work computer and that Defendant would make inappropriate comments to that professor about Heppner that were sexual in nature. These comments made Plaintiff feel unsafe and unsettled in an environment that should have been protecting her.

***Defendant Yesner would often get Plaintiff alone with him in disturbing situations.***

107.    Defendant Yesner had Plaintiff meet him at a museum in Anchorage after hours when the museum was closed. Defendant Yesner had a key to the museum. Plaintiff was under the impression that other people would be present when she got to the museum as it was the middle of the day and an internet search showed the museum was open but unbeknownst to her, Defendant Yesner had planned the encounter differently.    When

FIRST AMENDED COMPLAINT - 34

Plaintiff arrived at the museum, it was just her and Defendant Yesner. They were completely alone. The museum was dark when Plaintiff walked inside and Defendant Yesner had turned on a light on in the back where they sat. The museum still appeared closed from the outside. Plaintiff became uncomfortable and concerned about the situation for fear that Defendant Yesner would sexually harass and/or sexually assault her. Plaintiff was so alarmed that she remembers calling a close relative at the time and asking her to call the police if she did not hear from Plaintiff within the next hour.

108.   Another incident occurred in 2016 when Plaintiff and Defendant were out in the field. Defendant invited Plaintiff into his camper. Plaintiff had knocked on Defendant's door because someone asked Plaintiff to retrieve Defendant for dinner. Defendant persistently insisted that Plaintiff come inside his camper where the two of them would be alone. Plaintiff refused because she was worried about what might happen and quickly left.

109.   At this same field site in 2016, Defendant Yesner wanted to drive out to the woods alone with Plaintiff but Plaintiff was warned by a friend not to get in the car with Defendant alone. Therefore, Plaintiff drove herself. When they arrived, Defendant and Plaintiff were the only two cars parked in the lot with their cars facing the woods. As Plaintiff was rummaging in the back of her car to retrieve field gear, she looked to see if Defendant Yesner was behind her but instead saw Defendant Yesner urinating in plain sight. Defendant made no attempt to hide himself or let Plaintiff know that he was excusing himself, almost as if Defendant wanted Plaintiff to see his genitalia. This behavior was extremely inappropriate for a professor with a female student.

FIRST AMENDED COMPLAINT - 35

110.    Plaintiff remembers there were times when she would walk into Defendant Yesner's office to meet with him and find that he was waiting for her with his pants unzipped and his shirt open, almost exposing himself to Plaintiff.

111.    Plaintiff was subjected to other forms of sexual harassment by Defendant forcing Plaintiff to sit side-by-side with him alone whenever she was working on her thesis. He would make it a condition of her work that she had to sit next to him and discourage her from working by herself. Plaintiff remembers Defendant offering to write Plaintiff's thesis for her and offering to pay for her tuition which she rejected. These interactions made Plaintiff uneasy and made her constantly uncomfortable while trying to pursue her degree.

### *Defendant Yesner engaged in nonconsensual touching of Plaintiff.*

112.    Defendant Yesner would often hug Plaintiff without her consent, lingering in the hug for several minutes to which Plaintiff had no escape. Plaintiff said that his position as her advisor made her feel powerless to do anything or push him away. Defendant Yesner took full advantage of the imbalance of power to victimize his female students, including Plaintiff.

113.    Plaintiff remarked that she specifically did not like hugs as they were an invasion of her personal space and that the hugs made her feel uncomfortable.

## RETALIATION

### *Defendant Yesner retaliated against Plaintiff.*

FIRST AMENDED COMPLAINT - 36

114.    Defendant Yesner retaliated against Plaintiff for rejecting his inappropriate behavior and sexual advances.

115.    Defendant Yesner would refuse to review Plaintiff's work unless Plaintiff was sitting in the chair next to Defendant in his office. He conditioned his assistance on that seating arrangement.

116.    Defendant would tamper with Plaintiff's thesis work, which prevented her from progressing through her studies.

117.    When Plaintiff finally decided to switch advisors at the urging of a female professor and after feeling wholly uncomfortable with Defendant's actions and competence as an advisor, Defendant Yesner would say and do things to make her feel guilty for that choice.

118.    Furthermore, Defendant would often be unresponsive to Plaintiff and unavailable when she needed to get a hold of him, which impeded her work.

