WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


THERESA DUTCHUK, ANNALISA            )
HEPPNER, LIZ ORTIZ, JOANNA WELLS,    )
NORMA JOHNSON, and JANE DOE VI,      )
                                     )
                        Plaintiffs,  )
                                     )
        vs.                          )
                                     )
DAVID YESNER, UNIVERSITY OF          )
ALASKA BOARD OF REGENTS and          )
UNIVERSITY OF ALASKA SYSTEM,         )
                                     )    No. 3:19-cv-0136-HRH
                        Defendants.  )
_____)


O R D E R

Motion to Dismiss

        Defendants the University of Alaska Board of Regents and the University of Alaska

System move to dismiss the Title IX claims asserted by plaintiffs Theresa Dutchuk, Joanna

Wells, Norma Johnson, and Jane Doe VI.[1]  This motion is opposed.[2]  Oral argument was not

requested and is not deemed necessary.

_____

        [1]Docket No. 54.

        [2]Docket No. 56.

-1-

Dutchuk, Wells, Johnson, and Doe VI (referred to collectively herein as "plaintiffs")[3] are former students at the University of Alaska. Defendant David Yesner is a former Anthropology Department faculty member of the University.

Dutchuk alleges that she met Yesner in 2010 and that he was her advisor "from 2011 to the end of 2016/early 2017."[4] Dutchuk alleges that "Yesner directed grotesque and sexually charged comments" to her[5] and that he would look at her and stare at her "in a sexually explicit way[.]"[6] Dutchuk also alleges that Yesner retaliated against her "for rejecting his sexual advances by failing to grade her comprehensive exam and preventing her from continuing her progress and graduating."[7] Dutchuk also alleges that she learned in March 2019, that Yesner had taken sexually suggestive photographs of her and "kept [them] on his computer desktop associated with his work with the University."[8] Dutchuk alleges that in 2016, she reported to Dean John Petraitis that "Yesner had sexually harassed her and

---

[3]There are two other plaintiffs in this case, Annalisa Heppner and Liz Ortiz. The University defendants are not moving to dismiss these plaintiffs' Title IX claims.

[4]Second Amended Complaint at 16, ¶¶ 37-38, Docket No. 47. For some unknown reason, the University defendants refer to the allegations in the First Amended Complaint in their briefing. Plaintiffs' Second Amended Complaint was filed prior to the instant motion to dismiss being filed and thus it is the operative complaint.

[5]Id. at 17-19, ¶¶ 42-44.

[6]Id. at 17, ¶ 42.

[7]Id. at 20, ¶ 49.

[8]Id. at 21, ¶ 52; 23, ¶ 58.

-2-

then retaliated against her."[9]  Dutchuk alleges that in response, she was told "to merely 'switch advisors.'"[10]  Dutchuk also alleges that she "constantly reported Defendant Yesner's inappropriate and violative behavior to professors and other faculty members at the University" but that these reports were not taken seriously.[11]

Wells alleges that she first met Yesner in 2013 at field school prior to "entering UAA's graduate program in 2014 and 2015."[12]  Wells alleges that Yesner became her advisor in the fall of 2015.[13]  Wells alleges that "Yesner made sexually explicit and suggestive comments" to her and also would "incessantly and exaggeratedly look [her] body up and down."[14]  Wells alleges that Yesner would "often get [her] alone with him in disturbing situations[,]" such as arranging to meet her at the museum after hours when no one else was there and in 2016, inviting her into his camper when they were in the field.[15]  Wells alleges that "Yesner would often hug [her] without her consent, lingering in the hug for several

---

[9]Id. at 6, ¶ 17.

[10]Id.

[11]Id. at 9, ¶ 24.

[12]Id. at 33, ¶ 100.

[13]Id. at 33, ¶ 101.

[14]Id. at 32, 33-34, ¶¶ 102-105.

