WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THERESA DUTCHUK, ANNALISA HEPPNER, LIZ ORTIZ, JOANNA WELLS, NORMA JOHNSON, and JANE DOE VI,

Plaintiffs,

vs.

DAVID YESNER, UNIVERSITY OF ALASKA BOARD OF REGENTS and UNIVERSITY OF ALASKA SYSTEM,

Defendants.

No. 3:19-cv-0136-HRH

O R D E R

Cross-motions for Partial Summary Judgment

Defendant David Yesner moves for summary judgment that the University of Alaska has a duty to defend him in this action.[1] This motion is opposed by the University of Alaska Board of Regents and the University of Alaska System (the "University defendants")"[2] and they cross-move for summary judgment that the University has no duty to defend Yesner.[3] The cross-motion is opposed.[4] Oral argument was requested but is not deemed necessary.

[1]Docket No. 68.

[2]Docket No. 75.

[3]Docket No. 76.

[4]Docket No. 81.

Facts

Yesner is a former Anthropology Department faculty member of the University. Plaintiffs Theresa Dutchuk, Annalisa Heppner, Liz Ortiz, Joanna Wells, Norma Johnson, and Jane Doe VI are former students at the University. In Count IV of their third amended complaint, plaintiffs assert civil assault and battery claims against Yesner. Plaintiffs allege that Yesner "repeatedly touched [them] without their consent, including giving them aggressively sexual hugs and touching their breasts, so it was sexually stimulating to him" and that "Yesner assaulted Jane Doe VI by rubbing his penis against her body and pressing his mouth against her vagina."[5] The unwanted touching is alleged to have occurred in University classrooms and labs.[6] The sexual assault is alleged to have occurred while Jane Doe VI was on an official University archeological dig.[7] In Count V, Dutchuk alleges an invasion of privacy by intrusion of solitude claim against Yesner, and Heppner alleges a false light invasion of privacy claim against Yesner. Dutchuk's claim is based on allegations that Yesner took sexually suggestive photographs of her without her consent at the Broken Mammoth Archaeological Site.[8] Heppner's claim is based on allegations that Yesner

[5]Third Amended Complaint at 65, ¶ 210, Docket No. 74. Although the battery claim is asserted by all plaintiffs, only Heppner, Wells, and Jane Doe VI expressly allege nonconsensual touching by Yesner.

[6]Id. at 28, ¶ ¶ 71-72; 40, ¶ 115; 44, ¶¶ 137-138.

[7]Id. at 44-45, ¶¶ 145-147.

[8]Id. at 66, ¶ 217.

"select[ed] a sexually suggestive photograph" to use as the "official photograph for her thesis paper."[9] Because the alleged misconduct took place at University facilities and an official archeological dig site, Yesner contends that the "basis of the plaintiffs' case is that [he] was using his position at the University both directly and indirectly to harass and retaliate against them."[10]

Yesner has asserted a cross claim against the University of Alaska for declaratory relief.[11] Yesner seeks a declaration that the University has a duty to defend and indemnify him. Yesner alleges that "[u]nder AS 14.40.175 as well as bylaws and policies of the Board of Regents, the University owes Yesner a duty to defend and indemnify for certain claims arising within the course and scope of Yesner's duties."[12] Yesner tendered his defense to the University, but on June 7, 2019, the University declined to defend him, except for Heppner's invasion of privacy claim.[13]

---

[9]Id. at 66, ¶ 219.

[10]Motion for Partial Summary Judgment at 4, Docket No. 68.

[11]Answer to Second Amended Complaint and Cross Claim at 21-22, Docket No. 50.

[12]Id. at 21, ¶ 2.

[13]Letter from Michael Hostina, UA General Counsel, to Stacy Walker, Walker & Eakes LLC, Exhibit C, Motion for Partial Summary Judgment, Docket No. 68. Yesner also tendered his defense to the University's insurance company, United Educators, but United Educators determined that Yesner was not an "Individual Insured" under the University's General Excess Liability Policy. See Exhibit D at 2-3, Motion for Partial Summary Judgment, Docket No. 68.

Yesner now moves for summary judgment that the University has a duty to defend him as to all of plaintiffs' claims against him. The University defendants cross-move for summary judgment that the University has no duty to defend Yesner.[14]

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29

[14]Although the University accepted tender of the false light claim asserted by Heppner, the University "reserve[d] the right to later deny defense . . . if facts related to the alleged sexually suggestive photograph support a conclusion that Yesner was acting outside the course and scope of his employment, or that providing defense . . . would be contrary to public policy." Hostina Letter, Exhibit C at 4, Motion for Partial Summary Judgment, Docket No. 68.

