WO    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THERESA DUTCHUK, ANNALISA HEPPNER, LIZ ORTIZ, JOANNA WELLS, NORMA JOHNSON, and JANE DOE VI,<br><br>         Plaintiffs,<br><br> vs.<br><br>DAVID YESNER, UNIVERSITY OF ALASKA BOARD OF REGENTS, and UNIVERSITY OF ALASKA SYSTEM,<br><br>         Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br>No. 3:19-cv-0136-HRH |

O R D E R

Motion to Dismiss

Defendants University of Alaska Board of Regents and University of Alaska System move to dismiss the Title IX claims asserted by plaintiffs Theresa Dutchuk, Joanna Wells, Norma Johnson, and Jane Doe VI in plaintiffs' third amended complaint.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 91.

[2]Docket No. 94.

-1-

Background

Dutchuk, Wells, Johnson, and Doe VI (referred to collectively herein as "plaintiffs") are former students of the University of Alaska. Defendant David Yesner is a former Anthropology Department faculty member of the University. Plaintiffs allege that they were subjected to sexual harassment by Yesner, and Doe VI alleges that she was sexually assaulted by Yesner. The harassment and assault are alleged to have occurred prior to May 14, 2017.

Plaintiffs commenced this action on May 14, 2019. In their second amended complaint, plaintiffs asserted three Title IX claims against the University defendants. In Count I, plaintiffs alleged that the University defendants were deliberately indifferent to the alleged sexual harassment and assault by Yesner. In Count II, plaintiffs asserted Title IX hostile educational environment claims, and in Count III, plaintiffs asserted Title IX retaliation claims.

On April 9, 2020, the court granted the University defendants' motion to dismiss plaintiffs' Title IX claims in the second amended complaint.[3] Plaintiffs' traditional or post-reporting Title IX claims were dismissed as untimely because "plaintiffs had sufficient information to know that they had [such] claims against the University defendants prior to May 14, 2017."[4] Plaintiffs were not given leave to amend their traditional or post-reporting

---

[3]Docket No. 67.

[4]Id. at 16.

Title IX claims.[5] Plaintiffs argued that they had also alleged pre-assault or pre-harassment Title IX claims[6] in the second amended complaint, but the court disagreed, finding that plaintiffs had not actually alleged such claims.[7] But, plaintiffs were given leave to amend "to add plausible, timely pre-assault or pre-harassment Title IX claims."[8]

Plaintiffs timely filed a third amended complaint. In Count I of the third amended complaint, plaintiffs again assert deliberate indifference Title IX claims. Plaintiffs allege that while they "were certainly aware" that Yesner had "subjected [them] to unwanted and unwelcome sexual harassment" and assault at the time the alleged harassment and assault occurred, they

> had NO CLUE of the pervasiveness of [Yesner's] conduct, the refusal of the University to acknowledge [the conduct,] the refusals of the University to address [Yesner's conduct], and the University's pretense that such complaints would be dealt with appropriately when in fact they were deliberately ignored and allowed to continue.[9]

---

[5]Id. at 20.

[6]Some courts refer to this type of Title IX claim as a "heightened risk claim" because it is based on allegations that the defendant's prior handling of sexual harassment or assault complaints increased the plaintiff's risk that she would be sexually harassed or assaulted. See, e.g., Jameson v. Univ. of Idaho, Case No. 3:18-cv-00451-DCN, 2019 WL 5606828, at *2 (D. Idaho Oct. 30, 2019).

[7]Order re Motion to Dismiss at 20, Docket No. 67.

[8]Id. at 20-21.

[9]Third Amended Complaint at 55, ¶ 180, Docket No. 74.

