IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THERESA DUTCHUK, ANNALISA )
HEPPNER, LIZ ORTIZ, JOANNA )
WELLS, NORMA JOHNSON, and JANE )
DOE VI, )
                        Plaintiffs, )
                         )
    vs. )
                         )
DAVID YESNER, UNIVERSITY OF )
ALASKA BOARD OF REGENTS, and )
UNIVERSITY OF ALASKA SYSTEM, )    No. 3:19-cv-0136-HRH
                         )
                       Defendants. )
_____)

O R D E R

Motion to Compel Discovery

      The University of Alaska Board of Regents and the University of Alaska System (the "University") move to compel plaintiffs Dutchuk, Wells, Johnson, Oritz, Heppner, and Doe IV (collectively, "plaintiffs") to produce complete or comprehensive responses to the University's First Interrogatories, Requests for Admission, and Requests for Production.[1] Defendant David Yesner does not oppose this motion and joins in the University's request.[2] This motion is opposed.[3] Oral argument has not been requested and is not deemed necessary.

---

[1] Docket Nos. 109 & 117.
[2] Docket No. 110.
[3] Docket No. 116.

-1-

## Background

Plaintiffs are former University of Alaska students.[4] Defendant Yesner is a former Anthropology Department faculty member at the University.[5] Plaintiffs allege that Yesner sexually harassed them.[6] Doe IV additionally alleges that Yesner sexually assaulted her.[7]

Plaintiffs commenced this litigation on May 14, 2019.[8] In plaintiffs' third amended complaint,[9] they asserted various Title IX claims.[10] Plaintiffs also asserted civil assault and battery claims against Yesner directly and against the University under a vicarious liability theory.[11] Additionally, plaintiffs asserted invasion of privacy and false light claims against Yesner.[12] The University filed a motion to dismiss plaintiffs' Title IX claims.[13] This Court granted the motion as to plaintiffs' post-reporting Title IX claims.[14] The motion was denied as to plaintiffs' other claims.

As to all claims, plaintiffs seek damages for "past, present, and future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present, and future enjoyment of life

---

[4] Order re Motion to Dismiss at 2, Docket No. 99.
[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Docket No. 74.
[10] Id. at 53, 59, 62.
[11] Id. at 64.
[12] Id. at 65.
[13] Docket No. 91.
[14] Order re Motion to Dismiss at 13, Docket No. 99.

and past and present lost earnings and earning capacity."[15] As to the Title IX claims, plaintiffs also allege damage to and delay in pursuit of education and careers.[16]

On November 19, 2020, the University served plaintiffs its first interrogatories, requests for production, and requests for admission.[17] Plaintiffs returned some responses and stated they would supplement others.[18] Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, the University now moves to compel plaintiffs to provide complete or comprehensive responses, specifically regarding: certain of plaintiffs' responses to interrogatories Nos. 3, 4, 5, 6, 8, and 9, certain of plaintiffs' requests for production Nos. 2, 5, 9, and 12, and all requests for admission.[19] The University also requests production of outstanding supplemental responses.[20] Finally, the University requests provision of the expenses it incurred in bringing this motion.[21]

Discussion

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the discovery in resolving the issues, among other factors. Under Rule 37.1(a)(3)(B)(iii), (iv), a party may move for an order compelling disclosure or discovery if a party fails to answer an interrogatory requested under Rule 33 or to produce a document requested under Rule 34. Pursuant to Rule 37(a)(4), an evasive or incomplete disclosure, response, or answer must be treated as a failure to disclose, answer, or respond.

---

[15] Third Amended Complaint at 67, Docket No. 74.
[16] Id. at 59, 62, 64.
[17] Docket No. 109-1.
[18] Docket No. 109.
[19] Id.
[20] Docket No. 109-14.
[21] Docket No. 109.

