Anthony G. Buzbee* (TX Bar No. 24001820)(*Admitted Pro Hac Vice*)
tbuzbee@txattorneys.com
Cornelia Brandfield-Harvey* (TX Bar No. 24103540)(*Admitted Pro Hac Vice*)
cbrandfieldharvey@txattorneys.com
THE BUZBEE LAW FIRM
600 Travis Street, Suite 7300, Houston, TX 77002
Tel: (713) 223-5393
Fax: (713) 522-5909

Nicole C. Cusack (AK Bar No. 1511093)
nicole@cusacklawak.com
CUSACK LAW, LLC
2665 East Tudor Road, Suite 202
Anchorage, AK 99507
Tel: (907) 903-4428
Fax: (907) 222-5412

Charles Sturm* (TX Bar No. 1511093)(*Admitted Pro Hac Vice*)
csturm@sturmlegal.com
STURM LAW PLLC
712 Main Street, Suite 900
Houston, TX 77002
Tel: (713) 955-1800

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THERESA DUTCHUK, ANNALISA HEPPNER, LIZ ORTIZ, JOANNA WELLS, NORMA JOHNSON, AND JANE DOE VI<br><br>*Plaintiffs*<br><br>vs.<br><br>DAVID YESNER, UNIVERSITY OF ALASKA BOARD OF REGENTS AND UNIVERSITY OF ALASKA SYSTEM,<br><br>*Defendants* | Case No.: 3:19-cv-00136-HRH<br><br><br>**FOURTH AMENDED COMPLAINT** |

FOURTH AMENDED COMPLAINT - 1

# I.    <u>NATURE OF THE ACTION</u>

Plaintiffs, Theresa Dutchuk, Annalisa Heppner, Liz Ortiz, Joanna Wells, Norma Johnson and Jane Doe VI for their FOURTH AMENDED Complaint against Defendants David

Yesner ("Yesner"), University of Alaska Board of Regents ("Board of Regents"), and University of Alaska System ("University of Alaska")("University"), state as follows:

This action arises from Defendant University of Alaska's deliberately indifferent response to the severe and long running sexual harassment of graduate students by University of Alaska's professor and supervisor, Defendant David Yesner. Unbeknownst to Plaintiffs to at least March 2019, Defendant University of Alaska was deliberately indifferent to their rights, when the University utterly failed to promptly and appropriately investigate and respond to the harassment, which subjected Plaintiffs to retaliation and a hostile environment, effectively denying them access to educational and professional opportunities. **<u>There can be no doubt that each Plaintiff herein was well aware at the time it occurred of the pervasive harassment and, for some Plaintiffs, the sexual assault that impacted each as described in detail herein. One would reasonably expect that conduct of this nature, when reported, would be acted upon by their University in an appropriate manner. It is known now, finally, that such simply did not occur. So, although each Plaintiff herein was keenly aware of the actions of the perpetrator Yesner at the time such acts occurred; however, what is most important, as set forth below, is that each FIRST became aware of the University of Alaska's deliberate</u>**

FOURTH AMENDED COMPLAINT - 2

**indifference to such misconduct when a formal report was finally issued in March 2019.**

Further, Defendant University of Alaska's employee, Defendant Yesner retaliated against Plaintiffs for denying Defendant Yesner's sexual advances, which Defendant University of Alaska failed to prevent or attempt to stop even after the Plaintiffs complained of Defendant Yesner's behavior and notified Defendant University of Alaska, once the actions had started. This malicious and intentional conduct has subjected Plaintiffs to significant and pervasive reputational damage and emotional distress, destroying their careers and causing significant damage to their mental health. Their lives have been forever changed by Defendants' actions.

## II.     PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Theresa Dutchuk is a resident of Alaska.

2. Plaintiff Annalisa Heppner is a resident of the state of Rhode Island.

3. Plaintiff Liz Ortiz is a resident of Alaska.

4. Plaintiff Joanna Wells is a resident of Alaska.

5. Plaintiff Norma Johnson is a resident of Alaska.

6. Plaintiff Jane Doe VI is a resident of Oregon.

7.     By filing this Complaint, it is also the intention of Plaintiffs to give notice to all responsible parties as to all potential causes of action arising from the facts as set out herein. Defendants are instructed to notify all such responsible parties. The stating of certain causes of action, and the allegations of certain facts as to said causes of action, are

FOURTH AMENDED COMPLAINT - 3

without prejudice to Plaintiffs' right to amend this Complaint at a future juncture, and to state supplemental and/or new causes of action and add new allegations and parties as to any causes of action that may be viable due to the culpable conduct of the responsible parties which relate back to the Complaint.

8.     University of Alaska receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

9.     University of Alaska had, at all times, supervisory authority over University of Alaska, Anchorage its administration, faculty, and staff, including Defendant Professor David Yesner.

10.     This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §1367. Venue is proper in the Anchorage division of the United States District Court in the District of Alaska under 28 U.S.C. § 1391 because Defendant University is in the Anchorage Division of the District of Alaska, and is subject to this Court's personal jurisdiction; and the unlawful conduct herein occurred within Anchorage.

### III.     <u>STATEMENT OF FACTS</u>

**THE UNIVERSITY'S DELIBERATE INDIFFERENCE**

*The University of Alaska violated Title IX*

11.     Defendant University of Alaska has a long, painfully embedded history of mishandling sexual harassment claims by students against other students and by students against professors, often turning a blind eye to the numerous reports that inundate the office. Defendant University of Alaska, Anchorage's Title IX Office has been grossly

FOURTH AMENDED COMPLAINT - 4

mismanaged with high turnover, lack of leadership, and has been ineffective in addressing reports and protecting students. The University of Alaska, Anchorage (UAA) hired a new Title IX investigator in June 2017, Sara Childress. A Title IX investigator is required at every University within the United States that is subject to Title IX rules. Unknown to the Plaintiffs until such information was investigated and ultimately made public, Investigator Childress has admitted that the Office of Equity and Compliance within the University of Alaska requires significant improvement and needs a major overhaul regarding policies and procedures. Indeed, according to Childress, the way the office was functioning was in direct violation of Title IX. Specifically, Childress said she would like to see:

> "a structure to that office, written expectations, protocols. We have a huge retention issue in that office, as I am the only one in the office at this point."

Retention problems ultimately resulted in an increase in processing times and repeated failures to timely address reported incidents, if ever.

> "We are creating expectations for ourselves, creating processes, documentation, data across the board. We are also, I would say, changing the face of the office. We are really trying to increase visibility."

12.     By making these statements, Childress clarified that the University had failed to protect its students and the community against sexual harassment.

13.     According to an in-depth article by *The Northern Light*, the University student newspaper, the University received over eighty six reports of sexual harassment from July 2017 to June 2018, and not ONE report resulted in an investigation, much less the imposition of discipline. In addition, after conducting a rigorous compliance review, the Office of Civil Rights ("OCR") issued a detailed fifty-page letter on February 21, 2017

FOURTH AMENDED COMPLAINT - 5

addressed to University of Alaska President Jim Johnsen, outlining the troubling and numerous Title IX violations the University had committed regarding its response to sexual harassment complaints. This letter was not made public or shared with the student body, or the students directly impacted. As set forth in the letter, the University simply did not respond to complaints or the response was so inadequate it may as well have been considered a non-response. The most serious violation, according to OCR, was the University's processing times were simply too long:

> "During the 2013-2014 academic year, UAF's (University of Alaska, Fairbanks) case processing time averaged *122 days* and the longest time was *567 days*; UAA had an average of 97 days and the longest case took *403 days*, and UAS (University of Alaska System) provided only one investigative record to OCR for a case that took *125 days*."[1]

14.     Title IX Rules mandate that reports be resolved within only *sixty days*. According to OCR, University of Alaska has violated the Title IX rules for years, hurting complainants in the process who never received justice.

15.     In one case, OCR found an instance where a male student at the University had sexually assaulted two female students starting in 2012. The assault was reported to the Dean of Students office but the office took no action. *Almost four years* passed between the date the complaint was received and the date sanctions were finally issued in 2016. The University allowed the rapist to remain on campus for almost four years with no restrictions.

---

[1] Cheyenne Mathews, *Red Zone: They came forward. Then what?,* The Northern Light, September 13, 2018 http://www.thenorthernlight.org/red-zone-they-came-forward-then-what/.

FOURTH AMENDED COMPLAINT - 6

16.     In another instance, in 2013, OCR found that a student reported a professor was sexually harassing female students. The complainant stated that she knew at least four students with whom the professor had had a sexual relationship. When interviewed, a female professor said that several students had complained about this professor's conduct toward female students. The documents provided to OCR contained a draft Title IX investigation report, concluding that the respondent behaved inappropriately with students and recommending a letter of expectations of behavior from the Dean. **The investigation was not completed and neither a final report with findings nor a letter from the Dean was issued.**

17.     Other violations found by OCR set forth in the letter included but were not limited to:

- Failure to conduct or complete investigations;

- Failure to provide prompt investigations and resolutions;

- Failure to provide adequate investigations and notice of outcome;

- Failure to prevent retaliation;

- Failure to provide interim measures; and

- Failure to assess hostile environment.

For failure to assess hostile environment, OCR specifically stated in its letter:

> **"The university's failure to take follow-up action raises concerns that a hostile environment continued. The fact the alleged harasser was no**

FOURTH AMENDED COMPLAINT - 7

**longer at the university did not necessarily eliminate a hostile environment. OCR determined that in multiple cases, the System failed to assess whether a hostile environment existed, and thus if one did exist, the System failed to take any action to address it."**

18.     Unbeknownst to the students, even the University of Alaska Title IX offices were internally infested with predators. The misconduct investigator hired by University of Alaska, Fairbanks ("UAF"), Patrick Shipwash, was found to have engaged in sexual misconduct at a previous university where he was employed. UAF failed to do its due diligence to ensure the investigators it hired were free of sexual misconduct allegations themselves, compounding the danger in which the University was placing its students.

19.     In September 2015, after the System discovered that UAF had not suspended or disciplined *any* student for *any* sexual assault cases between 2011 and 2014, the System commissioned an independent review of UAF and its compliance with Title IX. On October 20, 2015, a month after commissioning the independent review, UAF interim chancellor Mike Powers issued a public statement apologizing for UAF's failure to appropriately address sexual assault on campus and calling for an end to silence and inaction around campus sexual assault.

19.     OCR additionally found the University's Grievance procedures, including where complaints were to be filed, to be confusing and not easily understood.

20.     In 2016, Plaintiff Theresa Dutchuk reported to Defendant University of Alaska that Defendant Yesner had sexually harassed her and then retaliated against her. As part of his retaliation for her voicing her objections to his comments and advances, Defendant Yesner had become non-responsive to plaintiff Dutchuk, even though she

FOURTH AMENDED COMPLAINT - 8

required his guidance as her thesis advisor. Plaintiff Theresa Dutchuk reported Yesner's bizarre conduct toward her and non-responsiveness to University of Alaska's Dean John Petraitis. Once again, the University responded with an unhelpful non-answer, advising Plaintiff Theresa Dutchuk to merely "switch advisors." Someone in the University's anthropology department could have provided Plaintiff Theresa Dutchuk with sexual harassment resources, referred her complaints to the Office of Equity and Compliance, or unilaterally taken it upon themselves to investigate Yesner. However, unbeknownst to Plaintiff, no action was taken and no investigation was conducted.