## **GENERAL ALLEGATIONS OF PLAINTIFF NORMA JOHNSON**

### **SEXUAL HARASSMENT**

*Defendant Yesner engaged in sexual harassment of Plaintiff by forcing alcohol on her and unwanted staring.*

119.    Plaintiff first met Defendant Yesner as an undergraduate student at Defendant University when she enrolled in his Peopling of Americas class in Fall of 2014.

120.    Plaintiff became aware of an unspoken rule that females in the Anthropology department were warned not to put themselves in the position of being alone with Professor

FIRST AMENDED COMPLAINT - 37

Yesner. Plaintiff had no choice but to be alone with Defendant Yesner during office hours and other meetings. Plaintiff should not have been responsible for avoiding her professor, Defendant Yesner. Defendant University should have taken the appropriate action to remove Defendant from campus, as further addressed in other sections of this Complaint.

121. Even before he began harassing her, Plaintiff remarked her grave disappointment at Defendant's teaching skills and overall approach to the class. The class was extremely disorganized and unstructured, and she felt the grading system was unfair. Plaintiff stated that Defendant Yesner was one of the most unprofessional professors she had ever come across while at Defendant University, as he was often very hard to get a hold of by means of communication and would delay the grading of exams, to name a few.

122. Plaintiff voiced a concern regarding a party held during one evening in December 2014. It was an annual holiday party for the Anthropology community held at a professor's house.

123. Plaintiff was done drinking for the night when Defendant Yesner approached her aggressively and demanded that she drink a shot of liquor. Defendant moved close into Plaintiff's personal space as he made his demands, backing Plaintiff into a corner which made her feel disturbed and trapped. Even after Plaintiff politely refused, Defendant kept forcing the alcohol on her, pressuring Plaintiff to drink. The environment in which this incident occurred made Plaintiff very upset and distressed and this memory has stuck with her to this day. She said that the fact that the professor was forcing a young student to drink

FIRST AMENDED COMPLAINT - 38

was bad enough but when she refused and he kept up the pressure, it became even more egregious and inappropriate.

124.    In what became a reoccurring pattern, Defendant Yesner would often stare intensely at Plaintiff's breasts for a long time when she would have interactions with him, leading Plaintiff to feel violated.

125.    Plaintiff was forced to avoid interactions with Defendant Yesner and question the appropriateness of every situation involving Defendant. She felt a sense of discomfort while engaging in work at Defendant University due to Defendant's reputation and her personal experiences with him.

126.    This constant avoidance of Defendant and general discomfort caused emotional distress to Plaintiff throughout her time at Defendant University and negatively affected her work. She could not fully focus on her work when she had to constantly worry about Defendant Yesner and what he might do to her.

## **GENERAL ALLEGATIONS OF JANE DOE VI**

### **SEXUAL HARASSMENT**

***Defendant Yesner engaged in sexual harassment of Jane Doe VI by making aggressive sexual advances towards Plaintiff as well as sexually explicit and suggestive comments and unwanted staring.***

127.    Defendant Yesner was assigned as Jane Doe VI's advisor at UAA Anthropology Department in 1989. The harassment by Defendant Yesner began immediately with a constant barrage of lewd and sexually suggestive comments.

FIRST AMENDED COMPLAINT - 39

128. Defendant Yesner would talk about women's bodies in graphic detail when he was alone with Plaintiff in the laboratory or in his office under the guise of Anthropology topics, describing the types of women's bodies he desired. He would describe women with large breasts, narrow waists and wider hips, all while in a professional setting with Plaintiff, often putting her at unease.

129. Defendant Yesner would also discuss other female students in the Department that he would like to pursue because they had the type of body that was right for him.

130. He would point to Venus figurines in the classroom that had ample breasts and bodies and would relay his taste for women of this type of figure with Plaintiff during office hours or in the lab.

131. He also said how he wished American culture would allow for relationships with multiple partners, insinuating to Plaintiff that he wanted to have an affair with her. Defendant Yesner is married currently and was married at the time. Plaintiff told him that his comments were inappropriate and that a relationship between Plaintiff and Defendant Yesner was never going to happen.

### *Defendant Yesner engaged in nonconsensual touching of Jane Doe VI.*

132. After Jane Doe VI rebuffed Yesner's sexual comments, things got physical.

133. Yesner began to touch Jane Doe VI inappropriately.

FIRST AMENDED COMPLAINT - 40

134.    Plaintiff recounts that Yesner would have Plaintiff and him sit side-by-side and while they were working on a specimen, he would reach across the table in front of her, grazing her breasts with his elbow or arm.