[15]Id. at 34-35, ¶¶ 107-108.

minutes. . . ."[16] Wells alleges that "Yesner retaliated against [her] for rejecting his inappropriate behavior and sexual advances."[17] For example, she alleges that he "would refuse to review [her] work unless [she] was sitting in the chair" next to him and that he "would often be unresponsive to [her] and unavailable when she needed to get a hold of him, which impeded her work."[18]

Wells alleges that she "reported her experiences with Defendant Yesner to her University of Alaska Graduate Committee Member" and the member's husband (a former student as well), who "respond[ed] with apathy, saying 'that's just Yesner,' and 'do not believe the stories until it happens to you.'"[19] Wells also alleges that she "submitted a letter to Chancellor Gingerich on December 8, 2017, reporting harassment and discrimination by" Yesner and that in response, "she was referred to the University's Title IX investigators."[20] Wells alleges, however, that the Title IX office ignored her and was dismissive, "leading her to believe that the Office was not taking her claims seriously or taking any action with respect to her reports" about Yesner.[21]

---

[16]Id. at 36, ¶ 112.

[17]Id. at 36, ¶ 114.

[18]Id. at 37, ¶¶ 115, 118.

[19]Id. at 7-8, ¶¶ 20-21.

[20]Id. at 13, ¶ 29.

[21]Id. at 13-14, ¶ 30.

-4-

Johnson alleges that she first met Yesner "when she enrolled in his Peopling of Americas class in Fall of 2014."[22] Johnson alleges that at a holiday party in December 2014, Yesner pressured her to drink in an "egregious and inappropriate" way and that she voiced concerns about this incident.[23] She also alleges that "Yesner would often stare intensely at [her] breasts for a long time when she would have interactions with him[.]"[24]

Doe VI alleges that Yesner became her advisor in 1989.[25] She alleges that "[t]he harassment by Defendant Yesner began immediately with a constant barrage of lewd and sexually suggestive comments."[26] Doe VI alleges that "[a]fter she rebuffed Yesner's sexual comments, things got physical" and that "Yesner began to touch [her] inappropriately."[27] Doe VI also alleges that Yesner sexually assaulted her in 1992, when they were at the Broken Mammoth Archeological Site.[28] Doe VI alleges that Yesner retaliated against her for rejecting his sexual advances both before and after the assault.[29] Doe VI alleges that she reported that Yesner had sexually assaulted her "to one of her female colleagues who in turn

---

[22]Id. at 37, ¶ 119.

[23]Id. at 38, ¶¶ 122-123.

[24]Id. at 39, ¶ 124.

[25]Id. at 39, ¶ 127.

[26]Id.

[27]Id. at 40, ¶¶ 132-133.

[28]Id. at 41-42, ¶¶ 138-144.

[29]Id. at 43-44, ¶¶ 147-158.

Case 3:19-cv-00136-HRH   Document 67   Filed 04/09/20   Page 5 of 21

reported the incident to the Department Chair of the Anthropology Department at the time."[30]
She alleges that her report was "met with a shrug by the Department and no investigation was
launched."[31]   Doe VI also alleges that she "filed a complaint with the Office of the
Chancellor on December 10, 2017 regarding Defendant Yesner's behavior when she was
notified that Defendant Yesner was a candidate for the position of emeritus professor."[32]

Plaintiffs allege that in March 2019, a report by independent counsel hired by the
University "detail[ed] years and years of predatory behavior" by Yesner "inflicted" on nine
female students.[33]   Plaintiffs allege that "[t]he March 15, 2019 report found Defendant
Yesner guilty of violating several University regulations."[34]

Plaintiffs Dutchuk, Wells and Johnson commenced this action on May 15, 2019.  On
June 11, 2019, the University defendants moved to dismiss plaintiffs' state law discrimina-
tion and tort claims and their § 1983 claims.[35]  This motion to dismiss was granted and all of
these claims were dismissed with prejudice except for plaintiffs' § 1983 claims for damages

---

[30]Id. at 8, ¶ 22.

[31]Id.

[32]Id. at 13, ¶ 28.

[33]Id. at 46, ¶ 164.

[34]Id. at 47, ¶ 168.