(9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). "When[,]" as here, the "parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).

Yesner contends that there are three sources of the University's duty to defend. These three sources are AS 14.40.175, a provision in the Board of Regents' Policy, and a provision in the University bylaws.

The Board of Regents' Policy provides that "[t]he board will defend, indemnify and hold harmless all of its officers and employees . . . from any and all liability or damage arising out of acts on behalf of the university done within the course and scope of duty."[15] The University bylaws provide that "[t]he board will defend, indemnify, and hold harmless board members and officers, university officers and employees . . . from any and all liability or damage arising out of acts on behalf of the board and the university performed within the course or scope of their official duties."[16]

These provisions are akin to indemnification clauses, which the Alaska Supreme Court has interpreted on numerous occasions. In Stephan & Sons, Inc. v. Municipality of Anchorage, 629 P.2d 71, 72 (Alaska 1981), "[t]he issue [was] whether S&S, a construction

[15]Exhibit A at 2, Motion for Partial Summary Judgment, Docket No. 68.

[16]Exhibit B at 10, Motion for Partial Summary Judgment, Docket No. 68.

contractor, had a duty to defend the Municipality in" a negligence action brought by the mother of Walter DeHusson. DeHusson had drowned while playing on a spillway owned by the Municipality that S&S was repairing. Id. The indemnification clause at issue read:

> The contractor shall indemnify, save and hold the City harmless, and defend the City at the contractor's sole cost and expense against any claim or liability for any injury to any person or persons or a damage to any property or any other liability arising or resulting from the construction of any improvement, or any part thereof, or from any other performance by the contractor or his subcontractors under this contract. The liability assumed by the contractor pursuant to this section shall include but not be limited to all claims brought by any person for work or materials furnished for construction of improvements under this contract.

Id. at 72-73. S&S argued that it had no duty to defend pursuant to this clause. Id. at 73. The Alaska Supreme Court disagreed, explaining that "[t]he key words are 'indemnify . . . and defend' and 'claim or liability.' We think that the most reasonable reading of the clause is that S&S agreed to defend against claims and to indemnify for liabilities." Id. at 75. The court further explained that

> "[c]laim" clearly connotes assertion of a legal right, rather than legal recognition or enforcement of that right. One does not indemnify until there is actually liability; the existence of a claim alone does not call for indemnification. Since the inclusion of the word "claim" makes it clear that S&S undertook some responsibility with regard to claims, and since it is illogical to link the term "indemnify" with "claims," it follows that the obligation undertaken with respect to claims was an obligation to defend.

Id. at 75-76.

In Rogers & Babler v. State, 713 P.2d 795, 796 (Alaska 1986), Rogers contracted with the State to do road construction work, and before the project was complete, a motorcyclist was killed "after hitting a central road divider. . . ." The personal representative of the motorcyclist brought a negligence action against Rogers, the State, and others. Id. The State argued that Rogers had a duty to defend based on "the indemnity provision contained in the State of Alaska's 1972 Standard Specifications for Highway Construction. . . ." Id. That provision read:

> The Contractor shall indemnify and save harmless the Department, its officers and employees, from all suits, actions, or claims of any character brought because of any injuries or damage received or sustained by any person, persons or property on account of the operations of said Contractor; or on account of or in consequence of any neglect in safeguarding the work; or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect, or misconduct of said Contractor[.]

Id. at 796-97. The court explained that this provision was distinguishable from the indemnification clause in

> Stephan & Sons. In Stephan & Sons, 629 P.2d at 72, the indemnity provision states that "[t]he contractor shall indemnify, save and hold the City harmless, and defend the City." Here the indemnity clause states that "[t]he contractor shall indemnify and save harmless the Department." The phrase "save harmless" does not imply a duty to defend, and nothing else in the clause suggests that such a duty exists.

Id. at 799-800 (emphasis added). The court explained that the "indemnify and save harmless" language only obligates the indemnitor to reimburse the indemnitee for the costs

incurred in defending any claims. "There exists no affirmative duty to defend under the language 'indemnify and save harmless', but only a duty to reimburse for costs of defense[.]" Id. at 800.

Extending the logic of these cases to the provisions in the Board's Policy and the University bylaws leads to a conclusion that they do not contain a duty to defend because neither provision includes the word "claim." Rather, the provisions state that the Board will "defend, indemnify, and hold harmless" employees from "liability" or "damages." The provisions do not state that the University will "defend" employees against "claims," which is what Yesner is asking the University to do.