-3-

In Count II of the third amended complaint, plaintiffs again assert Title IX hostile educational environment claims. Plaintiffs allege that they "were subjected to sexual harassment so severe, pervasive and objectively offensive they were denied access to educational opportunities and benefits. . . ."[10] Plaintiffs allege that "the University's deliberate refusal to act, remedy, [or] discipline" Yesner for his conduct "led to further damage to" them.[11] And, in Count III in the third amended complaint, plaintiffs again assert Title IX retaliation claims. Plaintiffs allege that they were subjected to adverse actions after they reported the alleged sexual harassment by Yesner.[12] Plaintiffs allege that the University did nothing to remedy this retaliation but rather "pretended to act" and that this did "nothing . . . to prevent further wrongful conduct" by Yesner.[13]

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the University defendants now move to dismiss plaintiffs' Title IX claims on the grounds that they are barred by the statute of limitations.

Discussion

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

---

[10] Id. at 61, ¶ 195.

[11] Id. at 60, ¶ 191.

[12] Id. at 63, ¶¶ 204-205.

[13] Id. at 63, ¶ 203.

-4-

Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016). In order to dismiss claims on statute of limitations grounds on a Rule 12(b)(6) motion to dismiss, "'the running of the statute [must be] apparent on the face of the complaint. . . .'" Landow v. Bartlett, Case No. 2:18-cv-00499-JAD-VCF, 2019 WL

8064074, at *5 (D. Nev. Nov. 18, 2019) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)).

"Title IX claims are subject to the applicable state statute of limitations for personal injury actions." Stanley v. Trustees of Calif. State Univ., 433 F.3d 1129, 1136 (9th Cir. 2006). The statute of limitations for personal injury claims in Alaska is two years. AS 09.10.070(a).

In their third amended complaint, plaintiffs appear to have repled their traditional or post-reporting Title IX claims. To the extent that plaintiffs have repled their traditional or post-reporting claims, these claims are again dismissed as untimely.

Turning then to plaintiffs' pre-harassment Title IX claims, such claims will

> survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

Karasek v. Regents of Univ. of Calif., 956 F.3d 1093, 1112 (9th Cir. 2020) (quoting Davis. v. Monroe County Bd. of Educ., 526 U.S. 629, 650 (1999)). This type of Title IX claim is subject to the same statute of limitations as a traditional or post-reporting Title IX claim. Hernandez v. Baylor Univ., 274 F. Supp. 3d 602, 616 (W.D. Tex. 2017).

-6-

Case 3:19-cv-00136-HRH   Document 99   Filed 09/25/20   Page 6 of 13

The University defendants argue that plaintiffs' pre-harassment Title IX claims are untimely because these claims accrued prior to May 14, 2017. "Although Title IX borrows a state statute of limitations period, federal law governs the 'determination of the point at which the limitations period begins to run.'" Stanley, 433 F.3d at 1136 (quoting Hoesterey v. City of Cathedral City, 945 F.2d 317, 319 (9th Cir. 1991)). "'[T]he touchstone for determining the commencement of the limitations period is notice: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'" Id. (quoting Hoestery, 945 F.2d at 319).

The University defendants first argue that the injury for plaintiffs' post-harassment and pre-harassment claims is the same, namely that "'severe, pervasive, and objectively offensive'" harassment deprived them of access to the "'educational opportunities or benefits provided by the school.'" Karasek, 956 F.3d at 1112 (quoting Davis, 526 U.S. at 650). In other words, the University defendants argue that the injury for purposes of plaintiffs' pre-harassment claims is the harassment itself. Because plaintiffs have not alleged that they experienced any harassment after May 14, 2017, the University defendants argue that plaintiffs' pre-harassment claims are untimely.

This argument fails. The injury that forms the basis of a pre-harassment Title IX claim is the heightened risk of sexual harassment that is caused by the institution's policy of indifference. For purposes of determining when a pre-harassment claim accrued, the injury is the heightened risk that such harassment would occur, not the harassment itself.