A party responding to discovery requests must state all grounds for objection with specificity. Rule 33(a)(4) (objections to interrogatories must be stated with specificity); Rule 34(b)(2)(B), (C) (objections to requests for production must be stated with specificity); Rule 36(a)(4), (5) (if an answer is not admitted, the answer must specifically deny the allegation or state in detail why the party cannot admit or deny and any objections must be stated); Ramirez v. Cty. of Los Angeles, 231 F.R.D. 407, 409 (C.D. Cal. 2005) (citing Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)).

"'The familiar litany of general objections, including overly broad, burdensome, or oppressive, will not alone constitute a successful objection . . . nor will a general objection fulfill the objecting party's burden to explain its objections.'" Id. (quoting Allianz Ins. Co. v. Surface Specialties, Inc., 2005 WL 44534, *2 (D. Kan. Jan. 7. 2005)). Such broad objections are too general to merit consideration and may therefore be waived. See id.

Moreover, when a party fails to timely object to discovery requests, such failure constitutes waiver of objections to the requests. Id. (citing Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988)). Thus, a court need not consider objections not asserted in a party's original discovery requests. Id. at 410. Likewise, a party who improperly raises a privilege may waive the privilege. Eureka Fin. Corp. v. Hartford Accident and Indem. Co., 136 F.R.D. 179, 181-84 (E.D. Cal. 1991) (blanket, non-specific objections raised on the bases of privilege are improper and may waive the privilege; party must specify evidence to which privilege applies).

Interrogatory No. 3: The University asked plaintiffs to "identify and describe in detail any mental anguish, emotional pain and suffering, loss of life enjoyment, or other mental health

condition that you faced prior to meeting Defendant Yesner, and whether you received treatment for same."[22]

The University asserts that plaintiffs improperly objected to this request as not reasonably calculated to lead to the discovery of admissible or relevant evidence and as harassing, annoying and beyond the scope of discovery.[23] These objections, not all of which are raised by each plaintiff, are reflected in the University's supporting exhibits of plaintiffs' responses, as are additional objections that the request is overbroad and vague. But these are the types of improper objections rejected by the Ramirez court. In none of the parties' supporting exhibits or in plaintiffs' opposition do plaintiffs ever explain the bases for or otherwise substantiate these objections. Moreover, the information requested in this interrogatory goes directly to plaintiffs' asserted damages for emotional pain and suffering, mental anguish, and loss of enjoyment of life. Therefore, plaintiffs are compelled to fully answer this interrogatory.

Interrogatory No. 4: The University asked plaintiffs to "[i]dentify every Person to which or whom you have inquired about or applied for employment since you first met Defendant Yesner, including to state for each: A. The date of your inquiry and/or application; B. The position(s) for which you applied; and C. Whether you were offered an interview and/or position."[24]

The University asserts that plaintiffs Doe IV, Dutchuk, Johnson, and Oritz improperly objected to this interrogatory as overbroad, vague, harassing, annoying, and not reasonably calculated to lead to the discovery of relevant or admissible evidence.[25] The University also asserts that plaintiffs Wells' and Heppner's responses are incomplete because Heppner's answers lacked

---

[22] Docket No. 109, 109-4, -8, -9, -10, -11, -12, -13.
[23] Docket No. 109 at 7.
[24] Docket No. 109, 109-4, -8, -10, -11, -12.
[25] Docket No. 109 at 9.

dates and because Wells' CV does not list employment opportunities she may have pursued but was not offered.[26] The noted objections are reflected in the University's supporting exhibits of plaintiffs' responses. As with interrogatory No. 3, these objections are legally improper, and plaintiffs do not anywhere further explain the bases for or otherwise substantiate these objections. Yet all the information requested in this interrogatory goes directly to plaintiffs' asserted damages for lost earnings and earning capacity and damage to and delay in pursuit of careers, as well to components of the Title IX claims. Therefore, plaintiffs are compelled to answer this interrogatory.