21. In 2011, Plaintiff Annalisa Heppner reported Defendant University of Alaska employee, Defendant David Yesner's behavior to a professor at the time and now the Chairwoman of the Anthropology Department at University of Alaska. In her report, Annalisa Heppner reported the instances described in more detail below of sexual harassment and retaliation by Yesner. Plaintiff Annalisa Heppner had sought the protection of a University leader by reporting the sexual harassment and retaliation to a University official. The professor told Plaintiff Annalisa Heppner she "should cover up more" so as to not draw attention to herself and create a distraction. Although under the circumstances one would expect such, absolutely no investigation was ever conducted and no action was taken.

22. In September 2013, Plaintiff Heppner purported to and believed she was making a formal sexual harassment complaint about the conduct of Defendant Yesner to the Provost's office of the University. Instead of taking her complaint seriously and

FOURTH AMENDED COMPLAINT - 9

investigating, unbeknownst to her, the Provost's office blew her off. Worse, the Provost's office advised her that it would be best for Plaintiff to "switch advisors." Apparently, Plaintiff's concerns fell on deaf ears. Although the University Provost's Office minimized switching advisors, doing so was laborious, unrealistic, and sets candidates back years in the PhD process. Plaintiff was already years into her thesis writing and to switch out at such a late juncture would have required Plaintiff to start the process all over again, starting at point zero, incurring significant costs, and delaying her graduation and her career for years. Once again, Plaintiff left feeling deflated and hopeless. Now it is publicly known: No action was taken. No one followed up.

23. Plaintiff Joanna Wells reported her experiences with Defendant Yesner to her University of Alaska Graduate Committee Member, who had encouraged Plaintiff to attend UAA and study under Defendant Yesner. The graduate committee member and her husband (both of whom were previously graduate students under Defendant Yesner) knew of Defendant Yesner's sexual harassment and predatory behavior but recommended Plaintiff Wells work with Defendant Yesner, knowingly placing her in a dangerous situation with this known predator.

24. Whenever Plaintiff Wells would complain to this graduate committee member and her husband about Defendant Yesner's inappropriate comments and gestures as her advisor, they would both respond with apathy, saying "that's just Yesner" and "do not believe the stories until it happens to you." They would also remark that "it's just department politics." These responses were inadequate for someone voicing their concerns

FOURTH AMENDED COMPLAINT - 10

about sexual harassment. Furthermore, such comments confirmed that the University graduate committee member and her husband knew about Defendant's behavior and yet chose to ignore it and instead defended Defendant Yesner. Although one would expect such complaints to be taken seriously, it is now known that nothing was done and no action whatsoever was taken.

25.     Plaintiff Jane Doe VI told several people about Yesner's behavior and members of the Anthropology community at the University. Plaintiff Jane Doe VI relayed her horrifying account of sexual assault by Defendant Yesner to one of her female colleagues who reported the incident to the Department Chair of the Anthropology Department . Her outcry was met with a shrug by the Department and now it is known that no investigation was launched. At the time, the Department Chair and Yesner were close friends.

26.     In the face of these multiple reports and complaints, it is now known that, rather than act to protect students, what the University did instead was continue to reward Yesner for his sexual harassment, sweeping the students'/Plaintiffs' complaints under the rug and awarding Yesner with promotion after promotion within the Anthropology Department and within the graduate school. The University even appointed Defendant Yesner Associate Graduate School Dean of UAA for two terms and ultimately bestowed "Emeritus" status upon Yesner – a highly coveted and one of the more highly prestigious positions at any University. Once a professor achieves "Emeritus" status, he/she is allowed unrestricted access to the University forever. He/she can come and go as she pleases with

FOURTH AMENDED COMPLAINT - 11

no supervision. Despite extensive reports of Defendant Yesner's history of sexually harassing and sexually abusing female students, the University allowed him even more leeway and an unfettered gateway to prey on young female students on campus.

27. Plaintiff Heppner and Plaintiff Dutchuk constantly reported Defendant Yesner's inappropriate and violative behavior to professors and other faculty members at the University. However, University Faculty Members and leaders either refused to or failed to take Plaintiffs' reports seriously, often responding to the women's reports with: "Oh, that's just David being David." Although these students knew that Yesner's conduct had not changed; what they did not know was that there were multiple other complaints, and that the University was doing nothing, deliberately denying them the rights to which they are entitled.

28. Once Plaintiff Heppner learned that Professor David Yesner was a candidate for Emeritus status, she, along with the other women victimized by Defendant Yesner, once again reported David Yesner, this time to Chancellor Sam Gingerich via email. As follows the University's ongoing indifference and inaction, Chancellor Gingerich apparently ignored Plaintiff Heppner's email and never responded. Plaintiff was forced to email Chancellor Gingerich again on December 11, 2017. The email read:

Dear Chancellor Gingerich,

I'm emailing you today to add my voice to those of other students from the Anthropology Department who strongly oppose granting Dr. David Yesner Emeritus status at our university. I am David's last graduate student, in fact, my diploma hasn't been issued yet, so writing to you makes me nervous. However, I feel like I have to say something.

FOURTH AMENDED COMPLAINT - 12

David was my thesis advisor for seven years, and his incompetence as an advisor, archaeologist, and mentor can't be understated. He failed repeatedly in his academic duties to me. His general poor performance in his role is a large part of the reason why it took me over seven years to complete a three-year degree.

The phrase I found the most helpful in dealing with David was, "You can't talk to me that way." I used it when he asked me to spank him for failing to perform a task I requested. I used it when he complimented my clothing. I used it when he complimented my body. I used it when he said, "if I were 30 years younger, I'd like to 'be with you.' David made a habit of staring directly at my breasts while we talked, of grazing his hands against my breasts, or my butt whenever he could. He frequently put his hand on the small of my back, and would rub in little circle, just above my butt. I asked him to stop touching me on a number of occasions. I started showing up to our meetings wearing my winter parka, and refusing to remove it. On more than one occasion, I'd come in for a meeting, and his fly would be undone. David had well-organized, graphic pornography on the laboratory computer we shared. Occasionally, I would come in to the lab, and find it just...open. As I searched through the records of the Broken Mammoth collection (which were and are a shambles) to do my thesis research, I found photographs of excavations at the field site, where an artifact or feature was cropped from the frame of the photograph to better feature the student's breasts. I found print outs of pornography. I stopped going to meetings where I might be alone with him. I refused to have "closed-door" meetings in his office.

David also advised my former boyfriend. He would ask my boyfriend about our sex life. David told my partner that he knew we'd get together because they had the same taste in women, and then referenced my breasts. David told my partner (within my earshot) that it didn't matter how I did in school, because I was going to be such a great wife for him. My disgust and feeling that I was the object of sexual desire kept me from wanting to work with David. I delayed my work, and didn't fully commit to writing my thesis until I moved out of state, and finally felt like I could work on the collection that I cared about without worrying that I would be treated like a sex object. These are all such small stories of the harassment I faced. Imagine these stories, over and over and over and over and over and over again, for seven years. It was a relentless stream of objectification and demeaning behavior that left me in frustrated and angry tears.

I'd like to emphasize that David wielded considerable power over me. In my tenure as his student he was also an associate Dean in the Graduate School, and he is the Principal Investigator of the archaeological site where I did my thesis research. Leaving, complaining, or switching advisors, never felt like an option. Additionally, I felt unsupported by my faculty, and the university. David's behavior was an 'open secret.' I was told frequently that his actions were gross, but harmless, and some of

this behavior was laughable, a product of another time. When he was offered the Dean position, I felt like there was nothing I could do. When I think back at my time at UAA, I think most often of the helplessness, powerlessness, disgust, and disrespect I felt on a regular basis. David effectively curtailed my scholarship, my desire to be an archaeologist, and my desire to work in academics. I came in to UAA with the goal of continuing on to a Ph.D, program, but working with David, and dealing with UAA squashed that desire from me. His behavior directly blocked my progression as a scientist.

I understand that you are unlikely to revoke this status, but I want you to know, that as someone who worked closely with David, I strongly, and deeply oppose this decision. This is an opportunity for the university to stand up for its female students, and to apologize for the sexual harassment I was subjected to, on a regular basis, for seven years of my life. I am deeply disappointed and furiously angry that this is happening. It feels like a slap in the face, and if feels like institutional support of someone who I view as a serial predator. I felt unsafe in his presence, I felt like I had no place to go within the university to voice my complaints, and this kind of thing is exactly why. It is not a secret that David Yesner is inappropriate with his female students. This is something known to the department, the college, and the University Title IX Office. I've complained and contributed to investigations, and nothing happened. Choices like granting David Yesner Emeritus status directly contribute to a culture of sexual harassment that keeps women out of science and the academy. Every faculty member who nominated him, everyone who refused to object to his nomination, and you are complicit in creating an environment that is hostile to women. In this age of #metoo, and the ousting of serial sexual harassers in the entertainment, media, political, and academic worlds, it is beyond tone deaf, to grant an honor like this to someone like Dr. Yesner.

Speaking publicly about my experience with David is not something I shy away from. This isn't second hand information, and it's not hearsay. These are my experiences with UAA, the Anthropology Department, and my faculty advisor. I have cautioned female students about working with him, and I've advised incoming students looking to study Pleistocene archaeology to not only not work with David, but to go to other schools.

I have already said it, but I am disappointed in UAA. Please feel free to forward this email to anyone you'd like.

29.     Plaintiffs Liz Ortiz, Norma Johnson, and a third female survivor co-authored

a letter which they sent to Chancellor Gingerich on December 8, 2017 upon hearing of

Defendant Yesner's pending Emeritus status. The letter reads:

FOURTH AMENDED COMPLAINT - 14

Chancellor Gingerich,

The purpose of this letter is to request that the University of Alaska Anchorage wait on announcing the award of Professor Emeritus to Dr. David Yesner of the Department of Anthropology, until it can be determined that he meets the requirements of the role. While there has not been an official announcement that he has been awarded Emeritus, we have witnessed Dr. Yesner moving the contents of his office into the Emeritus space within the Beatrice McDonald Hall. We have also overheard conversations between Dr. Yesner and another Emeritus faculty member concerning sharing the space.

The title and rank of Emeritus is said to be bestowed upon professors who promote student success, advance their department, and represent the ideals of the University. We believe that this title should not be awarded to a professor who does not exemplify these characteristics, and ask that you take this under consideration before awarding Emeritus to Dr. Yesner. It has come to our attention that Dr. David Yesner has had Title IX complaints filed against him by colleagues of ours. While we do not know the status of these investigations, we have heard of the incidents from the individuals who filed them. Additionally, complaints have been made to Dean Petraitis in regards to quality of instruction in the classroom.

Importantly, the University of Alaska Anchorage's 2020 initiative identifies the main goal as to "Advance a culture of institutional excellence that inspires and enables student, faculty, and staff success". Also, UAA's Office of Equity and Compliance website states that their mission is ensuring a climate of equity, respect, and safety. "The UAA Office of Equity and Compliance affirms its commitment to a safe and healthy educational and work environment in which educational programs, employment and activities are free of discrimination and harassment". We question if awarding Emeritus to Dr. Yesner reflects the goals and mission of the University of Alaska Anchorage, and respectfully request that a delay of this announcement be considered.

If you have any questions, or would like to discuss further issues, the signatories of this letter are available to meet in person at your convenience.

30.    As can be seen from the text of the above letter, the author, even if aware of other complaints (but, certainly not the overwhelming number) assumed that investigations were being conducted; that action of some form was being taken, even if such was inadequate; and that the complaints were being taken seriously. It was learned later that

FOURTH AMENDED COMPLAINT - 15

such was not the case, at all. Worse, in response to concerns being raised about Yesner's Emeritus status, Chancellor Gingerich responded by stating that the "[Emeritus] process was completed weeks ago" and "the Commencement Program [had already] been finalized."