135.    The touching became more aggressive as Plaintiff says Yesner would come from behind her, placing his hands on her shoulders, running them down her back, and fondling her hips and buttocks and trying to reach around and fondle her breasts. This type of behavior occurred most often in the laboratory when Yesner and Plaintiff would be alone, again showing Yesner's method of isolating the women away from witnesses.

136.    This incessant touching caused Plaintiff extreme distress and mental trauma.

137.    By this point, Plaintiff attempted to avoid Yesner at every opportunity because she was afraid Yesner would get upset with her for rejecting him as she needed his guidance and expertise to finish school. Plaintiff felt she had no choice but to get through it and deal with the behavior as best she could because Yesner would be the person to write her a recommendation for graduate school.

## SEXUAL ASSAULT

### *Defendant Yesner sexually assaulted Jane Doe VI.*

138.    One of the worst accounts of Yesner's harassment occurred in 1992 at the Broken Mammoth Archeological Site with a nightmarish incident of sexual assault.

139.    Plaintiff was at a University of Alaska sanctioned archaeological dig at Broken Mammoth in Alaska with Yesner and other students. Yesner would be largely absent from the site but whenever he did return he would always attempt to have sex with

FIRST AMENDED COMPLAINT - 41

Plaintiff. This behavior from Yesner became so problematic that it caused Plaintiff to seek medical treatment for pain, tension and stress.

140. During her time at the site, Plaintiff would frequently take trips with Yesner into Delta Junction off site in order to resupply, make contact and perform other administrative duties. Defendant Yesner intentionally sought to isolate Plaintiff with these solo trips a long distance away from the archaeological site and away from everyone else.

141. In Delta Junction, there is a public shower where the staff and students would frequently pay to bathe. It was here where Plaintiff was sexually assaulted by David Yesner.

142. While Plaintiff Jane Doe VI was in the shower, Defendant Yesner suddenly appeared in the doorway erect and fully naked. He entered the shower and proceeded to rub his body including his penis against Plaintiff.

143. Trapped and with nowhere to escape, Plaintiff backed up against the wall.

144. By this point, Yesner got down on his knees and pressed his mouth against Plaintiff's vagina in an attempt to give her oral stimulation.

145. Plaintiff screamed, raising her voice in protest and pushed him away. She grabbed her clothes and ran out of the shower to get dressed. Yesner and Plaintiff then drove back to the Broken Mammoth site together. She was forced to sit next to her assailant in a car ride even after she had been assaulted because she was afraid that Yesner would not write her a good recommendation letter for graduate school and she had no other way to get back home.

FIRST AMENDED COMPLAINT - 42

146. The entire experience was terrifying and traumatizing and a memory that has haunted Plaintiff for years and years and well into her later life. To this day, Yesner has never apologized for the incident.

## RETALIATION

***Defendant Yesner retaliated against Jane Doe VI after she rejected his sexual advances and made her life extremely difficult.***

147. The retaliation by Yesner was immediate and pervasive after Plaintiff rejected Yesner's sexual advances.

148. Yesner would never take no for an answer when Plaintiff turned Yesner down and would instead respond with comments such as "you know you want to" and "you know it will be so good."

149. Plaintiff and Yesner would be working on a project when all of a sudden Yesner would pack up his briefcase and leave the room with no explanation, leaving work unfinished and no indication of when he would return.

150. Defendant Yesner would engage in radio silence, cutting off any contact with Plaintiff Jane Doe VI and failing to give any attention to her work. He would refuse to answer her phone calls or emails. This retaliatory behavior blockaded and severely stalled Plaintiff Jane Doe VI's academic and professional progress. After she rejected his sexual advances, Plaintiff Jane Doe VI could not reach Defendant Yesner to complete her work.

FIRST AMENDED COMPLAINT - 43

151.     Yesner would steal important artifacts and field notebooks from the classroom that Plaintiff needed for her research and hide them in his home, hindering Plaintiff's progress in her studies.

152.     Yesner would intentionally delay grading of Plaintiff's papers and heavily edit her writing. He would also threaten to give Plaintiff a low grade in the class if she did not cooperate.

153.     Plaintiff recalls Yesner making snide comments to other faculty and staff about Plaintiff's work and comment on her incompetence as a potential archaeologist.

154.     Yesner threatened to withhold a letter of recommendation to graduate school which Plaintiff needed.

155.     After the sexual assault occurred, Yesner blamed Plaintiff for the incident and accused her of encouraging him and leading him on.