[35]Docket No. 13.

against the Board of Regents.[36]  Plaintiffs were given leave to amend as to these § 1983

claims.[37]  In the same order, the court granted plaintiffs' motion to amend to add Doe VI as

a plaintiff.[38]  Plaintiffs filed their first amended complaint on September 25, 2019.[39]  On

October 24, 2019, plaintiffs sought leave to file a second amended complaint to change

Wells' first name from Ranna to Joanna.[40]  This motion was granted,[41] and on November 14,

2019, plaintiffs filed their second amended complaint.[42]

In Counts I, II, and III of the second amended complaint, plaintiffs assert Title IX

claims against the University defendants.  In Count I, plaintiffs allege that the University

defendants were deliberately indifferent to the alleged sexual harassment and assault by

Yesner.  Plaintiffs allege that the University defendants

> had actual knowledge of [their] sexual harassment at the hands
> of Defendant Yesner from the time [p]laintiffs reported this
> harassment to a then professor and now the Chair of the
> Anthropology Department, the Provost's Office, the Dean, and

---

[36]Order re Motions to Dismiss [etc.] at 34, Docket No. 32.

[37]Id.

[38]Id. at 34-35.

[39]Docket No. 36.

[40]Docket No. 43.

[41]Docket No. 45.

[42]Docket No. 47.

-7-

the Chancellor in 2011, 2013, 2016, and 2017 respectively and
other complaints lodged before these years as well.[43]

Plaintiffs allege that the University defendants acted with deliberate indifference in a number
of ways, including allowing Yesner "to remain on campus and supervise female graduate
students after complaints brought forth about [p]laintiffs' sexual harassment and other
women's sexual harassment by Defendant Yesner[.]"[44]  In Count II, plaintiffs allege a Title
IX hostile educational environment claim.  In Count III, plaintiffs allege a Title IX retaliation
claim.

On December 20, 2019, the University defendants filed the instant motion.  In this
motion, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the University
defendants move to dismiss plaintiffs' claims in Counts I, II, and III.

Discussion

As an initial matter, plaintiffs argue that the instant motion to dismiss is improper
under Rule 12(g), Federal Rules of Civil Procedure.  Rule 12(g)(2) provides that "[e]xcept
as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not
make another motion under this rule raising a defense or objection that was available to the
party but omitted from its earlier motion."  The Ninth Circuit has held that Rule 12(g)
prohibits successive Rule 12(b)(6) motions, but it has also pointed out that

---

[43]Second Amended Complaint at 50, ¶ 174, Docket No. 47.

[44]Id. at 51, ¶ 176e.

Case 3:19-cv-00136-HRH   Document 67   Filed 04/09/20   Page 8 of 21

> [a] defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense. Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6), but the defense may be asserted in other ways.

In re Apple iPhone Antitrust Litig., 846 F.3d 313, 317–18 (9th Cir. 2017). Because a Rule 12(b)(6) defense is not waived, "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues[45] specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." Id. at 318. Although it would have been preferable if the University defendants had raised their statute of limitations arguments in their first Rule 12(b)(6) motion, there is nothing to be gained by denying the instant motion, only to have the University defendants file a Rule 12(c) motion after they file their answer.

Plaintiffs next argue that the instant motion to dismiss must be denied because it is untimely. A Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Rule 12(a)(1)(A)(i) provides that a defendant's answer must be served within 21 days of the defendant "being served with the summons and complaint[.]" Moreover, when an amended complaint has been filed, the defendant only has fourteen days in which to respond to the amended complaint. Fed. R. Civ. P. 15(a)(3). Here,

---

[45]These procedural avenues are "in any pleading allowed or ordered under Rule 7(a); [] by a motion under Rule 12(c); or [] at trial." Fed. R. Civ. P. 12(h)(2).

-9-

plaintiffs filed their second amended complaint on November 14, 2019. The University defendants filed the instant motion on December 20, 2019. Because this was both more than 21 days and 14 days after plaintiffs filed their second amended complaint, plaintiffs argue that the instant motion is untimely.

As the Ninth Circuit has explained,

> Rule 12(b) states that a motion raising the specific defenses listed "shall be made before pleading if a further pleading is permitted." The Rule does <u>not</u> limit the period to 2[1 or 14] days, and, to us, the reasonable interpretation of the Rule is that such a motion may be made at any time prior to such a pleading. Thus, if an extension of time has been allowed for filing a responsive pleading, logic and reason would appear to dictate that the extension should apply to a motion as well.