Yesner argues that interpreting these provisions as not containing a duty to defend would mean that the University would never have a duty to defend its employees. Not so. As will be discussed below, AS 14.40.175 requires the University to defend its employees in many instances. It is also possible that the University would have a duty to reimburse the cost of a defense under the bylaws and the Policy, even if it did not have a duty to defend.[17]
AS 14.40.175, which provides, in relevant part, that

> [t]he Board of Regents shall insure or indemnify and protect . . . any agent or employee of the University of Alaska . . . against financial loss and expense, including reasonable legal fees and costs arising out of any claim, demand, suit, or judgment by reason of alleged negligence, alleged violation of civil rights, or alleged wrongful act resulting in death or bodily injury to any

---

[17]The University defendants dispute that the University would have a duty to reimburse Yesner's defense costs, but that is an issue for another day.

> person or accidental damage to or destruction of property, inside or outside the university premises, if the . . . agent or employee, at the time of the occurrence, was acting under the direction of the Board of Regents within the course or scope of the duties of the . . . agent[] or employee.

The University defendants do not dispute that this statute could trigger a duty to defend, but they argue there would be no duty to defend Yesner pursuant to AS 14.40.175 because the statute's application is limited to claims involving allegations of negligence, "violation of civil rights," or "wrongful act resulting in death or bodily injury to any person or accidental damage to or destruction of property[.]" Id. The University defendants argue that none of the claims asserted against Yesner involve such allegations. Plaintiffs have not alleged that Yesner was negligent or violated their civil rights. And, while plaintiffs have alleged "wrongful acts" by Yesner, the University defendants argue that plaintiffs have not alleged that they suffered bodily injury as a result of these wrongful acts.

Yesner contends that the University defendants are arguing that AS 14.40.175 only requires them to pay defense costs after trial and that this statute contains no duty to defend. Yesner devotes a fair amount of space to arguing that the phrase "indemnify and protect" includes a duty to defend because the statute says the Board will "protect" employees for financial losses, including attorney's fees and costs.

Yesner has misconstrued the University defendants' argument. The University defendants have not argued that AS 14.40.175 does not include a duty to defend; they have argued that plaintiffs' claims against Yesner do not fall with the scope of the statute.

As for that argument, Yesner contends that the University defendants are misreading the statute. He contends that the University defendants are suggesting the statute be interpreted to mean that claims for negligence and civil rights violations must involve bodily injury or property damage, which is not what the statute says. Yesner also suggests that the list of claims in AS 14.40.175 should be read as a nonexclusive list because the statute uses the word "including." But even if the statute requires claims to involve bodily injury or property damage, Yesner argues that plaintiffs have alleged both. For example, Yesner points out that Heppner has alleged that she lost out on jobs and had to take out more loans and incur more debt because of Yesner's alleged wrongful acts[18] and Jane Doe VI has alleged that she had to "seek medical treatment for pain, tension and stress" as a result of Yesner's alleged wrongful acts.[19] Yesner argues that injury to a career could certainly be considered a form of property damage and that the idea that a sexual assault would not include bodily injury is absurd. Yesner also contends that there is an element of bodily injury in plaintiffs' claims of nonconsensual touching.

AS 14.40.175 plainly sets out the type of claims that trigger the University's duty to defend under the statute and this list is exclusive. "Including" is used to modify "financial loss and expense." It does not to modify "claim, demand, suit, or judgment." AS 14.40.175 states that it applies to claims of "alleged negligence," "alleged violation of civil rights" or

---

[18]Third Amended Complaint at 33, ¶¶ 92-93, Docket No. 74.

[19]Id. at 45, ¶ 142.

"alleged wrongful act[s.]" "Alleged wrongful act[s]" is further limited to those alleged wrongful acts that involve "death," "bodily injury", or "accidental damage to or destruction of property[.]" The only one of these that might apply here is alleged wrongful acts involving bodily injury. The question is whether any of the alleged wrongful acts by Yesner involved "bodily injury." Plaintiffs have not alleged that the invasion of privacy claims involved bodily injury. They have also not alleged that the "nonconsensual touching" claims involved bodily injury. But, as even the University defendants concede "Jane Doe VI's [assault] claim could be read to allege a bodily injury."[20] So, at least one of plaintiffs' claims against Yesner would fall within the scope of claims listed in AS 14.40.175.