-7-

But, even if that is the relevant injury, the University defendants argue that plaintiffs' pre-harassment claims are still untimely because plaintiffs have alleged that they were aware of the University's failure to act after receiving reports of Yesner's alleged misconduct. Dutchuk alleges that she reported the harassment by Yesner but the University's response was "an unhelpful non-answer" and that "unbeknownst to [her], no action was taken [on her complaint] and no investigation was conducted."[14] Wells alleges that she repeatedly complained about the harassment by Yesner, complaints that were met "with apathy," and that "[a]lthough one would expect such complaints to be taken seriously, it is now known that nothing was done and no action whatsoever was taken."[15] Johnson alleges that she voiced her concerns about Yesner's behavior after a holiday party in 2014,[16] but Johnson makes no allegations about any response by the University to the concerns she voiced. Jane Doe VI alleges that she reported the sexual assault by Yesner but her report "was met with a shrug by the Department and now it is known that no investigation was launched."[17] The University defendants argue that these allegations show that plaintiffs knew no action was being taken on their complaints about Yesner's alleged misconduct and that this was sufficient information for them to know that they had pre-harassment Title IX claims.

---

[14]Third Amended Complaint at 8-9, ¶ 20, Docket No. 74.

[15]Id. at 10-11, ¶¶ 23-24.

[16]Id. at 42, ¶ 125.

[17]Id. at 11, ¶ 25.

The University defendants cite to King-White v. Humble Independent School District, 803 F.3d 754 (5th Cir. 2015), to support of their argument. In King-White, A.W. alleged that she had been sexually molested by her dance teacher, Feenstra, from 2009 through 2011. Id. at 757. A.W. and her mother, King-White, alleged that school officials knew of the abuse because King-White complained to the school, but that they "did not scrutinize Feenstra or limit her interactions with A.W." Id. The "[p]laintiffs also allude[d] to certain HISD 'policies' that ostensibly allowed Feenstra's abuse to continue, including the endorsement of off-campus teacher-student interactions and unchaperoned school trips." Id. A.W. and King-White brought Title IX claims against the school district and school officials, who argued that the claims were time barred. Id. "The district court determined that [the p]laintiffs' federal claims accrued at the time A.W. knew she was being abused in 2009—thus, while the claims were tolled under Texas law until A.W. turned 18, the clock immediately began to run when she reached the age of majority in the spring of 2011." Id. at 762. On appeal, A.W. argued that the "relevant injury was the conduct of HISD and the School Officials rather than the sexual abuse itself[.]" Id. The Fifth Circuit determined that even if this were the relevant injury, the plaintiffs

> were both sufficiently aware of the facts that would ultimately support their claims by the time A.W. turned 18 in the spring of 2011. While they may not have known about complaints from other parents or certain alleged HISD 'policies,' a reasonable person who knew that her daughter was living with a teacher, and who had already lodged complaints with administrators that had gone unheeded, would have investigated further.

Id. at 762-63.

Similarly here, the University defendants argue that Yesner was a University employee and plaintiffs knew of the University's alleged failure to act on their reports of Yesner's alleged misconduct. The University defendants contend that plaintiffs have alleged that they knew that the University was not taking on any action on their reports of Yesner's alleged misconduct. The University defendants insist that each plaintiff has alleged that she was subjected to unlawful harassment, that she expected the University to respond to her allegations of harassment, but that the University did nothing. The University defendants argue if these allegations are taken as true, as they must be on a Rule 12(b)(6) motion to dismiss, then plaintiffs had sufficient information, prior to May 14, 2017, to "have prompted a reasonable person to investigate [the University's] conduct further. Id. at 762.

The University defendants argue that cases such as the instant one and King-White, which involve faculty-on-student harassment, are distinguishable from cases such as Hernandez, 274 F. Supp. 3d 602, which involved student-on-student harassment. In Hernandez, the plaintiff was sexually assaulted in 2012 by a member of the Baylor football team. Id. at 610. The plaintiff brought Title IX claims against Baylor, including what the court referred to as pre-assault claims. Id. at 610-11. These pre-assault claims were based on allegations that

> Baylor failed to address and actively concealed sexual violence
> committed by its football players for several years; that univer-
> sity staff were repeatedly and directly informed of sexual
> assaults committed by football players and neither reported the

-10-

> misconduct nor conducted appropriate investigations; and that those actions gave rise to an overall perception that football was above the rules and that there was no culture of accountability for misconduct[.]