Interrogatory No. 5: The University asked plaintiffs to "[d]escribe in detail every educational pursuit and employment or position, including but not limited to self-employment and doctoral or post-doctoral work, you have held since you first met Defendant Yesner. Your response should include the starting and ending dates of each such position or business relationship, the identity of the Person(s) with or for whom you worked, your job title(s), and the compensation you earned."[27]

The University asserts that plaintiffs Doe IV, Dutchuk, Johnson, and Oritz improperly objected to this request as overbroad, vague, harassing, annoying, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence.[28] These objections are reflected in the University's supporting exhibits of plaintiff's responses. As with the previously discussed interrogatories, these objections are legally improper, and plaintiffs again nowhere further explain the bases for or otherwise substantiate these objections. But the information requested in this

---

[26] Id. at 10.
[27] Docket No. 109, 109-4, -8, -10, -11, -12.
[28] Docket No. 109 at 11.

interrogatory goes directly plaintiffs' claimed damages to and delays in pursuit of their education, as well as to components of certain of their Title IX claims. Accordingly, plaintiffs are compelled to answer this interrogatory.

Interrogatory No. 6: The University asked plaintiffs to "[d]escribe in detail the sources and amounts of all wages, salary, bonuses, fees, payments, commissions, and/or all other forms of earned or unearned income or financial support, including any forms of benefits from any insurance or government agency (*e.g.*, unemployment, disability, workers' compensation, and/or social security) that you have received since you first met Defendant Yesner."[29]

The University asserts that plaintiffs improperly objected to this request as overbroad, vague, harassing, annoying, and not reasonably calculated to the discovery of admissible and/or relevant evidence.[30] These objections, not all of which are raised by each plaintiff, are reflected in the University's supporting exhibits of plaintiffs' responses, as are additional objections on the basis that the request is unduly burdensome. But again, these objections are legally improper, and plaintiffs nowhere further explain the bases for or otherwise substantiate these objections. However, the information sought in this interrogatory goes directly to plaintiffs' asserted damages for lost earnings and earning capacity and damages to and delays in their careers. Thus, plaintiffs are compelled to respond.

Interrogatory No. 8: The University asked plaintiffs to "[i]dentify all individuals who you have spoken to about the allegations in the Complaint at any point in time, and as to each person state the precise nature of what you told them regarding the allegations in the Complaint, the timeframe and means by which you communicated the information, and to your knowledge

---

[29] Docket No. 109, 109-4, -8, -9, -10, -11, -12, -13.
[30] Docket No. 109 at 12.

whether the person has made a written or oral statement concerning that information, and if so, the date of that statement."[31]

The University asserts that plaintiffs Heppner's and Wells' responses are deficient because they improperly objected to this request as overbroad, vague, harassing, unduly burdensome and annoying.[32] These objections are reflected in the University's supporting exhibits, as are objections "to the extent [the request] is covered under attorney-client privilege."[33] The first five of these objections are legally deficient for the same reasons that the objections to previously discussed interrogatories are deficient. The attorney-client privilege objections are also deficient under Eureka Fin. Corp., 136 F.R.D. at 181-84, and are therefore waived because neither plaintiff ever specifies any evidence to which this privilege applies. Neither plaintiff ever further explains the bases for any of these objections to this interrogatory, but they instead argue that this narrative is better suited for deposition testimony. However, this argument has no support in the law as the discovery rules clearly permit parties to conduct discovery via both interrogatories and depositions.

The University additionally asserts that plaintiffs Heppner's and Wells' responses are also deficient because they are incomplete. Their answers do not indicate the timeframes for noted conversations, whether and when any noted individuals made written or oral statements, and in Heppner's case, the nature of the communications. As the University notes, this information is relevant to elements of the plaintiffs' Title IX deliberate indifference claims. Accordingly, plaintiffs are compelled to fully answer the interrogatory.