31.     Plaintiff Jane Doe VI filed a complaint with the Office of the Chancellor on December 10, 2017 regarding Defendant Yesner's behavior when she was notified that Defendant Yesner was a candidate for the position of Emeritus professor.

32.     Plaintiff Wells submitted a letter to Chancellor Gingerich on December 8, 2017, reporting harassment and discrimination by Defendant Yesner. In response to her letter, she was referred to the University's Title IX investigators. Plaintiff Wells repeatedly attempted to gain assistance from Defendant University's Title IX Office. The University's Title IX Office first ignored her calls for assistance and then was dismissive and disrespectful. Later, when a formal report was issued regarding the University's handling of such complaints, Plaintiff Wells became aware as to why her complaint lead to any meaningful action.

33.     The University's Title IX Office failed to return Plaintiff Well's calls to receive a status update on her report. After no response from the University and desperate to gain some assistance, Wells resorted to calling the Office two to three times a week for months on end, to no avail. When she did finally hear from someone at the University's Title IX Office, the investigator told Wells she was so "tired" of Plaintiffs' calls, leading Plaintiff to believe that the Office was not taking her claims seriously or taking any action

FOURTH AMENDED COMPLAINT - 16

regarding her reports about Defendant Yesner. It is now clear, that with regard to Wells' complaint as well as many others, the University's Title IX Office was more concerned about protecting Defendant University's reputation than protecting its students. By the time the office replied to Plaintiff, the investigation into Professor Yesner and report were already close to being completed and released.

34. The University's Title IX Office did not provide information about victim resources and referrals for support to Plaintiff Wells, as required. The University did not inform Wells of resources on campus for survivors of sexual harassment.

35. And Plaintiff Wells was made aware that the Title IX Office was severely understaffed after a Title IX investigator mentioned that **they have no one specifically working to answer the phones and that employees trade off taking days to answer phones.** It is now known that this dearth of employees leads to reports falling through the cracks and sexual harassment to continue.

36. The safety and wellbeing of female students came a distant second to the University's desire to protect its reputation and fundraising efforts. The University chose convenience and money to the detriment of their students, specifically Plaintiffs and the other victims of Professor Yesner.

37. Only recently, after a formal investigative report was released and drew media attention, did Defendant University hand down any "punishment" to Professor Yesner. The University has banned Professor Yesner from the University campus and from affiliating with the University of Alaska. Judging by his past actions and his recent

FOURTH AMENDED COMPLAINT - 17

attendance at the Society for American Archaeology (SAA) Conference discussed below where UAA students were presenting and where they would be vulnerable to Defendant Yesner's predatory behavior, Defendant Yesner most likely has no intention of abiding by the "punishment" handed down by the University.

38.     It is now known that the University had opportunity after opportunity to do the right thing and take a stand, but instead of prioritizing the safety and wellbeing of its students, the University protected Professor Yesner and its reputation over its students, including Plaintiffs.

39.     At the very least, Defendant Yesner's punishment should have been termination from the University a long time ago but instead the University protected him and continued to provide young female students as prey to a known predator.

## **GENERAL ALLEGATIONS OF PLAINTIFF THERESA DUTCHUK**

## **SEXUAL HARASSMENT**

**"Sexual harassment" is defined as:**

**"... unwelcome sexual advances, requests for sexual favors, unwanted and repetitive messages sexual, unsolicited and unwelcome transmission of images of a lewd or sexual nature, or other verbal or physical conduct sexual where:**

> **(a) submission to such conduct is made, either explicitly or implicitly, a term or condition of an individual's employment or education;**

> **(b) submission to or rejection of such conduct by an individual is the basis for retaliation, or for other employment or academic decisions affecting that individual; or**

> **(c) the conduct creates a hostile environment.[2]"**

---

[2] University Regulation R01.04.010(B)(2).
FOURTH AMENDED COMPLAINT - 18

***Defendant Yesner used his position of power and privilege to gain Plaintiff's trust.***

40.     Plaintiff Theresa Dutchuk first met Defendant Yesner in 2010 as an undergraduate student at the University. She would work at archaeological sites called field schools[3], where students from different universities would gather for the summer to participate in archaeological digs under the supervision of professors such as Defendant Yesner.

41.     Defendant Yesner was Plaintiff Dutchuk's Anthropology Graduate School Advisor from 2011 to the end of 2016/early 2017. He was also Plaintiff's instructor for her field school in 2010 at the Broken Mammoth Archaeological Site near Delta Junction. Plaintiff served as Defendant Yesner's Teaching Assistant for one semester.

42.     Defendant Yesner was considered by many to be one of the most well-known and highly regarded faculty members in the Anthropology Department and at the University in general. To his students devoted to the study of archaeology, Defendant Yesner was larger than life. He had contributed to several books about anthropology and archaeology and was celebrated as a legendary figure in the community for being the primary authority for the Broken Mammoth Archaeological Site, one of the oldest and most exciting archaeology sites in North America. He was invited to speak at conferences around the world, including Europe and South America. Plaintiff commented that Professor

---

[3] Field school is a class that is required to obtain a bachelor's degree in Anthropology.

FOURTH AMENDED COMPLAINT - 19

Yesner's name was listed all over her textbooks in undergraduate school and she, along with other students, idolized him, studying his methods and dreaming of being his student one day.

43.     Defendant Yesner was the person who encouraged Plaintiff to only apply to Defendant University of Alaska for graduate school, forgoing other coveted graduate school applications and acceptances, and recruited her to the program. Plaintiff detrimentally relied on Defendant Yesner's advisement to attend his program. Once Defendant Yesner blessed a student's admittance, it was likely that the student would be admitted to the program. Defendant Yesner possessed substantial clout within the University.

### *Defendant Yesner directed grotesque and sexually charged comments and unwanted staring at Plaintiff Dutchuk.*

44.     After Plaintiff Dutchuk enrolled in Defendant Yesner's course, Defendant Yesner began to more overtly display his sexual interest in Plaintiff.

45.     Plaintiff remembered one particular disturbing encounter that stuck with her early in her acquaintance with him at Broken Mammoth. Plaintiff was just twenty seven years old. Defendant Yesner asked Plaintiff if she ever wore heels while looking the Plaintiff up and down in a sexually explicit way, conveying to her he was imagining what "she would look like in heels." The incessant staring deeply unnerved Plaintiff, as did Defendant Yesner's excited verbal response to her confirmation of wearing heels.

FOURTH AMENDED COMPLAINT - 20

46.    Another disturbing event occurred with Defendant Yesner when Defendant Yesner and Plaintiff were working together alone at the UAA Anthropology Lab and Defendant Yesner invited Plaintiff out to dinner. These solitary occurrences with Defendant Yesner were not a fluke. Defendant Yesner would purposely attempt to get students alone in a room with him so he could assert his dominance and power. It was one of Defendant's many deceptive tactics to prey on unsuspecting female students. Plaintiff and Defendant proceeded to dinner at a restaurant in Anchorage called "Ginger." What Plaintiff thought would be an educational and professional conversation regarding her class performance and grades quickly devolved into a conversation of sexual nature. Defendant Yesner repeatedly asked Plaintiff what she was doing for the rest of the night to which Plaintiff replied that she was studying. Defendant emphasized to Plaintiff that his wife was out of town and insinuated that Plaintiff should join him at his house, staring directly into Plaintiff's eyes as he commented. Plaintiff was deeply and memorably unnerved by Defendant Yesner's facial expression while he was trying to coax her to his home. Plaintiff politely declined, but was justifiably concerned that her rejection would negatively affect her necessary academic relationship with Defendant Yesner. Plaintiff had seen Defendant Yesner lose interest in his students, specifically Plaintiff Heppner, for rejecting his advances.

47.    Plaintiff Dutchuk recalls being unsettled while at field school back in 2010 with David Yesner at the Broken Mammoth site. He encouraged drinking of alcohol and would make sexually suggestive comments such as "What happens at Broken Mammoth

FOURTH AMENDED COMPLAINT - 21

stays at Broken Mammoth," insinuating that questionable conduct would occur and would be acceptable at a professional and educational setting.

48.     Defendant Yesner allowed a known sexual predator Mike Farrell to come and "volunteer" at the field school site where he would prey on young female students, including Plaintiff Dutchuk. Farrell made students, including Dutchuk, uncomfortable while living and working at Broken Mammoth. He was not supposed to be on the site, but Defendant Yesner allowed his presence and his conduct to continue, making the female students feel uncomfortable. He signed no formal paperwork and the students were not told Farrell would be at the site before enrolling in the field school.

49.     Upon information and belief, Mike Farrell was eventually expelled from University of Alaska for sexual harassment at a field school for which he was the authority figure.

50.     Because it was frequently hot during site digs, Plaintiff Dutchuk and other female students would have to remove layers of clothing, often down to sports bras, to continue working in the heat. The students would be working in the dirt, down on all fours to conduct digs, and Defendant Yesner would immediately walk over and take photographs of the women in their bras and shorts.

51.     Plaintiff Dutchuk remembers another reoccurring incident when a female student would breastfeed her baby on site and Defendant Yesner would move to be closer to the breastfeeding female student and stare at the female's breasts unabashedly.

<b>RETALIATION</b>

FOURTH AMENDED COMPLAINT - 22

***Defendant Yesner retaliated against Plaintiff for denying his sexual***

***advances by delaying the grading of her exams.***

52.     Defendant Yesner retaliated against Plaintiff Dutchuk for rejecting his sexual advances by failing to grade her comprehensive exam and preventing her from continuing her progress and graduating. Grading Dutchuk's comprehensive exam should have taken only five weeks at the most, but Defendant took two and a half years to grade it.

53.     This delay in grading and lack of direction from Defendant Yesner unfortunately forced Plaintiff to withdraw from the University of Alaska and give up her dreams of working as a Professional Archaeologist. Without a master's degree, one cannot work as a Professional Archaeologist. A master's degree in Anthropology is required by 36 CFR 800.2(1) to become licensed and conduct unsupervised work at dig sites.[4] All her years of hard work and money were forfeited due to Defendant University of Alaska and Defendant Yesner's actions. The pervasive sexual harassment and lack of direction from Defendant Yesner put Plaintiff in an impossible situation. Defendant Yesner knew that he was effectively sabotaging Plaintiff's career and destroying her hopes of working as a Professional Archaeologist in the field. Plaintiff Dutchuk's career trajectory was destroyed and yet she must still bear the burden of student loan debt and accrual of interest on such

---

[4] *See See Archeology and Historic Preservation: Secretary of the Interior's Standards and Guidelines*, https://www.nps.gov/history/local-law/arch_stnds_9.htm (last visited May 2019);
39     CFR     Part     800   –   Protection   of   Historic   Properties   (August   2004),
http://dnr.alaska.gov/parks/oha/shpo/36cfr800.pdf.

FOURTH AMENDED COMPLAINT - 23

debt. Plaintiff could have been making an annual salary in her profession of choice but Defendants' actions derailed her academically, personally, and financially.

## SEXUAL EXPLOITATION

***Defendant Yesner took several compromising photos of Plaintiff without her consent and stored them in his computer for his own sexual gratification.***

54.    "Sexual Exploitation" occurs when a person takes non-consensual or abusive sexual advantage of another for the person's own advantage or benefit, or to benefit or advantage anyone other than the one being exploited. It includes but is not limited to: invasion of sexual privacy, prostituting another person, non-consensual video or audio-taping of sexual activity, going beyond the boundaries of consent (such as secretly letting others watch consensual sex), engaging in voyeurism; knowingly transmitting an STI or STD or HIV to another individual without his or her knowledge; sexually-based stalking and/or bullying.[5]

55.    According to the third-party, investigative report finally initiated by the University, Defendant Yesner kept photographs on his computer desktop associated with his work with the University. However, a significant amount of the photographs taken from the Broken Mammoth Archaeological Site turned out to be of a specific individual—Plaintiff Dutchuk. According to the report, these photographs often depicted Dutchuk in a sports bra and shorts and appeared to include no other significant archaeological feature.