156.     Additionally, Yesner began to pick on Plaintiff in front of other students and staff at the archaeological site, humiliating her in group meetings and undermining her authority in front of the group.

157.     He would ignore Plaintiff's legitimate concerns about food, safety, alcohol abuse by staff and use of alcohol by underage students while at the dig site.

158.     Yesner also told faculty members and staff that Plaintiff and Yesner were having an affair. This rumor undermined Plaintiff's credibility with the department as everyone assumed she was getting an advantage and began to pass judgment on her.

FIRST AMENDED COMPLAINT - 44

159.    This false rumor made Plaintiff's time as an undergraduate student very uncomfortable and negatively impacted her relationships with faculty members and fellow students. Overall, Defendant Yesner made Plaintiff's experience at University a living hell.

## DEFENDANT YESNER'S HISTORY OF SEXUAL HARASSMENT AND SEXUAL ABUSE SPAN DECADES

160.    David Yesner used the University of Alaska campus as his own personal hunting ground, preying on unsuspecting women who were looking to him for guidance as the top professional in the anthropology field, who held powerful positions and possessed valuable clout and could make or break an aspiring anthropologist's career. The power imbalance is striking. David Yesner used this imbalance of power to take advantage of these women, who he knew relied on him for guidance and job opportunities.

161.    The Board of Regents Policy P01.04.010(D) recognizes the imbalance of power between students and faculty, stating:

> "Since some members of the university community hold positions of authority that may involve the legitimate exercise of power over others, it is their responsibility to be sensitive to that power. Faculty and supervisors in particular, in their relationships with students and subordinates, need to be aware of potential conflicts of interest and the possible compromise of their evaluative capacity. Because there is an inherent power difference in these relationships, the potential exists for the less powerful person to perceive a coercive element in suggestions regarding activities outside those inherent in the professional relationship."

162.    What these women initially thought was going to be a place of learning and education turned out to be a minefield with this empowered monster lurking in the shadows and those that enabled him.

FIRST AMENDED COMPLAINT - 45

163.    The earliest accounts of Defendant Yesner's sexual harassment and sexual abuse date as far back as the early 1980s, and maybe earlier based upon information and belief, when David Yesner was first hired by University of Alaska as a professor.

164.    A damning outside report of David Yesner's sexual harassment and sexual abuse of nine women was released on March 15, 2019[7] by an independent counsel retained by the University. The report details his years and years of predatory behavior inflicted upon these female students. Through interviews of the nine women, witnesses and faculty members, the report paints a disturbing picture. Notably, Defendant Yesner declined to participate in the investigation, citing "health reasons" and deciding to "forgo the interview process." Clearly, this investigation was of no priority to him whatsoever, once again evading responsibility.

165.    The period of time that Defendant Yesner has been accused of sexual misconduct was during a time when permanent Title IX administrators did not exist at UAA.[8] Instead, external law offices within Alaska were retained to administer Title IX complaints, according to university spokesperson Kirstin Olmstead. Pontius Law Offices was in charge of investigating complaints in 2017 and 2018.[9]

---

[7] *See* Daniella Rivera, *Title IX investigation reveals decades of sexual misconduct by former UAA professor,* KTVA (March 25, 2019), https://www.ktva.com/story/40180592/title-ix-investigation-reveals-decades-of-sexual-misconduct-by-former-uaa-professor.

[8] *See* Cheyenne Mathews, *Sexual assault concerns still prevalent at UAA*, The Northern Light, April 8, 2019 http://www.thenorthernlight.org/yesner/.

[9] *Id.*

FIRST AMENDED COMPLAINT - 46

166.    In addition to Plaintiffs, other women were subjected to unwanted sexual advances, horrifying sexual harassment, lewd and inappropriate conversations and retaliation at the hands of David Yesner while studying as graduate students at Defendant University of Alaska. Their concerns and voices fell on deaf hears as the Defendant University turned a blind eye to their complaints about Professor Yesner.

167.    Even though the incidents occurred on nine separate occasions, the women all tell one eerily unifying story of how Defendant Yesner would first earn their trust, essentially grooming these women, subject them to harassment and abuse and then retaliate when the relationship did not go his way.

168.    The March 15, 2019 report found Defendant Yesner guilty of violating several University regulations. The complainants in the report were referred to as C1, C2, C3, C4, C5, C6, C7, C8 and C9. Defendant Yesner was referred to as R1. The final findings are as follows:

- R1 engaged in sex discrimination and sexual harassment against C1, C2, C3, C4, C5.