<u>Bechtel v. Liberty Nat'l Bank</u>, 534 F.2d 1335, 1341 (9th Cir. 1976). The University defendants did not expressly move for an extension of time in which to file their answer to plaintiffs' second amended complaint. However, in a December 2, 2019 joint motion to extend the scheduling and planning report deadline, a motion which the court granted,[46] the parties indicated that the University defendants would shortly be filing a motion to dismiss some of the Title IX claims.[47] Plainly, the parties anticipated and agreed that the University defendants would file a motion to dismiss sometime after December 2, 2019. Under these circumstances, the court will not treat the instant motion as untimely. Resolving the arguments raised in the instant motion "will expedite disposition of the case." <u>Evans v.</u>

---

[46]Docket No. 49.

[47]Docket No. 48 at 2.

-10-

Arizona Cardinals Football Club, LLC, 231 F. Supp. 3d 342, 351 (N.D. Cal. 2017). And, as discussed above, denying this motion on procedural grounds will only result in the University defendants re-filing it as a Rule 12(c) motion after they file their answer, which they would be permitted to do.

Turning then to the merits of the instant Rule 12(b)(6) motion, the University defendants move to dismiss plaintiffs' Title IX claims on the ground that they are not timely. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all

reasonable inferences in the light most favorable to the plaintiff." <u>Adams v. U.S. Forest</u> <u>Srvc.</u>, 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." <u>In re Tracht Gut, LLC</u>, 836 F.3d 1146, 1150 (9th Cir. 2016). In order to dismiss claims on statute of limitations grounds on a Rule 12(b)(6) motion to dismiss, "the running of the statute [must be] apparent on the face of the complaint. . . ." <u>Landow v.</u> <u>Bartlett</u>, Case No. 2:18-cv-00499-JAD-VCF, 2019 WL 8064074, at *5 (D. Nev. Nov. 18, 2019) (quoting <u>Huynh v. Chase Manhattan Bank</u>, 465 F.3d 992, 997 (9th Cir. 2006)).

"Title IX claims are subject to the applicable state statute of limitations for personal injury actions." <u>Stanley v. Trustees of Calif. State Univ.</u>, 433 F.3d 1129, 1136 (9th Cir. 2006). The statute of limitations for personal injury claims in Alaska is two years. AS 09.10.070(a). "Although Title IX borrows a state statute of limitations period, federal law governs the 'determination of the point at which the limitations period begins to run.'" <u>Stanley</u>, 433 F.3d at 1136 (quoting <u>Hoesterey v. City of Cathedral City</u>, 945 F.2d 317, 319 (9th Cir. 1991)). "'[T]he touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'" <u>Id.</u> (quoting <u>Hoestery</u>, 945 F.2d at 319).

In order to prevail on their Title IX claims, plaintiffs must show that the University defendants "cause[d them] to undergo harassment or ma[d]e [them] vulnerable to it." <u>Karasek v. Regents of the Univ. of Calif.</u>, 948 F.3d 1150, 1162 (9th Cir. 2020) (citation

-12-

omitted). The University defendants argue that plaintiffs' allegations of harassment and retaliation occurred prior to May 14, 2017 and thus they argue that plaintiffs' Title IX claims are untimely and must be dismissed. In short, the University defendants are arguing that plaintiffs' Title IX claims accrued prior to May 14, 2017.

Plaintiffs first argue that Doe VI's claims are not time-barred because they are based on her allegations that Yesner sexually assaulted her and in Alaska, there is no time limit for felony sexual assault claims. AS 09.10.065 provides that "[a] person may bring an action at any time for conduct that would have, at the time the conduct occurred, violated provisions of any of the following offenses . . . felony sexual assault[.]" However, the Alaska Supreme Court has rejected the argument that this statute "permit[s] suits against third parties who are legally responsible for allowing [sexual] abuse to occur.'" Reasner v. State of Alaska, Dep't of Health & Social Services, Office of Children's Services, 394 P.3d 610, 617 (Alaska 2017) (citation omitted). Here, Doe VI is not asserting a claim of sexual assault against the person who assaulted her; she is asserting a claim against "non-perpetrators. . . ." Id. Thus, AS 09.10.065 does not apply to her Title IX claims.