That does not mean that the University has a duty to defend Yesner, however, because in order for the duty to defend in AS 14.40.175 to be triggered, the employee must have been acting within the scope of his employment at the time of the alleged misconduct. Yesner points out that the University agreed to defend as to Heppner's false light claim, which he contends means the University found that he was acting within the course of his employment when this conduct occurred. Yesner then argues that if the University has a duty to defend as to one claim, it has a duty to defend as to all claims.

In the context of contractual duties to defend, courts have held that "[i]f the complaint contains both potentially covered and non-covered claims, the insurer must defend the entire

[20]Defendants' University of Alaska Board of Regents and University of Alaska System reply in Support of Cross-Motion for Partial Summary Judgment at 2 n.1, Docket No. 90.

suit." Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 395 (5th Cir. 1995); see also, Pension Trust Fund for Operating Engineers v. Federal Ins. Co., 307 F.3d 944, 953 (9th Cir. 2002) ("[i]f any one of Winncrest's claims against PTF is potentially covered by the policy, then Federal must defend PTF against the entire suit"); Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792, 795–96 (Cal. 1993) ("[o]nce the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim"). And, at least one court has treated a statutory duty to defend like a contractual duty to defend and held that "a defense of the entire action is required if" any of the claims require a duty to defend. James v. Board of Educ. of Marathon Cent. School Dist., No. 2013-0267-M, 2013 WL 6669041, at *2 (N.Y. Super. Ct. Dec. 17, 2013). Thus, the University has a duty to defend as to all claims if it has a duty to defend as to one claim.

But, the University has no duty to defend as to Heppner's false light claim because that claim does not fall within the scope of the claims listed in AS 14.40.175. As discussed above, the only claim asserted against Yesner that falls within the scope of the claims listed in AS 14.40.175 is Jane Doe VI's sexual assault claim. In order for the University to have a duty to defend Yesner as to that claim, Yesner must have been acting within the scope of his employment when the alleged assault occurred. In determining whether there is a duty

to defend, the court looks to the allegations in the complaint, and not the "'true facts[.]'" Stephan & Sons, 629 P.2d at 73.

Yesner argues that although the facts are in dispute as to whether he was acting within the scope of his employment, that does not mean that the University has no duty to defend. Yesner argues that even if the University may ultimately not have to indemnify him because he was found to have not been acting within the scope of his employment, there is a duty to defend as long as there are claims that allege that he was acting within the scope of his employment. See Hoffman Const. Co. of Alaska v. U.S. Fabrication & Erection, Inc., 32 P.3d 346, 352 (Alaska 2001) ("[t]he duty to defend is triggered merely by claims of injury that fall within the scope of the indemnity clause"). "[A] duty to defend can be found even if there are genuine issues of material fact concerning liability for the plaintiffs' injuries." Id. Yesner argues that the potential that he might be found to have been acting outside the scope of his employment does not relieve the University of its obligation to provide a defense. Yesner argues that the University has a duty to defend him as long as there are pending claims that allege that his wrongful conduct was within the scope of his employment, which he contends there clearly are.

Yesner contends that there is no Alaska law involving this type of duty to defend and so he cites to Montefusco v. University of New Haven Police Department, Case No. X03CV044000798S, 2005 WL 1331817 (Conn. Super. Ct. May 13, 2005), in support of his argument. There, Montefusco sought a declaration that "the University of New Haven Police

Department and United Educators Insurance Risk Retention Group, Inc." had a duty to defend him in a case brought by a former co-employee. Id. at *1. The insurance policy at issue provided that the University had a duty to defend an employee only if the employee was acting within the scope of his or her employment. Id. The court concluded that "the mere possibility that Montefusco was acting within the scope of employment is sufficient to trigger the duty to defend under the policy[.]" Id. at *2. Yesner argues that the same should hold true here, that because it is possible that he was acting within the scope of his employment, as plaintiffs allege, the University has a duty to defend. Yesner argues that the University cannot avoid its duty to defend simply by saying that his alleged conduct exceeded the scope of his duties.

"'[T]he scope of employment is a fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion.'" Lane v. City & Borough of Juneau, 421 P.3d 83, 94 (Alaska 2018) (quoting Ondrusek v. Murphy, 120 P.3d 1053, 1057 (Alaska 2005)). The Alaska Supreme Court has adopted "a flexible, multi-factored test" to determine whether an employee is acting within the scope or course of his employment. Id. at 95 n.72 (citation omitted). Under this test,

> an employee acts within the scope of employment if the employee (1) performs the kind of work the employee was hired to perform, (2) acts within the employer's authorized time and space limits, and (3) acts in order to further the employer's interests.