Id. at 614 (internal citations omitted). Baylor moved to dismiss these claims on statute of limitations grounds, but the plaintiff "argue[d] that her claims under Title IX did not accrue until early 2016, when later investigations revealed Baylor's alleged role in her assault." Id. at 616. The court agreed with the plaintiff, explaining

> that it is not evident from the pleadings that [her pre-assault] claim is time-barred. Plaintiff was sexually assaulted by Elliott on April 15, 2012. She alleges that she "first became aware of Baylor's deliberate indifference to a known issue of sexual misconduct within its football program in May of 2016," when the Pepper Hamilton report was released. (Second Am. Compl., Dkt. 53, ¶ 84). Thus, while [the p]laintiff certainly knew of her injury—the sexual assault—in 2012, based on her allegations, she had no reason to know of Baylor's role in causing the assault until 2016.

Id. The court distinguished King-White, explaining that

> [h]ere, [the p]laintiff was sexually assaulted by another student. Unlike the plaintiffs in King-White, where the abuser was a school employee, [the p]laintiff therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault. And based on the allegations in her complaint, [the p]laintiff had no other reason to know or suspect that Baylor had actual knowledge of Elliott's prior sexual assaults until January 2016.

Id. at 617.

Here, because the alleged abuser was a University employee, the University defendants argue that plaintiffs had reason to suspect, long before March 2019, that the

-11-

University might have played a role in their harassment and assault. Thus, the University defendants insist that plaintiffs' pre-harassment Title IX claims are untimely and must be dismissed.

Whether a case involves faculty-on-student harassment or student-on-student harassment, the relevant inquiry for purposes of determining when a pre-harassment Title IX claim accrued is when did the plaintiff know or have reason to know that the institution's handling of prior sexual harassment complaints had subjected her to a heightened risk of being harassed. Plaintiffs have alleged that they were not aware that the University "maintained a policy of deliberate indifference to reports of sexual misconduct . . . which created a heightened risk of sexual harassment that was known or obvious" until March 2019. Karasek, 956 F.3d at 1112. Plaintiffs have alleged that they "each first became aware of the University of Alaska's deliberate indifference" to Yesner's repeated misconduct "when a formal report was finally issued in March 2019."[18] While plaintiffs have alleged that they knew, at the time they reported Yesner's alleged misconduct, that the University was not investigating their complaints, this fact alone would not necessarily have prompted a reasonable person to investigate the University's conduct further. Plaintiffs have alleged that they did not know, or have reason to know, until March 2019 that the University had been ignoring complaints of sexual harassment by Yesner for years and that it was this policy of indifference that caused a heightened risk that they would be sexually harassed. Accepting

---

[18]Third Amended Compliant at 2-3, Docket No. 74 (emphasis omitted).

-12-

Case 3:19-cv-00136-HRH   Document 99   Filed 09/25/20   Page 12 of 13

these allegations as true, which the court must do on a Rule 12(b)(6) motion, it is plausible that plaintiffs' pre-harassment Title IX claims did not accrue until March 2019. Because it is plausible that plaintiffs' pre-harassment Title IX claims are timely, the University defendants' motion to dismiss these claims must be denied.

Conclusion

The University defendants' motion to dismiss[19] is granted in part and denied in part. To the extent that plaintiffs have repled their post-reporting Title IX claims in the third amended complaint, the motion is granted and these claims are dismissed with prejudice. The motion is otherwise denied.

DATED at Anchorage, Alaska, this 25th day of September, 2020.

/s/ H. Russel Holland
United States District Judge

---

[19]Docket No. 91.