Interrogatory No. 9: The University asked plaintiffs "[i]f you complained about Defendant Yesner to any person employed by the University of Alaska, describe in detail when, how, and to

---

[31] Docket No. 109, 109-9, -13.
[32] Docket No. 109 at 12.
[33] Docket No. 109-9, -13.

whom you communicated any alleged complaints against Defendant Yesner, and the precise nature of the complaint, as well as when, how, and from whom you received a response, and the precise nature of the response."[34]

The University asserts that plaintiff Heppner's response is deficient because she improperly objected to the request as overbroad and vague and only answered the question in part.[35] These objections and the shortcomings of Heppner's answer are reflected in the University's supporting exhibit. As already explained, these objections are legally deficient, and they are not more fully explained or substantiated anywhere in the pleadings. And as with interrogatory No. 8, the information the University requests is relevant to the plaintiffs' Title IX deliberate indifference claim. Plaintiff Heppner is compelled to fully answer the interrogatory.

Request for Production 2: The University asked plaintiffs to "[p]roduce original, completed, signed, and notarized authorizations for the release of medical, employment, social security, education, and income tax information, attached hereto."[36]

Plaintiffs objected to this request on the grounds of relevance, not likely to lead to the discovery of admissible evidence, lacks specificity, vague and unclear, not reasonably tailored to a request for relevant information, unduly burdensome, harassing, and annoying. As noted above, these objections are legally insufficient. Additionally, plaintiffs also objected to this request on the grounds that the discovery rules do not require parties to create documents that do not exist, and particularly here, an authorization that permits a third party to disclose information. But this argument is also unavailing because the University is not asking plaintiffs to create discovery, but

---

[34] Docket No. 109, 109-13.
[35] Docket No. 109.
[36] Id.

-9-

Case 3:19-cv-00136-HRH   Document 120   Filed 09/02/21   Page 9 of 16

rather to sign releases that will allow the University to obtain any above-described documents that already exist and that third parties may hold on behalf of plaintiffs.

Plaintiffs also objected to the request as overbroad, ostensibly because the request called for records unrelated to incidents with Yesner.[37] Plaintiffs again raised this argument in their opposition motion.[38] Yet as the university notes, to determine the full scope on plaintiffs' damages, plaintiffs' other life events must be compared to the events giving rise to the claims in this case.[39] Notwithstanding, plaintiffs also argue that a trial judge who requires a party to execute a blanket records authorization abuses his discretion.[40] Plaintiffs cite no law in support of this argument. Indeed, as the University notes in its reply brief, the law suggests the opposite: that disclosure of the broader array of medical records requested here is proper when a party seeks damages related to lost earnings and earning capacity, pain and suffering, mental anguish, and loss of enjoyment of life.[41] See Garnish v. M/V EYAK LLC, No. 1:07-cv-00008-JWS, 2008 WL 2278238 (D. Alaska May 29, 2008).

In their opposition memorandum, plaintiffs also raised, for the first time, an objection to this request on the basis that this information is protected by the "physician-patient privilege".[42] But this objection is waived because it is not only untimely, see Ramirez, 231 F.R.D. at 409, but also because plaintiffs have failed to specify which pieces of evidence the privilege covers. See Eureka Fin. Corp., 136 F.R.D. at 181-84. Regardless, this argument loses on its merits.

---

[37] Docket No. 109-6.
[38] Docket No. 116 at 3.
[39] Docket No. 109 at 15.
[40] Docket No. 116 at 3.
[41] Docket No. 117 at 6.
[42] Docket No. 116 at 4.