---

[5] University Policy R.01.04.010(B)(5).

FOURTH AMENDED COMPLAINT - 24

The sexual nature of the photographs is striking. The pictures show that Defendant Yesner was zeroing in on Plaintiff's breasts and buttocks with his camera when Plaintiff thought Defendant Yesner was taking photos of the archaeological site and artifacts. The archaeological site was very secluded and not easily accessible, making it private. According to Plaintiff and other information, the entrance to the site is secured by a locked gate. The site was closed off to the general public. It is not akin to a public highway. Evidence will show the secluded nature of the site. The nature of the work required participants to pose in awkward positions, such as bending down on all fours to retrieve materials from the dirt, which lent itself to predatory behavior by professors, including Defendant Yesner.

56.    Plaintiff did NOT consent to be photographed in a sexual nature.

57.    Upon information and belief, Defendant Yesner would often masturbate to photographs of Plaintiff Dutchuk.

58.    The sexual nature of the photographs is supported by the presence of the pictures in a subfolder entitled "Personal" on Defendant Yesner's computer, which included photographs all of a similar sexualized nature.

59.    The sexual nature of Defendant Yesner's comments to Plaintiff is supported by the photographs depicting Plaintiff in compromising positions for his own sexual amusement.

60.    Defendant Yesner took a sexual interest in Plaintiff; his interest was well beyond that of a normal professor-student relationship. Thus, his unwelcome sexual

FOURTH AMENDED COMPLAINT - 25

advances toward Plaintiff, his storage of non-consensual photographs and unwanted and repetitive, sexually suggestive messages subjected Plaintiff to pervasive sexual harassment.

61.     Plaintiff was not aware these photographs of her existed or that Defendant Yesner kept them in his possession until March 15, 2019, when the final investigative report on Defendant Yesner was released. The report was the culmination of an investigation of Defendant Yesner's decades long harassment and numerous Title IX violations by the Defendant University. The report, which was too little and too late, is the only reason Plaintiff Dutchuk, and the other Plaintiffs in this case, were even aware of the breadth of Defendant Yesner's actions towards them, towards other women, and, more importantly, of the University's utter failure to respond adequately to such actions, even when reported. The pain and suffering that Plaintiff Dutchuk has now had to grapple with upon learning of these photographs, the whole of Yesner's conduct, and the University's response, or lack thereof, is immeasurable and emotionally crippling.

## GENERAL ALLEGATIONS OF PLAINTIFF ANNALISA HEPPNER

### SEXUAL HARASSMENT

*Defendant Yesner was a serial predator who made unwanted sexual advances toward Plaintiff Heppner as well as sexually explicit and suggestive comments.*

62.     Plaintiff Heppner first met Defendant Yesner when they were working on the Little John site in Yukon, Canada in 2009.

FOURTH AMENDED COMPLAINT - 26

63.    Plaintiff commenced her graduate studies in Anthropology at University of Alaska in 2010. Defendant Yesner was her thesis advisor.

64.    It was well-known by University administration, but not by past or future victims, that Yesner's conduct was a recurring problem at the University that Defendant Yesner would intensely stare at women's breasts. He would stare directly at women's breasts, including Plaintiff, when talking with them. Whenever she would engage in conversation with Defendant Yesner, he would automatically zero in on her breasts, making Plaintiff feel humiliated and uncomfortable. Plaintiff was often forced to tell Defendant Yesner to stop.

65.    At one point, Defendant Yesner directly stated to Plaintiff, "if I were thirty years younger, I would be interested in you." that "you are beautiful," and "if I were not married, I would love to be with you sexually." These comments fostered a highly inappropriate environment within the classroom and outside of the classroom as her thesis advisor. Plaintiff and Defendant Yesner should have been able to form a functional, professional relationship because they were frequently required to work together one-on-one, but any effective academic relationship was ruined by Defendant Yesner's actions.

66.    When Plaintiff communicated dissatisfaction that her comprehensive exam was taking so long to grade, Defendant Yesner responded that "maybe [she] needed to give [him] a spanking so that [he] would do better."

FOURTH AMENDED COMPLAINT - 27

67.     Plaintiff's longtime boyfriend was also one of Defendant Yesner's students. Defendant Yesner would routinely question him about his sex life with Plaintiff, asking about intimate details.

68.     Defendant Yesner also would tell Plaintiff's boyfriend at the time that it did not matter how well she did in school because she would be a good wife for him, indicating that Defendant Yesner viewed Plaintiff as nothing more than a sex object, rather than as a fellow aspiring professional and treating her as such.

69.     Plaintiff once walked in on Defendant Yesner masturbating in his office during work hours.

### *Defendant Yesner engaged in nonconsensual touching of Plaintiff.*

70.     The unwanted touching by Defendant Yesner was pervasive. Whenever Defendant Yesner spoke with Plaintiff, he would stare at her breasts and he would find ways for his hands to contact her breasts and buttocks.

71.     Whenever Plaintiff was in the lab and looking at a sample, Defendant Yesner would suddenly appear behind her, touching her breasts as he leaned in over her with his arms and hands outstretched to supervise her work.

72.     Defendant Yesner would often inappropriately hug students, including Plaintiff. Defendant Yesner would put his hand on the small of her back and rub in circles just above her buttocks, lingering in the hug for several minutes to which Plaintiff had no escape. He would also intentionally brush his hand across Plaintiff's breasts in the process of hugging her and often leave his hand wrapped around her hip.

FOURTH AMENDED COMPLAINT - 28

73.     The touching by Yesner was without consent. The unwanted sexual contact was coerced by force or the threat of force. Yesner forced himself on Plaintiff by touching her breasts. Defendant Yesner was obviously a "serial predator," and Plaintiff always felt unsafe and scared in his presence. Plaintiff felt threatened and fearful of what Yesner might do. This touching occurred in an isolated location by Yesner who Plaintiff had good reason to fear. The sexual contact also would happen immediately after Plaintiff would unequivocally refuse Yesner's sexual advances. Evidence will show the sexual contact was without consent and by force or threat of force.

74.     The most recent incident of sexual harassment experienced by Plaintiff Heppner was in November 2017. Since Defendant Yesner was Plaintiff's advisor, she had to ask for a photograph of herself from Defendant Yesner to put on her poster displayed on campus, advertising her thesis presentation. A respectful professor would have sent in a professional photograph. Defendant Yesner chose something different. He perused Plaintiff's Instagram account and selected a sexually suggestive photograph of Plaintiff, showing a suggestive picture of her cleavage. This action was highly inappropriate, even prompting Diane Hanson, the Chair of the Anthropology Department, to reply in an email to Dean John Petraitis with a worried message, "Have you seen Annalisa's poster?"

75.     Even after Plaintiff asked for the photograph to be removed in an email to the Dean and Chairwoman, the sexually suggestive photograph was still put on the poster and displayed around campus for everyone to see. Plaintiff had to go around campus herself, taking down the posters.

FOURTH AMENDED COMPLAINT - 29

76.     The photograph was eventually changed and the poster was corrected, but it was too late. The damage had been done to Plaintiff's professional reputation, as well her psyche and morale. She has had to endure the humiliation for years.

77.     This inappropriate behavior had become so common with Defendant Yesner and so pervasive that it made it impossible for Plaintiff Heppner to engage in her thesis work unmolested, as she was entitled to.

***Defendant Yesner subjected Plaintiff Heppner to pornography that***

***was stored on his computer.***

78.     Defendant Yesner engaged in the unsolicited and unwelcome transmission of lewd images when he allowed Plaintiff Heppner unrestricted access to his University computer knowing that pornography was present on his hard drive.

79.     Plaintiff Heppner was forced to view pornography in an educational setting. Defendant Yesner stored an extensive collection of pornography on his University computer.

80.     Plaintiff Heppner found the material in a file labeled "Calendar," that was shockingly filled with pornographic images. Defendant Yesner went to great lengths to save the images in specific folders and subfolders categorized by hair and body type. Plaintiff Heppner also remembers typing the word "title" into Defendant's computer when she was looking for a certain file she sent to Defendant and instead found "Big Titty Bonanza" in the search.

FOURTH AMENDED COMPLAINT - 30

81.     Pornographic images were also found in a folder on Defendant Yesner's University desktop labeled "Chloe Rose" so as to conceal his vast collection. Eerily, most women in the images bore a striking resemblance to Plaintiff Heppner.

82.     In the folder, there were approximately fifty images of pornography. The photographs primarily featured the same large breasted women in revealing positions. Both female and male genitalia were depicted. What should have been an educational environment for Plaintiff Heppner was debased by Defendant Yesner subjecting Plaintiff to pornographic images.

83.     Plaintiff Heppner observed pornography on Defendant Yesner's computer she shared with him. The pornographic pictures would be left open on his computer when she came into the lab and Defendant Yesner would be elsewhere.

84.     Plaintiff Heppner discovered several Sports Illustrated pin-up photographs of bikini-clad women mixed in with the field notes from the Broken Mammoth site.

85.     Plaintiff Heppner also observed numerous pictures of students excavating and working at sites cropped so the photographs were focused on the students' breasts.

## RETALIATION

***Defendant Yesner retaliated against Plaintiff Heppner when she rejected his sexual advances.***

86.     Defendant Yesner turned Plaintiff Heppner's experience at University into a nightmare by retaliating against her after she rejected his sexual advances. Defendant

FOURTH AMENDED COMPLAINT - 31

Yesner demonstrated a clear pattern of retaliating against his female students who denied his sexual advances and harassment.

87.    If Plaintiff Heppner did not give into his flirtations, flatter him enough or respond to his sexual advances, Defendant Yesner would go silent, cutting off any contact with Plaintiff Heppner and giving no attention to her work. This retaliatory behavior blockaded and severely stalled Plaintiff Heppner's academic and professional progress. After she rejected his sexual advances, Plaintiff Heppner could not reach Defendant Yesner to complete her work. He even blocked her access to collections that Plaintiff needed to access and review to complete her work.

88.    Plaintiff Heppner frequently told Defendant Yesner that his behavior was inappropriate and would say "Professor Yesner, you cannot say that to me. Do not ever talk to me that way again please." However, whenever she would tell Defendant Yesner to stop, he would stop talking to her for six months at a time, which greatly affected her because she needed his support in his role as her advisor.

89.    Defendant Yesner would also remove important artifacts from the classroom that Plaintiff needed and hide them in his home for months at a time, making it difficult for Plaintiff Heppner to progress through her studies and effectively sabotaging her work product.

90.    The most egregious instance of retaliation was Defendant Yesner's deliberate failure to review Plaintiff Heppner's final thesis paper, which she needed to graduate from the program. Despite repeated attempts to contact Defendant Yesner about her thesis paper

FOURTH AMENDED COMPLAINT - 32

via email, phone, and scheduled in person meetings, Plaintiff Heppner could not get him to respond.

91.     Plaintiff Heppner eventually reported the problem to the Associate Dean of Social Sciences Division, College of Arts and Science, John Petraitis, and Chairwoman Diane Hanson involved by including them on an email chain. Dean Petraitis provided Plaintiff Heppner with a tone deaf response: "Have you tried calling David at home?"