- R1 engaged in sex discrimination and sexual harassment against C6.

- R1 engaged in sex discrimination and sexual harassment against C7.

- R1 engaged in sex discrimination and sexual harassment against C8.

- R1 engaged in sex discrimination, sexual harassment, and sexual assault of C9.

FIRST AMENDED COMPLAINT - 47

- R1's conduct in its totality was sufficiently severe, pervasive, and persistent and was both staffs' ability to perform their jobs or engage in university programs.

- R1 engaged in sexual exploitation through inappropriate use and possession of female student pictures.

- R1 violated University Regulation R.02.07.054(F) by possessing obscene material on his University computer.

169. Plaintiffs have said that there may be many more recent incidents of egregious sexual harassment by David Yesner that have yet to be investigated or reported.

170. Defendant Yesner clearly does not understand the severity of his actions and has shown no remorse for his behavior. To date, he has not offered any sort of apology to Plaintiffs nor any of the women in the report. He does not think he did anything wrong. As of April 11, 2019, he was still traveling to and attending Anthropology conferences around the country according to Plaintiffs, as if everything was okay, completely oblivious to the havoc he has wreaked on these womens' lives. His "health concerns" certainly have not slowed him down one bit. The most recent conference that David Yesner attended was hosted by the Society for American Archaeology (SAA) in New Mexico on April 11-April 14, 2019, who welcomed Yesner with open arms. This conference is considered to be very prominent in the community. According to The Scientist, a journalist had confronted Defendant Yesner and asked him to leave the conference due to recent allegations of sexual harassment. However, the SAA, in a stunning turn of events, instead expelled the journalist

FIRST AMENDED COMPLAINT - 48

from the conference and told David he could remain, essentially siding with David Yesner amidst all the disturbing allegations against him.[10] This act also demonstrates how much power and influence David Yesner still yields within the community.

### IV.  STATEMENT OF CLAIMS

### COUNT I

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. §§ 1681-1688 and its IMPLEMENTING REGULATIONS at 34 C.F.R. Part 106**

**As to Defendant University of Alaska**

**(The University's Deliberate Indifference to Alleged Sexual Harassment)**

171.  Plaintiffs re-allege and incorporate the allegations set forth above as though fully set forth herein.

172.  At all material times, Defendant University of Alaska was acting under color of law. The United States government protects Plaintiffs from discrimination, harassment, or the denial of benefits on the basis of sex or sexual orientation from any agency that receives federal funding. The University of Alaska received federal financial assistance during the relevant period.

173.  Defendant Yesner subjected Plaintiffs to unwanted and unwelcome sexual harassment as more fully described in the paragraphs above.

---

[10] Kerry Grens, *An Archaeology Meeting Finds Itself in the Middle of #MeTooSTEM*, The Scientist, (April 12, 2019), https://www.the-scientist.com/news-opinion/an-archaeology-meeting-finds-itself-in-the-middle-of--metoostem-65737.

FIRST AMENDED COMPLAINT - 49

174. The Defendant University had actual knowledge of Plaintiffs' sexual harassment at the hands of Defendant Yesner from the time Plaintiffs reported this harassment to a then professor and now the Chair of the Anthropology Department, the Provost's Office, the Dean, and the Chancellor in 2011, 2013, 2016 and 2017 respectively and other complaints lodged before these years as well.

175. The Defendant University's failure to conduct a formal investigation and take steps to protect Plaintiffs from further sexual harassment were clearly unreasonable in light of the known circumstances.

176. Plaintiffs were subjected to discrimination based on sex because of the Defendant University's deliberate indifference to known acts of harassment and sexual grooming, including without limitation:

a. The Defendant University's deliberate decision not to inform Plaintiffs of their right to make a formal Title IX complaint;

b. The Defendant University's failure to conduct a Title IX investigation into Plaintiffs' complaints;

c. Defendant University's deliberate decision not to provide Plaintiffs with safety measures and accommodations following their complaints, such as access to counseling services;

d. Defendant University's deliberate decision not to comply with its own policies on sexual misconduct, Title IX, and sexual harassment, as well as the legal requirements of Title IX as set forth by the Office of Civil Rights;

FIRST AMENDED COMPLAINT - 50

e. Defendant University's deliberate decision to allow Defendant Yesner to remain on campus and supervise female graduate students after complaints brought forth about Plaintiffs' sexual harassment and other women's sexual harassment by Defendant Yesner;

f. Defendant University's deliberate decision to do nothing to eliminate the risk of and/or actual retaliation posed by Defendant Yesner, prevent its recurrence and address its effects on Plaintiffs.