Plaintiffs next argue that Alaska's discovery rule applies here and that their Title IX claims did not accrue until March 2019. The Alaska discovery rule does not apply here because "[t]he accrual of federal rights generally remains a matter of federal law even when a limitations period is borrowed from a state source." DirecTV, Inc. v. Webb, 545 F.3d 837, 852 (9th Cir. 2008). "[T]he general federal rule is that a limitations period begins to run

-13-

when the plaintiff knows or has reason to know of the injury which is the basis of the action." Lyons v. Michael & Assocs., 824 F.3d 1169, 1171 (9th Cir. 2016) (citation omitted).

Plaintiff Dutchuk argues that she did not realize she had been sexually harassed until the University released its Title IX investigative report regarding Yesner in March 2019. She also argues that she was not aware of the sexually suggestive photos that Yesner had taken of her and stored on his computer hard drive until that information was revealed in the March 2019 report. Plaintiff Wells argues that she did not realize that she had been sexually harassed until late March 2017. Plaintiff Johnson argues that she only now realizes that she was sexually harassed. And, Doe VI argues that she did not realize she had been sexually assaulted until years later.

With the exception of Dutchuk's claims based on the sexually suggestive photographs, plaintiffs had enough information that they had "traditional", "post-reporting", or "individual" Title IX claims against the University defendants prior to May 14, 2017. Hernandez v. Baylor Univ., 274 F. Supp. 3d 602, 612 (W.D. Tex. 2017); Karasek, 948 F.3d at 1168. Such claims are based on allegations that a plaintiff was sexually harassed or assaulted, that she reported the harassment or assault to the university, and that the university's "deliberately indifferent response to that report deprived her of educational opportunities and benefits provided by the school." Hernandez, 274 F. Supp. 3d at 612.

Plaintiffs have alleged that they knew they were being sexually harassed or assaulted at the time events occurred, that they reported as much to the University, and that their

-14-

reports were met with indifference. Dutchuk alleges that in 2016, she reported to Dean John Petraitis that "Yesner had sexually harassed her and then retaliated against her."[48] Dutchuk alleges that her report was met with indifference.[49] Wells alleges that she "reported her experiences with Defendant Yesner [which occurred in 2015-2016] to her University of Alaska Graduate Committee Member[.]"[50] Wells avers that her reports were met "with apathy[.]"[51] Johnson alleges that she voiced her concerns about Yesner's behavior after the holiday party in 2014.[52] And Doe VI alleges that in 1992, she reported that Yesner had sexually assaulted her "to one of her female colleagues who in turn reported the incident to the Department Chair of the Anthropology Department at the time."[53] Doe VI alleges that her report "was met with a shrug by the Department and no investigation was launched."[54] Plaintiffs also allege that the University defendants "had actual knowledge of [p]laintiffs' sexual harassment at the hands of Defendant Yesner from the time [p]laintiffs reported this harassment to a then professor and now the Chair of the Anthropology Department, the Provost's Office, the Dean and the Chancellor in 2011, 2013, 2016 and 2017 respectively.

---

[48]Second Amended Complaint at 6, ¶ 17, Docket No. 47.

[49]Id.

[50]Id. at 7-8, ¶¶ 20-21.

[51]Id. at 8, ¶ 21.

[52]Id. at 38, ¶ 122.

[53]Id. at 8, ¶ 22.

[54]Id.

. . ."[55]  Taking these factual allegations as true, as the court must on a Rule 12(b)(6) motion to dismiss, the court concludes that plaintiffs had sufficient information to know that they had traditional or post-reporting Title IX claims against the University defendants prior to May 14, 2017.  It is not plausible, as plaintiffs contend in their briefing, that they did not know they were being sexually harassed or sexually assaulted at the time of the alleged harassment or assault.  With the exception of Dutchuk's  traditional or post-reporting Title IX claims which are based on the sexually suggestive photographs, plaintiffs' traditional or post-reporting Title IX claims accrued prior to March 14, 2017 and thus are time-barred.