Id. at 95.[21]

---

[21]This test is based on factors found in sections 228 and 229 of the Restatement (Second) of Agency. Section 228 provides in relevant part:

> Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

Section 229 provides in relevant part:

> In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
> (a) whether or not the act is one commonly done by such servants;
> (b) the time, place and purpose of the act;
> (c) the previous relations between the master and the servant;
> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (I) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal.

Yesner suggests that the fact that the alleged misconduct here includes allegations of sexual contact does not mean that he was acting outside the scope of his employment. For example, in Doe v. Samaritan Counseling Center, 791 P.2d 344, 345 (Alaska 1990), "Jane Doe argue[d] that Samaritan should be held liable for the acts of one of its pastoral counselors, Reverend/Dr. John Garvin." She alleged that Garvin kissed and fondled her during two of her sessions with him and that after he stopped their counseling sessions, there continued to be "sexual contact" between them. Id. The issue on appeal was whether Samaritan could be liable for Garvin's alleged misconduct "[u]nder the doctrine of respondeat superior[.]" Id. at 346. Samaritan argued "that since Garvin's tortious acts were not motivated by a desire to serve his employer, there [could not] be liability based on a theory of respondeat superior." Id. The Alaska Supreme Court rejected this argument finding that "where tortious conduct arises out of and is reasonably incidental to the employee's legitimate work activities, the 'motivation to serve' test will have been satisfied. Given the transference phenomenon that is alleged to have occurred in this case, we hold that it could reasonably be concluded that the resulting sexual conduct was 'incidental' to the therapy." Id. at 348.

Doe does not help Yesner, in part, because this is not a case involving the transference phenomenon. But more important, as this court has explained, "in VECO, Inc. v. Rosebrock, [970 P.2d 906 (Alaska 1999),] the Alaska Supreme Court retreated from its holding in Doe."

D.W.J. v. Wausau Business Insur. Co., 192 F. Supp. 3d 1014, 1020 (D. Alaska 2016). In VECO,

> an employee sued VECO, alleging a hostile work environment and retaliation. While the scope of employment test was not the focus of the case, the court cited with approval the Restatement of Agency, that an employee is not acting within the scope of employment unless his actions are actuated, at least in part, by a purpose to serve the master. The court cited Doe's language regarding the tortious conduct being reasonably incidental to the employee's legitimate work activities and held that to the extent that this language suggests that the employee's acts need not be motivated in fact at least to some degree to serve the master's business we disapprove of it. The court noted that the aided in agency theory from another section of the Restatement would have been more applicable to the facts of Doe, as it does not require that the conduct be within the scope of employment. The Alaska Supreme Court concluded that imposing vicarious liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjustified.

Id. (citations omitted).

Plaintiffs have not expressly alleged that Yesner was acting within the course of his employment when he allegedly sexually assaulted Jane Doe VI, probably with good reason. As the court in D.W. J. observed, "an employee must be acting at least in part with a purpose to serve the master, and an employee perpetrating a sexual assault cannot do such." Id. Here, based on plaintiffs' allegations, there can be no question that Yesner's alleged assault of Jane Doe VI had anything to do with advancing his job responsibilities as a professor or anything to do with advancing the University's educational goals. Yesner was not acting

within the scope or course of his employment when he allegedly sexually assaulted Jane Doe VI, and the University would have no duty to defend as to this claim.

In sum, the provisions in the Board Policy and University bylaws do not contain a duty to defend. The only source of a duty to defend that might be applicable here would be AS 14.40.175. The only claim alleged by plaintiffs against Yesner that falls within the scope of claims listed in AS 14.40.175 is Jane Doe VI's sexual assault claim, But, the University does not have a duty to defend as to Jane Doe VI's sexual assault claim because Yesner could not possibly be considered to have been acting within the scope or course of his employment when he allegedly assaulted Jane Doe VI. Because the University has no duty to defend Yesner as to Jane Doe VI's sexual assault claim, it has no duty to defend Yesner as to any of the other claims asserted against him.

## Conclusion

The University defendants' motion for oral argument[22] is denied.

Yesner's motion for partial summary judgment[23] is denied and the University defendants' cross-motion[24] is granted.

DATED at Anchorage, Alaska, this 11th day of August, 2020.

/s/ H. Russel Holland
United States District Judge

---

[22]Docket No. 83.

[23]Docket No. 68.

[24]Docket No. 76.