Plaintiffs have placed their mental and emotional states directly at issue. They allege that the University's and Yesner's conduct subjected them to "significant and pervasive . . . emotional distress, destroying their careers and causing significant damage to their mental health."[43] They state that their "records from counselors and therapists as they pertain to the incidents made the basis of this lawsuit".[44] Indeed, the records from clinical psychologist Suzi Phelps, which plaintiffs have already produced, show that several of the plaintiffs suffer from PTSD, major depression, and generalized anxiety disorder, among other issues.[45]

Under Alaska Rule of Evidence 504(d)(1), Physician and Psycho-therapist—Patient Privilege, there is no physician and psychotherapist-patient privilege when the condition of the patient is an element of the patient's claim. See also Kennedy v. Municipality of Anchorage, 305 P.3d 1284, 1290-92 (Alaska 2013) (physician and psychotherapist-patient privilege not waived when party alleges only garden-variety mental anguish or emotional distress claims, meaning claims that do not involve a diagnosable mental disease or disorder, medical treatment or medication, longstanding, severe, or permanent emotional distress, physical symptoms, or expert testimony). Therefore, plaintiffs have waived any physician and psychotherapist-patient privilege as a matter of Alaska state law because their mental anguish and emotional distress are components of their claims, and these are not garden variety claims. And while there exists no general federal physician-patient privilege, Benally v. United States, 216 F.R.D. 478, 479 (D. Arizona June 12, 2003), plaintiffs have also waived any potentially applicable psychotherapist patient privilege as a matter of federal law, see Jaffee v. Redmond, 518 U.S. 1 (1996), because they do not assert it.

---

[43] Third Amended Complaint, Docket No. 74 at 3.
[44] Docket No. 109-3 at 2, Docket No. 116 at 2.
[45] Docket No. 117-1, -2, -3, -4.

Both standards are noted here because plaintiffs generally allege damages arising from both federal Title IX claims and claims sounding in state tort law. Both parties rely on just Alaska state law in their discussion of the relevant privilege standard. In the advisory committee note to the 1974 enactment of Federal Rule of Evidence 501, Privilege in General, the committee notes that when two bodies of privilege law apply to the same piece of evidence, the rule favoring reception of evidence should be applied, consistent with Federal Rule of Civil Procedure 43(a).

Because plaintiffs have improperly objected to this request and because the information requested is relevant to this case, plaintiffs are compelled to respond to this request for production.

Request for Production 5: The University asked plaintiffs to "produce all documents not already produced in response to prior Requests for Production that relate to, refer to, concern, or otherwise reflect any other source of income from the time you met Defendant Yesner to the present, including, but not limited to, payments from any state or federal agencies, payroll documents, earnings records, any retirement benefit payments and unemployment compensation records."[46]

Plaintiffs objected to this request as harassing, annoying, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant and/or admissible evidence.[47] Only plaintiff Heppner may have produced some document in response, but this attachment was not included in the supporting exhibits, ostensibly because the University concluded that no document produced by Heppner related to this request.[48] As previously explained, these objections are legally insufficient, and plaintiffs nowhere elaborate on or substantiate these objections. But this requested information is, as the University asserts, directly relevant to plaintiffs' alleged damages

---

[46] Docket No. 109.
[47] Id.
[48] Docket No. 109-5 at n. 1.

-12-

Case 3:19-cv-00136-HRH   Document 120   Filed 09/02/21   Page 12 of 16

for lost earnings and earning capacity and damages and delays to their careers. Accordingly, plaintiffs are compelled to produce the requested documents.

Request for Production 9: The University asked plaintiffs to "[p]roduce downloads or printouts of all posts and comments by you since you met Defendant Yesner on any social media website or application that regard, reference, refer, or relate in any way to Defendant Yesner, your alleged damages, or any allegations in the Complaint."[49]

The University alleges that plaintiffs Doe IV, Dutchuk, Johnson, Oritz, and Wells improperly objected to this request on the grounds that it was harassing, annoying, unduly burdensome, and that the discovery rules do not authorize certification of an authorization for third parties to deliver information to litigants or force parties to create documents that do not exist.[50] The objections are reflected in the University's supporting exhibits. Nowhere do plaintiffs further explain or substantiate these objections.

As noted above, plaintiffs' objections on the bases that the request is unduly burdensome, harassing, and annoying are legally insufficient. Plaintiffs' additional objections are also baseless, as the University notes in its motion. The University is clearly requesting copies of digital information already in existence that are within the power or control of the plaintiffs. And because the University is requesting plaintiffs' prior statements regarding their claims and alleged damages in this case, the requested materials are relevant. Plaintiffs are compelled to produce the requested materials.