When Dean Petraitis made this comment, he already knew Defendant Yesner had made Plaintiff Heppner feel uncomfortable during her time as his advisee and yet he suggested Plaintiff Heppner to further subject herself to Yesner in a personal, unprofessional setting by calling his house on her cell phone during non-working hours. Only after Plaintiff's email to the Dean and Chairwoman did Defendant Yesner finally reply to Plaintiff Heppner's emails.

92.     Due to the retaliation by Defendant Yesner, it took nine years for Plaintiff Heppner to complete her graduate degree when the program should only have taken three to five years, at the most. Those additional years that Plaintiff Heppner had to endure caused her to lose out on coveted job positions within the anthropology field and delayed her chances at making an income. Plaintiff Heppner could have been making a salary of $60,000 a year or more by now.

93.     Instead, she was forced to take out more loans to pay for school and forced her into even more debt. All because of Defendant Yesner's sexual harassment and the

FOURTH AMENDED COMPLAINT - 33

University's lack of responsiveness. Defendant Yesner and Defendant University of Alaska need to be held accountable for their actions or lack thereof.

## GENERAL ALLEGATIONS OF PLAINTIFF LIZ ORTIZ

### SEXUAL HARASSMENT

***Defendant Yesner engaged in sexual harassment of Plaintiff Ortiz by inappropriate staring and threatening conduct.***

94.   Plaintiff Ortiz first learned of Defendant Yesner when she enrolled at Defendant University as a first-year graduate student in August 2016.

95.   Plaintiff was immediately warned by other female students to not be alone in a room with Defendant Yesner under any circumstances due to his predatory behavior, which deeply concerned Plaintiff especially as a new student in a new environment.

96.   Plaintiff recalled that each time she interacted with Defendant Yesner he would stare lasciviously at her breasts during the conversation, making Plaintiff very uncomfortable. Plaintiff recalls Yesner staring at her breasts in October 2017.

97.   One particularly unsettling incident occurred in October 2017[6] on campus when Plaintiff Ortiz was alone in a classroom performing a necropsy of a bear for one of her courses. While she was performing work on the specimen, Defendant Yesner suddenly appeared in the doorway, intensely staring at Plaintiff and standing in silence just watching her. Plaintiff was frozen with fear. Defendant Yesner had positioned himself so Plaintiff's

---

[6] It should be noted that even though Defendant Yesner had "retired" as a Professor at that time he was still allowed to roam freely around campus, interact with female students and come and go as he pleased.

FOURTH AMENDED COMPLAINT - 34

egress from the room was blocked. She had no way out. Plaintiff positioned herself so the table was between Defendant and herself. Within a few minutes, Defendant Yesner walked slowly toward Plaintiff in a threatening manner, still saying nothing. In an attempt to protect herself, Plaintiff jumped over the bear carcass on the floor instead of going around the table so she could be out of arms reach from Defendant. Plaintiff exited out of the room, running as far away as she could down the halls. The incident was branded into Plaintiff's memory, causing significant distress to this day.

98.     Plaintiff immediately relayed this incident to her professor and advisor also a reporter for Title IX. She expected such report to be investigated and acted upon.

99.     Plaintiff also recalls incidents in the Fall of 2017 in a geology class in which she was enrolled. Defendant Yesner would often audit the class and intentionally sit directly behind Plaintiff. He would lean in close where Plaintiff could feel his breath down her neck and make bizarre, inappropriate comments.

100.     Plaintiff was forced into an uncomfortable and unprofessional atmosphere due to Defendant Yesner's sexual harassment. Based on the University's inaction, Plaintiff believed she had no recourse other than to submit herself to Defendant Yesner's inappropriate physical conduct sexual as a condition of her education.

101.     Plaintiff Ortiz found that her complaints to Defendant University were met with an apathetic response, which discouraged her from pursuing her degree. Yet, she still assumed that such reports and complaints were being documented and action would be taken, as appropriate. Even if action or discipline were to occur behind the scenes without

FOURTH AMENDED COMPLAINT - 35

her knowledge, she expected something, anything, would be done. She has since learned nothing was in fact done; indeed, not only was nothing done, but the University was not equipped to do anything, even it if it had the werewithal to do something meaningful. Plaintiff simply knew nothing about the deliberate indifference of the University that she loved.

102.    Plaintiff's work and studies were affected by Defendant Yesner's harassment and Defendant University's indifference.

## GENERAL ALLEGATIONS OF PLAINTIFF JOANNA WELLS

### SEXUAL HARASSMENT

***Defendant Yesner made sexually explicit and suggestive comments to Plaintiff as well as unwanted staring.***

103.    Plaintiff Wells first met Defendant Yesner as an undergraduate student at field school in 2013 and during summer work before entering UAA's graduate program in 2014 and 2015.

104.    Defendant Yesner was assigned by Defendant University to be Plaintiff's advisor when she enrolled in the graduate program in Fall 2015.

105.    Once, Defendant Yesner revealed to Plaintiff he cheated on his wife with another woman. Plaintiff was confused as to why, as her advisor in a professional setting, Defendant was telling her this intimate, sexual information. Defendant Yesner's sexual conversations made her feel uncomfortable.

FOURTH AMENDED COMPLAINT - 36

106.    Defendant Yesner made disturbing comments to Plaintiff during her advisor meetings with him. This made her uncomfortable and fearful of attending her required advisor meetings. Defendant Yesner told Plaintiff he wanted to have sex with a particular undergraduate professor and committee member, stating that "I wish I had a night with her" and expressing that he wanted to have a night with her before she married another one of his students.

107.    Defendant Yesner incessantly and exaggeratedly looked Plaintiff's body up and down. This was a reoccurring issue throughout her interactions with him, and Plaintiff constantly felt sexually exploited and victimized by these aggressive actions by Defendant Yesner. Defendant would sexualize Plaintiff to diminish her educational stance and made her feel undervalued as a serious student.

108.    Plaintiff recounted an incident when she went into the field with Defendant Yesner alone and he had his camera in tow, taking photographs. Plaintiff had asked Defendant Yesner specifically not to take a photograph of her. Plaintiff was taking sediment cores, which required her to push a metal tube into the ground and check for sediment cores. She had to use a clean butter knife each time and so after she used it, she would wipe the knife blade on her knee/thigh area. As she wiped the knife on her knee/thigh, Defendant Yesner commented that Plaintiff had wiped the knife on her "crotch" and said, "Good thing I did not get a picture of that." These comments concerned Plaintiff because these comments indicated that Defendant Yesner was zeroing in on her genitalia while she was bending over in compromising and uncomfortable positions.

FOURTH AMENDED COMPLAINT - 37

109.    Plaintiff had overheard that a professor saw Defendant watching pornography on his work computer and that Defendant would make inappropriate comments to that professor about Heppner sexual in nature. These comments made Plaintiff feel unsafe and unsettled in an environment that should have been protecting her.

***Defendant Yesner would often get Plaintiff alone with him in disturbing situations.***

110.    Defendant Yesner had Plaintiff meet him at a museum in Anchorage after hours when the museum was closed. Defendant Yesner had a key to the museum. Plaintiff thought that other people would be present when she got to the museum as it was the middle of the day and an internet search showed the museum was open but unbeknownst to her, Defendant Yesner had planned the encounter differently. When Plaintiff arrived at the museum, only she and Defendant Yesner were there, alone. The museum was dark when Plaintiff walked inside and Defendant Yesner had turned on a light on in the back where they sat. The museum still appeared closed from the outside. Plaintiff became uncomfortable and concerned about the situation for fear that Defendant Yesner would sexually harass and/or sexually assault her. Plaintiff was so alarmed that she remembers calling a close relative at the time and asking her to call the police if she did not hear from Plaintiff within the next hour.

111.    Another incident occurred in 2016 when Plaintiff and Defendant were out in the field. Defendant invited Plaintiff into his camper. Plaintiff had knocked on Defendant's door because someone asked Plaintiff to retrieve Defendant for dinner. Defendant

FOURTH AMENDED COMPLAINT - 38

persistently insisted that Plaintiff come inside his camper where the two would be alone. Plaintiff refused because she was worried about what might happen and quickly left.

112.    At this same field site in 2016, Defendant Yesner wanted to drive out to the woods alone with Plaintiff but Plaintiff was warned by a friend not to get in the car with Defendant alone. Therefore, Plaintiff drove herself. When they arrived, Defendant and Plaintiff were the only two cars parked in the lot with their cars facing the woods. As Plaintiff was rummaging in the back of her car to retrieve field gear, she looked to see if Defendant Yesner was behind her but instead saw Defendant Yesner urinating in plain sight. Defendant did not try to hide himself or let Plaintiff know that he was excusing himself, almost as if Defendant wanted Plaintiff to see his genitalia. This behavior was inappropriate for a professor with a female student.

113.    Plaintiff remembers sometimes, she would walk into Defendant Yesner's office to meet with him and find he was waiting for her with his pants unzipped and his shirt open, almost exposing himself to Plaintiff.

114.    Plaintiff was subjected to other forms of sexual harassment by Defendant forcing Plaintiff to sit side-by-side with him alone whenever she was working on her thesis. He would make it a condition of her work she had to sit next to him and discourage her from working by herself. Plaintiff remembers Defendant offering to write Plaintiff's thesis for her and offering to pay for her tuition, which she rejected. These interactions made Plaintiff uneasy and made her constantly uncomfortable while trying to pursue her degree.

### *Defendant Yesner engaged in nonconsensual touching of Plaintiff.*

FOURTH AMENDED COMPLAINT - 39

115.    Defendant Yesner would often hug Plaintiff without her consent, lingering in the hug for several minutes to which Plaintiff had no escape. Plaintiff said that his position as her advisor made her feel powerless to do anything or push him away. Defendant Yesner took full advantage of the imbalance of power to victimize his female students, including Plaintiff.

116.    Plaintiff remarked that she specifically did not like hugs as they were an invasion of her personal space and that the hugs made her feel uncomfortable.

# RETALIATION

## *Defendant Yesner retaliated against Plaintiff.*

117.    Defendant Yesner retaliated against Plaintiff for rejecting his inappropriate behavior and sexual advances.

118.    Defendant Yesner would refuse to review Plaintiff's work unless Plaintiff was sitting in the chair next to Defendant in his office. He conditioned his assistance on that seating arrangement.

119.    Defendant would tamper with Plaintiff's thesis work, which prevented her from progressing through her studies.

120.    When Plaintiff finally switched advisors at the urging of a female professor and after feeling uncomfortable with Defendant's actions and competence as an advisor, Defendant Yesner would say and do things to make her feel guilty for that choice.

FOURTH AMENDED COMPLAINT - 40

1  121.   Defendant would often be unresponsive to Plaintiff and unavailable when

2  she needed to get a hold of him, which impeded her work.

3  **GENERAL ALLEGATIONS OF PLAINTIFF NORMA JOHNSON**

4  **SEXUAL HARASSMENT**

5  *Defendant Yesner engaged in sexual harassment of Plaintiff by forcing alcohol*

6  *on her and unwanted staring.*

7  122.   Plaintiff first met Defendant Yesner as an undergraduate student at

8  Defendant University when she enrolled in his Peopling of Americas class in Fall of 2014.

9  123.   Plaintiff learned of an unspoken rule that females in the Anthropology

10  Department were warned not to put themselves in the position of being alone with

11  Professor Yesner. Plaintiff had no choice but to be alone with Defendant Yesner during

12  office hours and other meetings. Plaintiff should not have been forced to avoid her

13  professor, Defendant Yesner. Defendant University should have taken the appropriate

14  action to remove Defendant from campus, as further addressed in other sections of this

15  Complaint.

16  124.   Even before he harassed her, Plaintiff remarked her grave disappointment at

17  Defendant's teaching skills and overall approach to the class. The class was disorganized

18  and unstructured, and she felt the grading system was unfair. Plaintiff stated that Defendant

19  Yesner was one of the most unprofessional professors she had ever come across while at

20  Defendant University, as he was often hard to get a hold of with communication and would

21  delay the grading of exams.