177. Had Defendant University not been deliberately indifferent to Plaintiff Dutchuk's harassment, discrimination and retaliation, Plaintiff would have remained on campus and completed her master's degree. Instead, Plaintiff was forced to drop out and see a mental health counselor, while Defendant Yesner received promotion after promotion, pay increases, almost received "emeritus" status at the University, left the University with no charge of harassment at the time of his retirement and remains living in Anchorage, having suffered no reputational harm. As stated supra, Defendant Yesner attended the Society of American Archeologists conference this month, where the SAA decided to promote his interests above the sexual harassment survivors.

178. Had Defendant University not been deliberately indifferent to Plaintiff Heppner's harassment, discrimination and retaliation, Plaintiff would have graduated from University within three years and would have been years into her anthropology career by now. Instead, Plaintiff is just starting her career with massive student loan debt and mental counseling services, while Defendant Yesner received promotion after promotion, pay

FIRST AMENDED COMPLAINT - 51

increases, almost received "emeritus" status at the University, left the University with no charge of harassment at the time of his retirement and remains living in Anchorage, having suffered no reputational harm. As stated, Defendant Yesner decided to attend the Society of American Archeologists conference this month, where the SAA decided to promote his interests above the sexual harassment survivors and ignore the inundation of complaints by the affected women and the public.

179. Had Defendant University not been deliberately indifferent to Plaintiffs Ortiz, Wells, and Johnson's harassment and discrimination, Plaintiffs would have been able to enjoy their education and not be subjected to repeated unwanted behavior by a sexual predator, who Plaintiffs had to waste time and energy on trying to avoid. Their studies would not have been affected. By allowing the Plaintiffs to be continually sexually harassed Defendant University of Alaska violated Title IX prohibition on discrimination and harassment based on sex or sexual orientation.

180. Had Defendant University not been deliberately indifferent to Plaintiff Jane Doe VI's harassment and sexual abuse, Plaintiff would not have been sexually assaulted by a known predator and endured years of emotional and physical turmoil and trauma in her life. Plaintiff would not have been undermined at every turn by Yenser and retaliated against for simply trying to get an education. Her studies would have progressed at the normal pace and she would not have had to live in fear every day of a professor trying to assault her while she pursued a career in anthropology. By allowing Plaintiff to be

continually sexually abused Defendant University of Alaska violated Title IX prohibition on discrimination and harassment based on sex or sexual orientation.

181. By not following the requirements under Title IX for the follow-up and investigation requirements when a complaint was made, Defendant University of Alaska violated its legal obligations under federal law. By engaging in the acts and omissions described herein, Defendant University of Alaska, acted under color of law with deliberate indifference, violated the plaintiffs' rights based in U.S. federal law to be provided with the full benefit of their education free from discrimination and harassment on the basis of their sex or sexual orientation. By engaging in the acts and omissions described herein, Defendant University of Alaska, acting under color of law and with deliberate indifference, violated Plaintiffs' rights based in U.S. federal law to benefit from and access to their education free from ongoing, pervasive, severe, and debilitating gender-based harassment and discrimination. The rights of Plaintiffs to be free from discrimination and harassment based on their sex or sexual orientation as described herein was clearly established in law at the time of the incidents alleged.

182. Because of Defendant University's deliberate indifference, Plaintiffs have suffered losses of educational opportunities and benefits, along with general and special damages including but not limited to: emotional distress, loss of earnings, loss of future earnings and earning capacity, and damage to and delays in pursuit of education. Wherefore, Plaintiffs request relief as set forth in the Prayer for Relief below.

## COUNT II

FIRST AMENDED COMPLAINT - 53

# VIOLATION OF TITLE IX

## As to Defendant University of Alaska

### (Hostile Educational Environment)

183.  Plaintiffs re-allege and incorporate the allegations set forth above as though fully set forth herein.

184.  Plaintiffs were subjected to sexual harassment so severe, pervasive and objectively offensive that they were denied access to educational opportunities and benefits as described in paragraphs above.

185.  University's actions and inactions after Plaintiffs reported Yesner's harassment denied Plaintiffs the benefits of, and subjected them to discrimination in their education at University on the basis of their sex.