Contrary to plaintiffs' arguments, these claims cannot be saved by the doctrines of fraudulent concealment and equitable estoppel.[56]  "'[A] party who fraudulently conceals from a plaintiff the existence of a cause of action may be estopped to plead the statute of limitation if the plaintiff's delay in bringing suit was occasioned by reliance on the false or fraudulent representation.'"  Sharrow v. Archer, 658 P.2d 1331, 1333 (Alaska 1983) (quoting Chiei v. Stern, 561 P.2d 1216, 1217 (Alaska 1977)).  "In order to establish equitable estoppel, 'a plaintiff must produce evidence of fraudulent conduct upon which it reasonably relied when

---

[55]Id. at 50, ¶ 174.

[56]Plaintiffs also make reference to the doctrine of equitable tolling.  While both equitable tolling and equitable estoppel "serve to excuse an untimely filing, they differ in that equitable estoppel turns on wrongdoing by the party invoking the statute of limitations, while our equitable tolling rule looks only to the claimant's circumstances—whether he has pursued an alternative remedy that proved unavailing."  Kaiser v. Umialik Ins., 108 P.3d 876, 880 (Alaska 2005).  Plaintiffs' argument focuses on what they allege the University defendants did, not on allegations that they pursued alternative remedies.  Accordingly, the doctrine of equitable tolling has no application here.

-16-

forebearing from the suit.'" <u>Waage v. Cutter Biological Div. of Miles Laboratories, Inc.</u>, 926 P.2d 1145, 1149 (Alaska 1996) (quoting <u>Pedersen v. Zielski</u>, 822 P.2d 903, 908–09 (Alaska 1991)). "The fraudulent conduct may be either an affirmative misrepresentation, or a failure to disclose facts where there is a duty to do so." <u>Id.</u>

These doctrines have no application here. As discussed above, plaintiffs have alleged that they knew about Yesner's conduct and that they knew that the University was doing nothing about it. As such, fraudulent concealment and equitable estoppel cannot save plaintiffs' untimely traditional Title IX claims.

As noted above, Dutchuk's traditional or post-reporting Title IX claims which are based on the sexually suggestive photographs are timely. But, these claims are still subject to dismissal. In order to prevail on these claims, Dutchuk must show that the University defendants, among other things, had actual knowledge of the harassment" and "acted with deliberate indifference to the harassment[.]" <u>Karasek</u>, 948 F.3d at 1162 (citation omitted). In order to show deliberate indifference, Dutchuk "must demonstrate that the school's actions amounted to 'an official decision . . . not to remedy' the" harassment. <u>Id.</u> (quoting <u>Oden v. N. Marianas Coll.</u>, 440 F.3d 1085, 1089 (9th Cir. 2006)). There are no allegations that the University defendants knew about the suggestive photographs prior to March 2019 and there are no allegations that University defendants decided not to remedy this harassment after learning about the photographs. Rather, plaintiffs allege that it was only after the March 2019 report was released, that the University defendants took any action against Yesner,

-17-

specifically banning him from campus and "from affiliating with the University of Alaska."[57]

Thus, to the extent that Dutchuk's traditional or post-reporting Title IX claims are based on

the sexually suggestive photographs, while timely, those claims are implausible.

In addition to traditional or post-reporting Title IX claims, a plaintiff may assert a

pre-assault or pre-harassment Title IX claim. Karasek, 948 F.3d at 1169.

> [A] pre-assault claim should survive a motion to dismiss if the
> plaintiff plausibly alleges that (1) a school maintained a policy
> of deliberate indifference to reports of sexual misconduct, (2)
> which created a heightened risk of sexual harassment (3) in a
> context subject to the school's control, and (4) the plaintiff was
> harassed as a result.

Id. This type of Title IX claim is subject to the same statute of limitations as a traditional or

post-reporting Title IX claim. Hernandez, 274 F. Supp. 3d at 616.