Request for Production 12: The University asked plaintiffs to "produce all correspondence, notes, memoranda, notices, forms, or other documents which relate in any way to your attempts to

---

[49] Docket No. 109.
[50] Id. at 16.

secure employment since you met Defendant Yesner, including but not limited to applications for employment, documents that relate or refer to employment interviews, documents such as job postings that relate or refer to prospective employment, documents that relate or refer to offers of employment, appointment calendars, diaries, or employment contracts."[51]

The University alleges that none of the plaintiffs provided substantive responses to this request.[52] Indeed, the University's supporting exhibits show that plaintiffs objected to the request as not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, harassing, and annoying. But as already explained, such objections are legally inadequate. And nowhere do plaintiffs further explain or otherwise substantiate these objections. Yet as the University notes, plaintiffs allege loss of earnings and earning capacity damages, as well as damage and delays to their careers.[53] This request relates directly to plaintiffs' alleged damages. Accordingly, plaintiffs are compelled to produce the requested information.

Requests for Admission:

The University argues that plaintiffs have improperly responded to its requests for admission because plaintiffs only responded by objecting to the requests as overbroad and vague or ambiguous or by stating that they can neither admit or deny the truthfulness of the statement.[54] The University's supporting exhibits substantiate this argument (though plaintiff Doe IV noted that she could not admit or deny based on the phrasing of the request).

Rule 36(a)(4) states that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." The denial must

---

[51] Id.
[52] Id. at 17.
[53] Id.
[54] Id. at 17-18.

fairly respond to the substance of the matter. Here, plaintiffs have not provided responses that comply with the demands of Rule 36(a)(4) because plaintiffs' responses do not admit or deny or explain in detail why they cannot. Accordingly, plaintiffs are compelled to respond to these requests for admission in a manner consistent with the demands of Rule 36(a)(4).

Responses to be Supplemented:

The University alleges that plaintiffs have indicated that they will at some time supplement various outstanding discovery requests, but that to date, they have received no supplemental responses.[55] This allegation is supported by the University's various supplemental exhibits. Plaintiffs do not address this issue in their opposition to the University's motion. Plaintiffs' responses to the University's requests are well past due. Where, as here, plaintiffs have indicated that they will supplement but have not done so, plaintiffs have failed to disclose under Rule 37(a)(4). Accordingly, plaintiffs are compelled to respond those requests where plaintiffs indicated that they would supplement.

Attorney Fees:

The University requests that plaintiffs pay the expenses it incurred in making this motion, pursuant to Rule 37(a)(5).[56] Plaintiffs do not respond to this request in their opposition motion. Under Rule 37(a)(5)(A), if a court grants a motion to compel, the court must, after giving a party the opportunity to be heard, require the party whose conduct necessitated the motion, or the party or attorney advising the conduct, to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order payment if the movant filed the motion before attempting in good faith to obtain disclosure without court action, the party's

---

[55] Id. at 18.
[56] Id. at 20.

nondisclosure, response or objection was substantially justified, or other circumstances make the award unjust. Rule 37(a)(5)(A)(i)-(iii).

Here, the University's certification and supporting exhibits show that it attempted to secure disclosure in good faith before seeking court intervention.[57] And as noted above, none of plaintiffs' responses, nondisclosures, or objections were justified. It appears that plaintiffs have attempted to stonewall the University's efforts to conduct discovery in this case. This court will entertain the University's request to recover the expenses it incurred in bringing this motion. Plaintiffs shall have **14 days** to respond to the University's suggestion.

## Conclusion

The University's motion to compel is granted as to the discrete discovery requests discussed above.

DATED at Anchorage, Alaska, this  2nd  day of September, 2021.


/s/   H. Russel Holland
United States District Judge

---

[57] Id. at 2.