FOURTH AMENDED COMPLAINT - 41

125.     Plaintiff voiced a concern regarding a party held during one evening in December 2014. It was an annual holiday party for the Anthropology community held at a professor's house.

126.     Plaintiff was done drinking for the night when Defendant Yesner approached her aggressively and demanded that she drink a shot of liquor. Defendant moved close into Plaintiff's personal space as he made his demands, backing Plaintiff into a corner, which made her feel disturbed and trapped. Even after Plaintiff politely refused, Defendant kept forcing the alcohol on her, pressuring Plaintiff to drink. The environment in which this incident occurred made Plaintiff very upset and distressed and this memory has stuck with her to this day. She said that the fact that the professor was forcing a young student to drink was bad enough but when she refused and he kept up the pressure, it became even more egregious and inappropriate.

127.     In what became a reoccurring pattern, Defendant Yesner would often stare intensely at Plaintiff's breasts for a long time when she would interact with him, leading Plaintiff to feel violated.

128.     Plaintiff was forced to avoid interactions with Defendant Yesner and question the appropriateness of every situation involving Yesner. She felt a sense of discomfort while engaging in work at Defendant University due to Defendant's reputation and her personal experiences with him.

129.     This constant avoidance of Defendant and general discomfort caused emotional distress to Plaintiff throughout her time at Defendant University and negatively

FOURTH AMENDED COMPLAINT - 42

affected her work. She could not focus on her work when she had to constantly worry about Defendant Yesner and what he might do to her.

## GENERAL ALLEGATIONS OF JANE DOE VI

## SEXUAL HARASSMENT

***Defendant Yesner engaged in sexual harassment of Jane Doe VI by making aggressive sexual advances toward Plaintiff as well as sexually explicit and suggestive comments and unwanted staring.***

130.	Defendant Yesner was assigned as Jane Doe VI's advisor at UAA Anthropology Department in 1989. The harassment by Defendant Yesner began immediately with a constant barrage of lewd and sexually suggestive comments.

131.	Defendant Yesner would talk about women's bodies in graphic detail when he was alone with Plaintiff in the laboratory or in his office under the guise of Anthropology topics, describing the women's bodies he desired. He would describe women with large breasts, narrow waists and wider hips, all while in a professional setting with Plaintiff, often putting her at unease.

132.	Defendant Yesner would also discuss other female students in the Department he would like to pursue because they had the body right for him.

133.	He would point to Venus figurines in the classroom that had large breasts and curvy bodies and would relay his taste for women of this type of figure with Plaintiff during office hours or in the lab.

FOURTH AMENDED COMPLAINT - 43

134.    He also said how he wished American culture would allow for relationships with multiple partners, insinuating to Plaintiff he wanted to have an affair with her. Defendant Yesner is married currently and was married at the time. Plaintiff told him that his comments were inappropriate and that a relationship between Plaintiff and Defendant Yesner would never happen.

### *Defendant Yesner engaged in nonconsensual touching of Jane Doe VI.*

135.    After Jane Doe VI rebuffed Yesner's sexual comments, things got physical.

136.    Yesner touched Jane Doe VI inappropriately.

137.    Plaintiff recounts that Yesner would have Plaintiff and him sit side-by-side and while they were working on a specimen, he would reach across the table in front of her, grazing her breasts with his elbow or arm.

138.    The touching became more aggressive as Plaintiff says Yesner would come from behind her, placing his hands on her shoulders, running them down her back, and fondling her hips and buttocks and trying to reach around and fondle her breasts. This behavior occurred most often in the laboratory when Yesner and Plaintiff would be alone, again showing Yesner's method of isolating the women away from witnesses.

139.    This incessant touching caused Plaintiff extreme distress and mental trauma.

140.    By this point, Plaintiff attempted to avoid Yesner at every opportunity because she was afraid Yesner would get upset with her for rejecting him as she needed his guidance and expertise to finish school. Plaintiff felt she had no choice but to get through

FOURTH AMENDED COMPLAINT - 44

it and deal with the behavior as best she could because Yesner would be the person to write her a recommendation for graduate school.

## SEXUAL ASSAULT

### *Defendant Yesner sexually assaulted Jane Doe VI.*

141.    One of the worst accounts of Yesner's harassment occurred in 1992 at the Broken Mammoth Archaeological Site with a nightmarish incident of sexual assault.

142.    Plaintiff was at a University of Alaska sanctioned archaeological dig at Broken Mammoth in Alaska with Yesner and other students. Yesner would be largely absent from the site but whenever he did return he would always attempt to have sex with Plaintiff. This behavior from Yesner became so problematic that it caused Plaintiff to seek medical treatment for pain, tension and stress.

143.    During her time at the site, Plaintiff would frequently take trips with Yesner into Delta Junction off site in order to resupply, make contact and perform other administrative duties. Defendant Yesner intentionally sought to isolate Plaintiff with these solo trips a long distance away from the archaeological site and away from everyone else.

144.    In Delta Junction, there is a public shower where the staff and students would frequently pay to bathe. It was here where Plaintiff was sexually assaulted by David Yesner.

145.    While Plaintiff Jane Doe VI was in the shower, Defendant Yesner suddenly appeared in the doorway erect and naked. He entered the shower and rubbed his body including his penis against Plaintiff.

FOURTH AMENDED COMPLAINT - 45

146.    Trapped and with nowhere to escape, Plaintiff backed up against the wall.

147.    By this point, Yesner got down on his knees and pressed his mouth against Plaintiff's vagina in an attempt to give her oral stimulation.

148.    Plaintiff screamed, raising her voice in protest and pushed him away. She grabbed her clothes and ran out of the shower to get dressed. Yesner and Plaintiff then drove back to the Broken Mammoth site together. She was forced to sit next to her assailant in a car ride even after she had been assaulted because she was afraid that Yesner would not write her a good recommendation letter for graduate school and she had no other way to get back home.

149.    The entire experience was terrifying and traumatizing and a memory that has haunted Plaintiff for years and years and well into her later life.

## RETALIATION

***Defendant Yesner retaliated against Jane Doe VI after she rejected his sexual advances and made her life extremely difficult.***

150.    The retaliation by Yesner was immediate and pervasive after Plaintiff rejected Yesner's sexual advances.

151.    Yesner would never take no for an answer when Plaintiff turned Yesner down and would instead respond with comments such as "you know you want to" and "you know it will be so good."

FOURTH AMENDED COMPLAINT - 46

152.     Plaintiff and Yesner would be working on a project when suddenly, Yesner would pack up his briefcase and leave the room with no explanation, leaving work unfinished and no indication of when he would return.

153.     Defendant Yesner would go silent, cutting off any contact with Plaintiff Jane Doe VI and giving no attention to her work. He would refuse to answer her phone calls or emails. This retaliatory behavior blockaded and severely stalled Plaintiff Jane Doe VI's academic and professional progress. After she rejected his sexual advances, Plaintiff Jane Doe VI could not reach Defendant Yesner to complete her work.

154.     Yesner would steal important artifacts and field notebooks from the classroom that Plaintiff needed for her research and hide them in his home, hindering Plaintiff's progress in her studies.

155.     Yesner would intentionally delay grading of Plaintiff's papers and heavily edit her writing. He would also threaten to give Plaintiff a low grade in the class if she did not cooperate.

156.     Plaintiff recalls Yesner making snide comments to other faculty and staff about Plaintiff's work and comment on her incompetence as a potential archaeologist.

157.     Yesner threatened to withhold a letter of recommendation to graduate school, which Plaintiff needed.

158.     After the sexual assault occurred, Yesner blamed Plaintiff for the incident and accused her of encouraging him and leading him on.

FOURTH AMENDED COMPLAINT - 47

159.    And Yesner picked on Plaintiff in front of other students and staff at the archaeological site, humiliating her in group meetings and undermining her authority in front of the group.

160.    He would ignore Plaintiff's legitimate concerns about food, safety, alcohol abuse by staff and use of alcohol by underage students while at the dig site.

161.    Yesner also told faculty members and staff that Plaintiff and Yesner were having an affair. This rumor undermined Plaintiff's credibility with the Department as everyone assumed she was getting an advantage and passed judgment on her.

162.    This false rumor made Plaintiff's time as an undergraduate student very uncomfortable and negatively affected her relationships with faculty members and fellow students. Overall, Defendant Yesner made Plaintiff's experience at the University a living hell.

## DEFENDANT YESNER'S HISTORY OF SEXUAL HARASSMENT AND SEXUAL ABUSE SPAN DECADES

163.    David Yesner used the University of Alaska campus as his own personal hunting ground, preying on unsuspecting women looking to him for guidance as the top professional in the anthropology field, who held powerful positions and possessed valuable clout and could make or break an aspiring anthropologist's career. The power imbalance is striking. David Yesner used this imbalance of power to take advantage of these women, who he knew relied on him for guidance and job opportunities.

FOURTH AMENDED COMPLAINT - 48

164.    The Board of Regents Policy P01.04.010(D) recognizes what common sense already dictates: there is a clear imbalance of power between students and faculty. The Policy sates as follows:

> "Since some members of the university community hold positions of authority that may involve the legitimate exercise of power over others, it is their responsibility to be sensitive to that power. Faculty and supervisors in particular, in their relationships with students and subordinates, need to be aware of potential conflicts of interest and the possible compromise of their evaluative capacity. Because there is an inherent power difference in these relationships, the potential exists for the less powerful person to perceive a coercive element in suggestions regarding activities outside those inherent in the professional relationship."

165.    What these women Plaintiffs initially thought would be a place of learning and education turned out to be a minefield with a professor using his position, and the cover of the University, to further his perverse sexual interests.

166.    The earliest accounts of Defendant Yesner's sexual harassment and sexual abuse date as far back as the early 1980s, and maybe earlier based upon information and belief, when David Yesner was first hired by University of Alaska as a professor. Such accounts were many times anectodal; most students, like the Plaintiffs, were reasonable to assume that such irreprehensible conduct would be dealt with appropriately. This did not happen, and such inaction became known in March 2019.

167.    A damning outside report of David Yesner's sexual harassment and sexual abuse of nine women was finally released on March 15, 2019[7] by an independent counsel

---

[7] *See* Daniella Rivera, *Title IX investigation reveals decades of sexual misconduct by former UAA professor,* KTVA (March 25, 2019), https://www.ktva.com/story/40180592/title-ix-investigation-reveals-decades-of-sexual-misconduct-by-former-uaa-professor.

FOURTH AMENDED COMPLAINT - 49

retained by the University. The report details his years and years of predatory behavior inflicted upon these female students. Through interviews of the nine women, witnesses and faculty members, the report paints a disturbing picture. Notably, Defendant Yesner declined to participate in the investigation, citing "health reasons" and deciding to "forgo the interview process." Clearly, this investigation was of no priority to him, once again evading responsibility.