186.  Defendant University's responses to the harassment were clearly unreasonable in light of the known circumstances.

187.  The Defendant University was deliberately indifferent to Plaintiffs' known sexual harassment and the sexually hostile environment from which they suffered. As a result, it failed to institute any accommodations for Plaintiffs' safety, including, but not limited to:

    a.  terminating Defendant Yesner from campus and all teaching and supervising responsibilities;

    b.  conducting investigations into reports and complaints by female students against Defendant Yesner for sexual harassment and inappropriate behavior;

FIRST AMENDED COMPLAINT - 54

c. protecting Plaintiffs from retaliation from Defendant Yesner;

d. offering counseling resources.

Defendant University of Alaska engaged in a pattern and practice of behavior designed to discourage and dissuade students from initiating investigations relating to sexual harassment. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

188.  Because of the Defendant University's deliberate indifference, Plaintiffs suffered losses of educational opportunities and benefits, along with general and special damages including but not limited to: emotional distress, loss of earnings, loss of future earnings and earning capacity, and damage to and delays in their pursuit of education. Wherefore, Plaintiffs request relief as set forth in the Prayer for Relief below.

## COUNT III

### VIOLATION OF TITLE IX

### As to Defendant University of Alaska

### (Retaliation by Withholding Protections Otherwise Conferred by Title IX)

189.  Plaintiffs re-allege and incorporate the allegations set forth above in paragraphs as though fully set forth herein.

190.  Defendant Yesner subjected Plaintiffs to unwanted and unwelcome sexual harassment as more fully described in paragraphs above.

191.  Plaintiffs engaged in an activity protected by Title IX when they made complaints against Defendant Yesner for sexually harassing them. Plaintiffs made it clear

FIRST AMENDED COMPLAINT - 55

that Defendant Yesner was retaliating against Plaintiffs by cutting off communication with Plaintiffs, failing to grade exams, failing to review thesis papers on time, making Plaintiffs feel guilty, and removing important artifacts from the laboratory and hiding them in his house. Plaintiffs felt that if they spoke out against Defendant Yesner, he would make their lives increasingly difficult and ruin their careers.

192. After Plaintiffs reported Defendant Yesner's behavior to the University and rejected Defendant Yesner's sexual advances, Defendant Yesner deliberately and intentionally subjected Plaintiffs to adverse actions.

193. The Defendant University became aware of this retaliation when:

    a. Plaintiff Dutchuk reported Defendant Yesner to Dean Petraitis in 2016;

    b. Plaintiff Heppner reported Defendant Yesner to Diane Hanson in 2011;

    c. Plaintiff Heppner reported Defendant Yesner to the Provost's office in 2013;

    d. Plaintiff Jane Doe VI told a number of people about Yesner's behavior; and

    e. Plaintiff Heppner, Plaintiff Ortiz, Plaintiff Wells, Plaintiff Norma Johnson, and Plaintiff Jane Doe VI reported Defendant Yesner to Chancellor Gingerich in 2017.

194. Defendant University had a duty to put an end to the retaliation being committed by Defendant Yesner in the course of his employment. The University's failure to do so is in violation of Title IX.

FIRST AMENDED COMPLAINT - 56

195.    As a direct and proximate result of Defendant University's unlawful acts, Plaintiffs have sustained general and special damages including but not limited to: emotional distress, loss of earnings, loss of future earnings and earning capacity, and damage to and delays in their careers. Wherefore, Plaintiffs request relief as set forth in the Prayer for Relief below.

## COUNT IV

### CIVIL ASSAULT AND BATTERY

### As to Defendant David Yesner

196.    Plaintiffs re-allege and incorporate the allegations set forth above in the paragraphs above as though fully set forth herein.

197.    During the course of Plaintiffs' time at the University, Defendant Yesner repeatedly touched Plaintiffs without their consent, including giving them aggressively sexual hugs and touching their breasts, in a manner that was sexually stimulating to him, which constitutes a battery upon Plaintiffs' persons. Yesner assaulted Jane Doe VI by rubbing his penis against her body and pressing his mouth against her vagina.

198.    As a result of the master-servant relationship between Defendant University and Defendant Yesner, Defendant University is vicariously liable for the acts of its employee, Defendant Yesner.

199.    Therefore, as a result of the acts committed against Plaintiffs as set forth in paragraphs above, Defendant University is liable for the batteries committed upon Plaintiffs by its employee, Defendant Yesner, in the course of said employment.

FIRST AMENDED COMPLAINT - 57

200.     As a result of the aforementioned batteries committed upon the Plaintiffs and for which Defendant University is liable, Plaintiffs suffered severe emotional distress, pain and suffering, and loss of the capacity for enjoyment of life, and loss of earnings and earning capacity.