Plaintiffs suggest that to the extent that they have alleged pre-assault or pre-

harassment Title IX claims, these claims did not accrue until March 15, 2019, when the

report about Yesner's conduct was released. Plaintiffs cite to Hernandez, 274 F. Supp. 3d

602, in support of this argument. There, the plaintiff was sexually assaulted in 2012 by a

member of the Baylor football team. Id. at 610. The plaintiff brought Title IX claims against

Baylor, including what the court referred to as pre-assault claims. These pre-assault claims

were based on allegations that

> Baylor failed to address and actively concealed sexual violence
> committed by its football players for several years; that univer-

---

[57]Second Amended Complaint at 14, ¶ 34, Docket No. 47.

sity staff were repeatedly and directly informed of sexual
assaults committed by football players and neither reported the
misconduct nor conducted appropriate investigations; and that
those actions gave rise to an "overall perception that football
was above the rules and that there was no culture of accountabil-
ity for misconduct[.]"

Id. at 614 (internal citations omitted).  Baylor moved to dismiss these claims on statute of

limitations grounds, but the plaintiff "argue[d] that her claims under Title IX did not accrue

until early 2016, when later investigations revealed Baylor's alleged role in her assault."  Id.

at 616.  The court agreed with the plaintiff, explaining

that it is not evident from the pleadings that [her pre-assault]
claim is time-barred.  Plaintiff was sexually assaulted by Elliott
on April 15, 2012.  She alleges that she "first became aware of
Baylor's deliberate indifference to a known issue of sexual
misconduct within its football program in May of 2016," when
the Pepper Hamilton report was released. (Second Am. Compl.,
Dkt. 53, ¶ 84).  Thus, while [the p]laintiff certainly knew of her
injury—the sexual assault—in 2012, based on her allegations,
she had no reason to know of Baylor's role in causing the
assault until 2016.

Id.  Plaintiffs argue that similarly here, they first became aware of the University's deliberate

indifference to sexual misconduct by Yesner, which had been going on for years, when the

March 2019 report was released.  Thus, plaintiffs argue that their pre-assault or pre-

harassment claims are not time-barred.

The problem with this argument is that plaintiffs have not alleged such claims in their

second amended complaint.  Although plaintiffs have alleged some facts that suggest that

they might have such claims, a fair reading of the second amended complaint leads to the

-19-

conclusion that they have not actually alleged pre-harassment or pre-assault Title IX claims. This is not surprising given that the Ninth Circuit first recognized this theory of Title IX liability in Karasek, issued on January 30, 2020, which was after plaintiffs filed their second amended complaint. Because the court concludes that plaintiffs' second amended complaint does not allege pre-harassment or pre-assault Title IX claims, the court need not determine, at this juncture, whether such claims would be plausible or timely. The court will, however, give plaintiffs an opportunity to amend their complaint to add pre-assault or pre-harassment Title IX claims, if plaintiffs believe that they have such claims that would be both plausible and timely.

Conclusion

The University defendants' motion to dismiss[58] is granted. Plaintiffs' Dutchuk, Wells, Johnson and Doe VI's traditional or post-reporting Title IX claims in Counts I, II, and III are dismissed as untimely. Plaintiffs are not given leave to amend these claims as any amendment would be futile. See V.V.V. & Sons Edible Oils Limited v. Meenakshi Overseas, LLC, 946 F.3d 542, 547 (9th Cir. 2019) (quoting Chappel v. Lab. Corp. of Am., 232 F.3d 719, 725–26 (9th Cir. 2000)) ("'[a] district court acts within its discretion to deny leave to amend when amendment would be futile'"). Plaintiffs[59] are however given leave to

---

[58]Docket No. 54.

[59]Plaintiffs in this sentence include Annalisa Heppner and Liz Ortiz.

amend their complaint to add plausible, timely pre-assault or pre-harassment Title IX claims.

Should plaintiffs elect to file a third amended complaint, they must do so by May 4, 2020.

DATED at Anchorage, Alaska, this 9th day of April, 2020.

/s/ H. Russel Holland
United States District Judge