168. According to the report, the time frame when Defendant Yesner was engaged in his reprehensible sexual conduct was during a the same time when permanent Title IX administrators did not exist at UAA.[8] Instead, external law offices within Alaska were retained to administer Title IX complaints, according to university spokesperson Kirstin Olmstead. Pontius Law Offices was finally retained to investigate the numerous complaints in 2017 and 2018.[9]

169. Besides Plaintiffs, other women were subjected to unwanted sexual advances, horrifying sexual harassment, lewd and inappropriate conversations and retaliation at the hands of David Yesner while studying as graduate students at Defendant University of Alaska. Their concerns and voices fell on deaf hears as the Defendant University turned a blind eye to their complaints about Professor Yesner. All believed that

---

[8] *See* Cheyenne Mathews, *Sexual assault concerns still prevalent at UAA*, The Northern Light, April 8, 2019 http://www.thenorthernlight.org/yesner/.

[9] *Id.*

FOURTH AMENDED COMPLAINT - 50

the University would act appropriately. All learned in the year 2019 that such was not the case; that the University turned a blind eye to such conduct.

170. Even though the incidents occurred more than nine times, the women all tell one eerily unifying story of how Defendant Yesner would first earn their trust, essentially grooming these women, subject them to harassment and abuse and then retaliate when the relationship did not go his way.

171. The March 15, 2019 report found Defendant Yesner guilty of violating several University regulations. The complainants in the report were called C1, C2, C3, C4, C5, C6, C7, C8 and C9. Defendant Yesner was called R1. The final findings, which detail the conduct specifically impacting the Plaintiffs in this case, are set forth here:

- R1 engaged in sex discrimination and sexual harassment against C1, C2, C3, C4, C5;

- R1 engaged in sex discrimination and sexual harassment against C6;

- R1 engaged in sex discrimination and sexual harassment against C7;

- R1 engaged in sex discrimination and sexual harassment against C8;

- R1 engaged in sex discrimination, sexual harassment, and sexual assault of C9;

- R1's conduct in its totality was sufficiently severe, pervasive, and persistent and was both staffs' ability to perform their jobs or engage in university programs;

FOURTH AMENDED COMPLAINT - 51

- R1 engaged in sexual exploitation through inappropriate use and possession of female student pictures;

- R1 violated University Regulation R.02.07.054(F) by possessing obscene material on his University computer.

172.    There are many more recent incidents of egregious sexual harassment by David Yesner that have yet to be investigated or reported.

173.    Defendant Yesner refuses to accept or admit the severity of his actions and has shown no remorse for his behavior. To date, he has offered no sort of apology to Plaintiffs nor the women in the report. Yesner does not think he did anything wrong. As of April 11, 2019, he was still traveling to and attending Anthropology conferences around the country according to Plaintiffs, as if everything was okay, oblivious to the havoc he has wreaked on these womens' lives. His "health concerns" certainly have not slowed him down one bit. The most recent conference that David Yesner attended was hosted by the Society of American Anthropologists ("SAA") in New Mexico on April 11-April 14, 2019, who welcomed Yesner with open arms. This conference is considered very prominent in the community. According to *The Scientist*, a journalist had confronted Defendant Yesner and asked him to leave the conference due to recent allegations of sexual harassment. However, the SAA, in a stunning turn of events, instead expelled the journalist from the conference and told David he could remain, essentially siding with David Yesner amidst

FOURTH AMENDED COMPLAINT - 52

all the disturbing allegations against him.[10] This act also demonstrates how much power and influence David Yesner still yields within the community.

## IV. STATEMENT OF CLAIMS

## COUNT I

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. §§ 1681-1688 and its IMPLEMENTING REGULATIONS at 34 C.F.R. Part 106**

**As to Defendant University of Alaska**

**(The University's Deliberate Indifference to Alleged Sexual Harassment)**

174.     Plaintiffs re-allege and incorporate the allegations set forth above as though fully set forth herein.

175.     At all times relevant to this FOURTH AMENDED Complaint, University of Alaska maintained

- a policy of deliberate indifference to reports of sexual misconduct;

- which created a heightened risk of sexual harassment;

- in a context subject to the University's control; and

- Plaintiffs were harassed because of this policy.

But Plaintiffs had NO way to know of such deliberate indifference, until the University,

---

[10] Kerry Grens, *An Archaeology Meeting Finds Itself in the Middle of #MeTooSTEM*, The Scientist, (April 12, 2019), https://www.the-scientist.com/news-opinion/an-archaeology-meeting-finds-itself-in-the-middle-of--metoostem-65737.

FOURTH AMENDED COMPLAINT - 53

finally responding to years of complaints retained an outside firm to formally investigate the situation, and issued an investigative report on **March 15, 2019**. And, it was only after such report was leaked to the media, that discipline was imposed.

176.    Two years prior to conducting the formal investigation with an outside entity, the OCR wrote a letter to the University of Alaska President Jim Johnsen, saying that the University had "violated Title IX" with regards to its response to sexual harassment complaints, among other failings. Although this letter was at some point ultimately made public, it did not identify the Plaintiffs in this case as the victims described.

177.    The March 15, 2019 report is explosive. It reveals, that at a minimum, the University of Alaska, Anchorage, received over eighty six reports of sexual harassment from July 2017 to June 2018, and not ONE report resulted in a formal investigation, much less the imposition of discipline. No one would have known this information, other than those who run the University; this information was not available for public consumption until it was leaked to the press in March 2019.

178.    At the time of the allegations contained herein, Plaintiffs were unaware of University of Alaska's pervasive failings regarding its response to a known issue of sexual misconduct within its faculty dating back several years before Plaintiffs' sexual harassment and assault. Because University of Alaska actively concealed this information from Plaintiffs and the general public, Plaintiffs could not, with reasonable diligence, have learned this information independently. Plaintiffs first learned of University of Alaska's deliberate indifference to a known issue of sexual misconduct within its faculty regarding

FOURTH AMENDED COMPLAINT - 54

Professor David Yesner in March of 2019 when the Pontius Law Offices, hired by the University to investigate, released its findings of an independent investigation for review. Plaintiffs were unaware of the University's *own* misconduct until March of 2019 when the Pontius Law Offices released its findings from its independent investigation.

179. At all material times, Defendant University of Alaska was acting under color of law. The United States government protects Plaintiffs from discrimination, harassment, or the denial of benefits based on sex or sexual orientation from any agency that receives federal funding. The University of Alaska received federal financial assistance during the period.

180. Defendant Yesner subjected Plaintiffs to unwanted and unwelcome sexual harassment as described in the paragraphs above. Although the Plaintiffs were certainly aware of the conduct, and certainly aware of how such conduct impacted them personally, Plaintiffs had NO CLUE of the pervasiveness of the conduct, the refusal of the University to acknowledge it, the refusals of the University to address it, and the University's pretense that such complaints would be dealt with appropriately when in fact they were deliberately ignored and allowed to continue.

181. The Defendant University had actual knowledge of Plaintiffs' sexual harassment at the hands of Defendant Yesner from the time Plaintiffs reported this harassment to a then professor and now the Chair of the Anthropology Department, the Provost's Office, the Dean, and the Chancellor in 2011, 2013, 2016 and 2017 respectively and other complaints lodged before these years.

FOURTH AMENDED COMPLAINT - 55

182.    The Defendant University's failure to conduct a formal investigation and try to protect Plaintiffs from further sexual harassment were unreasonable, given the known circumstances. Such was deliberate indifference, unknown to the Plaintiffs, and others.

183.    Plaintiffs were subjected to discrimination based on sex because of the Defendant University's deliberate indifference to known acts of harassment and sexual grooming, including without limitation:

a. The Defendant University's deliberate decision not to inform Plaintiffs of their right to make a formal Title IX complaint—unknown to Plaintiffs;

b. The Defendant University's failure to conduct a Title IX investigation into Plaintiffs' complaints—unknown to Plaintiffs;

c. Defendant University's deliberate decision not to provide Plaintiffs with safety measures and accommodations following their complaints, such as access to counseling services—unknown to Plaintiffs;

d. Defendant University's deliberate decision not to comply with its own policies on sexual misconduct, Title IX, and sexual harassment, and the legal requirements of Title IX as set forth by the Office of Civil Rights—unknown to Plaintiffs;

e. Defendant University's deliberate decision to allow Defendant Yesner to remain on campus and supervise female graduate students after complaints brought forth about Plaintiffs' sexual harassment and other women's sexual harassment

FOURTH AMENDED COMPLAINT - 56

by Defendant Yesner—known to Plaintiffs yet with the assumption that something formal, proper, and appropriate had been done;

f. Defendant University's deliberate decision to do nothing to eliminate the risk of and/or actual retaliation posed by Defendant Yesner, prevent its recurrence and address its effects on Plaintiffs—unknown to Plaintiffs.

184. Had Defendant University not been deliberately indifferent to Plaintiff Dutchuk's harassment, discrimination and retaliation, Plaintiff would have remained on campus and completed her master's degree. Instead, Plaintiff was forced to drop out and see a mental health counselor, while Defendant Yesner received promotion after promotion, pay increases, almost received "Emeritus" status at the University, left the University with no charge of harassment at the time of his retirement and remains living in Anchorage, having suffered no reputational harm. As stated supra, Defendant Yesner attended the SAA conference last year, where the SAA promoted his interests above the sexual harassment survivors.

185. Had Defendant University not been deliberately indifferent to Plaintiff Heppner's harassment, discrimination and retaliation, Plaintiff would have graduated from University within three years and would have been years into her anthropology career by now. Instead, Plaintiff is just starting her career with massive student loan debt and mental counseling services, while Defendant Yesner received promotion after promotion, pay increases, almost received "Emeritus" status at the University, left the University with no charge of harassment at the time of his retirement and remains living in Anchorage, having

FOURTH AMENDED COMPLAINT - 57

suffered no reputational harm. As stated, Defendant Yesner attended the Society of American Archaeologists conference last year, where the SAA promoted his interests above the sexual harassment survivors and ignore the inundation of complaints by the affected women and the public.

186. Had Defendant University not been deliberately indifferent to Plaintiffs Ortiz, Wells, and Johnson's harassment and discrimination, Plaintiffs could have enjoyed their education and not be subjected to repeated unwanted behavior by a sexual predator, who Plaintiffs had to waste time and energy on trying to avoid. Their studies would not have been affected. By allowing the Plaintiffs to be continually sexually harassed Defendant University of Alaska violated Title IX prohibition on discrimination and harassment based on sex or sexual orientation.

187. Had Defendant University not been deliberately indifferent to Plaintiff Jane Doe VI's harassment and sexual abuse, Plaintiff would not have been sexually assaulted by a known predator and endured years of emotional and physical turmoil and trauma in her life. Plaintiff would not have been undermined at every turn by Yenser and retaliated against for simply trying to get an education. Her studies would have progressed at the normal pace and she would not have had to live in fear every day of a professor trying to assault her while she pursued a career in anthropology. By allowing Plaintiff to be continually sexually abused Defendant University of Alaska violated Title IX prohibition on discrimination and harassment based on sex or sexual orientation.

FOURTH AMENDED COMPLAINT - 58

188.    By not following the requirements under Title IX for the follow-up and investigation requirements when a complaint was made, Defendant University of Alaska violated its legal obligations under federal law. By engaging in the acts and omissions described, Defendant University of Alaska, acted under color of law with deliberate indifference, violated the Plaintiffs' rights based in U.S. federal law to be provided with the full benefit of their education free from discrimination and harassment based on their sex or sexual orientation. By engaging in the acts and omissions described, Defendant University of Alaska, acting under color of law and with deliberate indifference, violated Plaintiffs' rights based in U.S. federal law to benefit from and access to their education free from ongoing, pervasive, severe, and debilitating gender-based harassment and discrimination. The rights of Plaintiffs to be free from discrimination and harassment based on their sex or sexual orientation as described herein was established in law at the time of the incidents.