201.     Wherefore, Plaintiffs request relief as set forth in the Prayer for Relief below.

## COUNT V

## INVASION OF PRIVACY BY INTRUSTION OF SOLITUDE AND FALSE LIGHT

### As to Defendant David Yesner

202.     Plaintiffs re-allege and incorporate the allegations set forth above in paragraphs as though fully set forth herein.

203.     Plaintiff Dutchuk did not consent to having photographs of solely her breasts and buttocks taken at the Broken Mammoth Archaeological Site by Defendant Yesner. Defendant Yesner took sexually suggestive photographs of Plaintiff without her consent, therefore committing intrusion of solitude.

204.     Again, as alleged above, the archaeological site was heavily secluded and not accessible to the general public. The entrance was secured by a locked gate of which only a select group of individuals had access. A Google image search and other evidence will confirm the secluded nature of the area as well as the inaccessibility.

205.     Plaintiff Heppner did not consent to Defendant Yesner perusing her social media profile and selecting a sexually suggestive photograph to put as Plaintiff Heppner's official photograph for her thesis paper. This poster was made available to the public and

FIRST AMENDED COMPLAINT - 58

posted around the University's campus as well as faculty members on the email thread who had to sign off on the poster.

206. This photograph of Plaintiff Heppner placed her in a false or misleading light, thereby causing embarrassment and offense.

207. Plaintiffs have suffered and continue to suffer damage as a result of Defendants' interference with and invasion of their privacy. Plaintiffs have suffered extensive mental anguish and loss of the capacity for past and future enjoyment of life. The invasion of privacy is traumatizing. Wherefore, Plaintiffs request relief as set forth in the Prayer for Relief below.

## VI.    DEMAND FOR JURY TRIAL

208. Plaintiffs respectfully demand a trial by jury as to all matters so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a. Defendants be served with process and answer herein;

b. Damages in amounts to be established at trial, including, without limitation, reimbursement and prepayment for all of Plaintiffs' tuition and related expenses; payment of Plaintiffs' expenses incurred as a consequence of the sexual harassment; damages for deprivation of equal access to the educational benefits and opportunities provided by University of Alaska; and damages for past, present, and future emotional pain and suffering, ongoing and severe mental

FIRST AMENDED COMPLAINT - 59

anguish, loss of past, present, and future enjoyment of life and past and present

lost earnings and earning capacity;

c.  An Order enjoining University of Alaska, along with all of its agents, employees,

and those acting in concert therewith, from unlawful discrimination on the basis

of sex, including the failure to address, prevent and/or remedy sexual

harassment;

d.  Issue a formal public statement in support of Plaintiffs;

e.  Removal of Defendant David Yesner's name from diplomas and other official

university documents;

f.  Attorneys' fees pursuant to 42 U.S.C. § 1988(b);

g.  For the court costs of trying this action;

h.  For costs to be taxed to the Defendants;

i.  For such other and further relief as the Court may deem just and proper; and,

j.  For pre-and post-judgment interest.

k.  Plaintiffs respectfully reserve the right to amend this Complaint to conform to

the evidence.

Respectfully submitted this 25th day of September, 2019.


By: */s/ Cornelia Brandfield-Harvey*
Anthony G. Buzbee
 (*Pro Hac Vice Admission Pending*)
*Attorney in Charge*
Texas Bar No. 24001820
Federal Bar No. 22679

FIRST AMENDED COMPLAINT - 60

Cornelia Brandfield-Harvey
(*Admitted Pro Hac Vice*)
Texas Bar No. 24103540
Federal Bar No. 3323190
**THE BUZBEE LAW FIRM**
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 522-5909

By: */s/ Nicole Cusack*
Nicole C. Cusack (AK Bar No. 1511093)
**CUSACK LAW, LLC**
2665 East Tudor Road, Suite 202
Anchorage, AK 99507
Tel: (907) 903-4428

Charles Sturm
(*Admitted Pro Hac Vice*)
**STURM LAW PLLC**
Texas Bar No. 1511093
Federal Bar No. 21777
712 Main St, Suite 900
Houston, TX 77002
Tel: (713) 955-1800

**ATTORNEYS FOR PLAINTIFFS**

FIRST AMENDED COMPLAINT - 61

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2019 I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:19-cv-00136-HRH who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Cornelia Brandfield-Harvey*
Cornelia Brandfield-Harvey

FIRST AMENDED COMPLAINT - 62