189.    Because of Defendant University's deliberate indifference, Plaintiffs have suffered losses of educational opportunities and benefits, along with general and special damages including but not limited to: emotional distress, and damage and to and delays in in pursuit of education.

Wherefore, Plaintiffs request relief in the Prayer for Relief below.

## COUNT II

### VIOLATION OF TITLE IX

### As to Defendant University of Alaska

FOURTH AMENDED COMPLAINT - 59

**(Hostile Educational Environment)**

190.     Plaintiffs re-allege and incorporate the allegations set forth above as though Fully set forth herein.

191.     University of Alaska maintained:

- a policy of deliberate indifference to reports of sexual misconduct;

- which created a heightened risk of sexual harassment;

- in a context subject to the University's control; and

- Plaintiffs were harassed because of this policy.

Worse, believing that those in authority would act when despicable acts were reported, the University's deliberate refusal to act, remedy, discipline, and comply with the law, led to further damage to the Plaintiffs.

192.     The Office of Civil Rights, in a nonpublic letter, that ultimately became public but did not specifically address these Plaintiffs, wrote to the University of Alaska President Jim Johnsen, saying that the University had "violated Title IX" with regards to its response to sexual harassment complaints, among other failings.

193.     Even more troubling, an investigation revealed that University of Alaska, Anchorage, received over 86 reports of sexual harassment from July 2017 to June 2018, and not ONE report resulted in a formal investigation, much less the imposition of discipline.

194.     At the time of the allegations contained herein, Plaintiffs were unaware of University of Alaska's pervasive failings regarding its response to a known issue of sexual

misconduct within its faculty dating back several years before Plaintiffs' sexual harassment and assault. Because University of Alaska actively concealed this information from Plaintiffs and the general public, Plaintiffs could not, with reasonable diligence, have learned this information independently. Plaintiffs first learned of University of Alaska's deliberate indifference to a known issue of sexual misconduct within its faculty regarding Professor David Yesner in March of 2019 when Pontius Law Offices released its findings of its independent investigation for review. Plaintiffs were unaware of the University's *own* misconduct until March of 2019 when Pontius Law Offices released its findings from its independent investigation.

195.    Plaintiffs were subjected to sexual harassment so severe, pervasive and objectively offensive they were denied access to educational opportunities and benefits as described in paragraphs above.

196.    University's actions and inactions after Plaintiffs reported Yesner's harassment denied Plaintiffs the benefits of, and subjected them to discrimination in their education at University based on their sex.

197.    Defendant University's responses to the harassment were unreasonable, given the known circumstances.

198.    The Defendant University was deliberately indifferent to Plaintiffs' known sexual harassment and the sexually hostile environment from which they suffered. As a result, it instituted no accommodations for Plaintiffs' safety, including, but not limited to:

a. terminating Defendant Yesner from campus and all teaching and supervising responsibilities;

b. Investigating reports and complaints by female students against Defendant Yesner for sexual harassment and inappropriate behavior;

c. protecting Plaintiffs from retaliation from Defendant Yesner; or

d. offering counseling resources.

Defendant University of Alaska engaged in a pattern and practice of behavior designed to discourage and dissuade students from initiating investigations relating to sexual harassment. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

199. Because of the Defendant University's deliberate indifference, Plaintiffs suffered losses of educational opportunities and benefits, along with general and special damages including but not limited to: emotional distress, and damage to and delays in their pursuit of education.

Wherefore, Plaintiffs request relief in the Prayer for Relief below.

## <u>COUNT III</u>

### VIOLATION OF TITLE IX

### As to Defendant University of Alaska

### (Retaliation by Withholding Protections Otherwise Conferred by Title IX)

200. Plaintiffs re-allege and incorporate the allegations set forth above in paragraphs as though fully set forth herein.

FOURTH AMENDED COMPLAINT - 62

201.    Defendant Yesner subjected Plaintiffs to unwanted and unwelcome sexual harassment as more fully described in paragraphs above.

202.    The OCR found that University of Alaska's current written policies regarding retaliation did not adequately provide equitable procedures and safeguards for the students, allowing a hostile environment to exist.

203.    Plaintiffs were unaware of, and could not have discovered, the University's own misconduct regarding failure to remedy retaliation and Plaintiffs suffered. One would have expected the University to act, and the University pretended to act, yet the University did nothing of significance to address the complaints, or to prevent further wrongful conduct.

204.    Plaintiffs engaged in an activity protected by Title IX when they made complaints against Defendant Yesner for sexually harassing them. Plaintiffs clarified that Defendant Yesner was retaliating against Plaintiffs by cutting off communication with Plaintiffs, failing to grade exams, failing to review thesis papers on time, making Plaintiffs feel guilty, and removing important artifacts from the laboratory and hiding them in his house. Plaintiffs felt that if they spoke out against Defendant Yesner, he would make their lives increasingly difficult and ruin their careers.

205.    After Plaintiffs reported Defendant Yesner's behavior to the University and rejected Defendant Yesner's sexual advances, Defendant Yesner deliberately and intentionally subjected Plaintiffs to adverse actions.

206.    The Defendant University learned of this retaliation when:

FOURTH AMENDED COMPLAINT - 63

a. Plaintiff Dutchuk reported Defendant Yesner to Dean Petraitis in 2016;

b. Plaintiff Heppner reported Defendant Yesner to Diane Hanson in 2011;

c. Plaintiff Heppner reported Defendant Yesner to the Provost's office in 2013;

d. Plaintiff Jane Doe VI told several people about Yesner's behavior; and

e. Plaintiff Heppner, Plaintiff Ortiz, Plaintiff Wells, Plaintiff Norma Johnson, and Plaintiff Jane Doe VI reported Defendant Yesner to Chancellor Gingerich in 2017.

207.    Defendant University had a duty to put an end to the retaliation being committed by Defendant Yesner in the course of his employment. The University's failure to do so is in violation of Title IX.

208.    As a direct and proximate result of Defendant University's unlawful acts, Plaintiffs have sustained general and special damages including but not limited to: emotional distress, and damages to and delays in their careers.

Wherefore, Plaintiffs request relief in the Prayer for Relief below.

## COUNT IV

### CIVIL ASSAULT AND BATTERY

#### As to Defendant David Yesner

209.    Plaintiffs re-allege and incorporate the allegations set forth above in the paragraphs above as though fully set forth herein.

FOURTH AMENDED COMPLAINT - 64

210.    During Plaintiffs' time at the University, Defendant Yesner repeatedly touched Plaintiffs without their consent, including giving them aggressively sexual hugs and touching their breasts, so it was sexually stimulating to him, which constitutes a battery upon Plaintiffs' persons. Yesner assaulted Jane Doe VI by rubbing his penis against her body and pressing his mouth against her vagina.

211.    Defendant Yesner assaulted Plaintiffs by placing them in immediate apprehension of harm when acting with intention to cause harmful contact upon Plaintiffs.

212.    Because of the master-servant relationship between Defendant University and Defendant Yesner, Defendant University is vicariously liable for the acts of its employee, Defendant Yesner.

213.    Therefore, because of the acts committed against Plaintiffs in paragraphs above, Defendant University is liable for the batteries committed upon Plaintiffs by its employee, Defendant Yesner, in the course of the employment.

214.    Because of the batteries committed upon the Plaintiffs and for which Defendant University is liable, Plaintiffs suffered severe emotional distress, pain and suffering, and loss of the capacity for enjoyment of life.

215.    Wherefore, Plaintiffs request relief as set forth in the Prayer for Relief below.

## **COUNT V**

## **INVASION OF PRIVACY BY INTRUSION OF SOLITUDE AND FALSE LIGHT**

### **As to Defendant David Yesner**

FOURTH AMENDED COMPLAINT - 65

216. Plaintiffs re-allege and incorporate the allegations set forth above in paragraphs as though fully set forth herein.

217. Plaintiff Dutchuk did not consent to having photographs of solely her breasts and buttocks taken at the Broken Mammoth Archaeological Site by Defendant Yesner. Defendant Yesner took sexually suggestive photographs of Plaintiff without her consent, therefore committing intrusion of solitude.

218. Again, as alleged above, the archaeological site was heavily secluded and not accessible to the general public. The entrance was secured by a locked gate of which only a select group of individuals had access. A Google image search and other evidence will confirm the secluded nature of the area and the inaccessibility.

219. Plaintiff Heppner did not consent to Defendant Yesner perusing her social media profile and selecting a sexually suggestive photograph to put as Plaintiff Heppner's official photograph for her thesis paper. This poster was provided to the public and posted around the University's campus and faculty members on the email thread who had to sign off on the poster.

220. This photograph of Plaintiff Heppner placed her in a false or misleading light, causing embarrassment and offense.

221. Plaintiffs have suffered and continue to suffer damage because of Defendants' interference with and invasion of their privacy. Plaintiffs have suffered extensive mental anguish and loss of the capacity for past and future enjoyment of life. The

invasion of privacy is traumatizing. Wherefore, Plaintiffs request relief in the Prayer for Relief below.

## VI.    DEMAND FOR JURY TRIAL

222.    Plaintiffs respectfully demand a trial by jury as to all matters so triable under Rule 38 of the Federal Rules of Civil Procedure.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief:

a.  Defendants be served with process and answer herein;

b.  Damages in amounts to be established at trial, including, without limitation, reimbursement and prepayment for all of Plaintiffs' tuition and related expenses; payment of Plaintiffs' expenses incurred as a consequence of the sexual harassment; damages for deprivation of equal access to the educational benefits and opportunities provided by University of Alaska; and damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present, and future enjoyment of life;

c.   An Order enjoining University of Alaska, along with all of its agents, employees, and those acting in concert therewith, from unlawful discrimination on the basis of sex, including failing to address, prevent and/or remedy sexual harassment;

d.  Issue a formal public statement supporting Plaintiffs;

FOURTH AMENDED COMPLAINT - 67

e. Removal of Defendant David Yesner's name from diplomas and other official university documents;

f. Attorneys' fees under 42 U.S.C. § 1988(b);

g. For the court costs of trying this action;

h. For costs to be taxed to the Defendants;

i. For such other and further relief as the Court may deem just and proper;

j. For pre-and postjudgment interest; and

k. Plaintiffs respectfully reserve the right to amend this Complaint to conform to the evidence.

Respectfully submitted this 10th day of January, 2022.


By: */s/ Cornelia Brandfield-Harvey*
Anthony G. Buzbee
(*Admitted Pro Hac Vice*)
*Attorney in Charge*
Texas Bar No. 24001820
Federal Bar No. 22679
Cornelia Brandfield-Harvey
(*Admitted Pro Hac Vice*)
Texas Bar No. 24103540
Federal Bar No. 3323190
**THE BUZBEE LAW FIRM**
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 522-5909

By: */s/ Nicole Cusack*
Nicole C. Cusack (AK Bar No. 1511093)
**CUSACK LAW, LLC**
2665 East Tudor Road, Suite 202

FOURTH AMENDED COMPLAINT - 68

Anchorage, AK 99507
Tel: (907) 903-4428

Charles Sturm
*(Admitted Pro Hac Vice)*
**STURM LAW PLLC**
Texas Bar No. 1511093
Federal Bar No. 21777
712 Main St, Suite 900
Houston, TX 77002
Tel: (713) 955-1800

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on 02/11/2022 I filed a true and correct copy of the forgoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:19-cv-00136-HRH who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Cornelia Brandfield-Harvey*
Cornelia Brandfield-Harvey

FOURTH AMENDED COMPLAINT - 69